1

Rosemary M. Rivas (State Bar No. 209147)
rrivas@finkelsteinthompson.com
Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

[Additional Counsel Listed on Signature Page]

Counsel for Plaintiff Joel Ruiz

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL RUIZ, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>    vs.<br><br>GAP, INC., and DOES 1-9 inclusive,<br><br>      Defendants. | Case No. C-07-5739SC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     January 11, 2008<br>Time:    10:00 a.m.<br>Location: Courtroom 1, 17th Floor<br>Judge:   Honorable Samuel Conti |

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL POSTURE.................................... 2

III.  ARGUMENT ................................................................................................................ 3

    A.   Legal Standard ..................................................................................................... 3

    B.   Plaintiff Has Article III Standing......................................................................... 4

        1.   The Increased Risk of Identity Theft is a Cognizable Injury ..................... 4

        2.   Gap's Arguments Against Standing are in Disregard of its Conduct and in
            Conflict with Controlling California Authority........................................... 6

    C.   Plaintiff's Complaint Properly States Claims .................................................... 10

        1.   Negligence/Bailment ............................................................................... 10

        2.   The Complaint Properly Pleads Claims for Violation of the Unfair
            Competition Law for the Court's Adjudication ....................................... 12

            a.   The Complaint Sufficiently Alleges Facts Constituting Injury in
                Fact and Lost Money or Property             13

            b.   The Complaint Properly Pleads Unlawful Business Practices      16

            c.   The Complaint Properly Pleads Unfair Business Practices        17

            d.   Defendant's Policy-Based Abstention Argument Is Irrelevant
                And Without Merit             18

        3.   The Complaint States a Claim for Invasion of Privacy............................. 20

        4.   Plaintiff States a Claim for Violation of California Civil Code § 1798.85 ............. 22

IV.   CONCLUSION .......................................................................................................... 23

1

# TABLE OF AUTHORITIES

2

## CASES

3

4

*Arcilla v. Adidas Promotional Retail Operations, Inc.,*
488 F. Supp. 2d 965 (C.D. Cal 2007) ........................................................... 4, 7

5

*Bell v. Acxiom Corp.,*
6      No. 4:06CV00485-WRW, 2006 WL 2850042 (E.D. Ark Oct. 3, 2006) ................................ 7

7

*Bennett v. Spear,*
8      520 U.S. 154 (1997) ........................................................................... 4

9

*Blanco v. El Pollo Loco, Inc.,*
10     No. SACV 07-54 JVSRNBX, 2007 WL 1113997, (C.D. Cal Apr. 4, 2007) ....................... 4, 11

11

*Bondanza v. Peninsula Hospital & Medical Center,*
12     23 Cal.3d 260 (1979) ......................................................................... 16

13

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
14     20 Cal. 4th 163 (1999) ............................................................. 13, 11, 17

15

*Cetacean Cmty. v. Bush,*
386 F.3d 1169 (9th Cir. 2004) ................................................................ 8

16

*Chavez v. Blue Sky Natural Beverage Co.,*
17     503 F.Supp.2d 1370 (N.D. Cal. 2007) ........................................................ 15

18

*City of Los Angeles v. Lyons,*
19     461 U.S. 95  (1983) .......................................................................... 8

20

*DaimlerChrysler Corp. v. Cuno,*
21     126 S. Ct. 1854 (2006) ....................................................................... 8

22

*Fajardo v. County of Los Angeles,*
23     179 F.3d 698  (9th Cir. 1999) ............................................................. 3, 21

24

*Forbes v. Wells Fargo Bank, N.A.,*
420 F. Supp. 2d 1018 (D. Minn. 2006) ....................................................... 11

25

*G&C Auto Body Inc. v. Geico General Ins. Co.,*
26     Case No. C06-04898MJJ, 2007 WL 4350907 *4 (N.D. Cal. Dec. 12, 2007) ..................... 14

27

*Gest v. Bradbury,*
28     443 F.3d 1177 (9th Cir. 2006) ............................................................... 10

*Giordano v. Wachovia Sec., LLC, Giordano,*
   No. 06-476 (JBS), 2006 WL 2177036, at *5 (D.N.J. Jul. 31, 2006) ....................... 3

*Goehring v. Chapman Univ.,*
   121 Cal. App. 4th 353 (2004) ....................................................................... 23

*Greidinger v. Davis,*
   988 F.2d 1344 (4th Cir. 1993) ..................................................................... 22

*Guin v. Brazos Higher Educ. Serv. Corp., Inc.,*
   No. 05-668 RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7, 2006) ....................... 11

*Hangarter v. Provident Life & Acc. Ins. Co.,*
   373 F.3d 998  (9th Cir. 2004) ......................................................................... 9

*Hendricks v. DSW Shoe Warehouse, Inc.,*
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ......................................................... 11

*Hill v. Nat'l Collegiate Athletic Ass'n,*
   7 Cal. 4th 1 (1994) ........................................................................ 20, 21, 22

*Hodgers-Durgin v. De La Vina,*
   199 F.3d 1037 (9th Cir. 1999) ..................................................................... 10

*In Re First Alliance Mortg. Co.,*
   471 F.3d 977 (9th Cir. 2006) ....................................................................... 15

*International Brotherhood of Electrical Workers Local Union No. 5 v. United States Department of*
   *Housing and Urban Development,*
   852 F.2d 87 (3d Cir.1988) ........................................................................... 22

*Kahle v. Litton Loan Servicing, LP,*
   486 F. Supp. 2d 705, 713 (S.D. Ohio 2007) ................................................... 11

*Key v. DSW, Inc.,*
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ............................................................ 8

*Khan v. Shiley Inc.,*
   217 Cal. App. 3d 848 (1990) ....................................................................... 11

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ............................................................................. 15

*Lozano v. AT&T Wireless Services, Inc.,*
   504 F.3d 718 (9th Cir. 2007) ....................................................................... 15

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)............................................................................................. 8

*Massachusetts Mutual Life Ins. Co. v. Sup. Ct.,*
    97 Cal.App. 4th 1282 (2002)............................................................................... 16

*Matoff v. Brinker Rest. Corp.,*
    439 F. Supp. 2d. 1035 (C.D. Cal. 2006) ............................................................. 21

*McKell v. Wash. Mut., Inc.,*
    142 Cal.App. 4th 1457 (2006).................................................................. 18, 20

*Nelsen v. King County,*
    895 F.2d 1248 (9th Cir. 1990) .............................................................................. 8

*NL Indus. v. Kaplan,*
    792 F.2d 896 (9th Cir. 1986) ........................................................................ 3, 25

*O'Shea v. Littleton,*
    414 U.S. 488 (1974)............................................................................................. 9

*People ex rel. Mosk v. Nat'l Research Co of Calif.,*
    201 Cal. App. 2d 765 (1962) ............................................................................. 16

*People v. Casa Blanca Convalescent Homes, Inc.,*
    159 Cal. App. 3d 509 (1984) ............................................................................. 17

*People v. Toomey,*
    157 Cal.App.3d 1(1984) ...................................................................................... 9

*Pisciotta v. Old Nat'l Bancorp.,*
    499 F.3d 629(7th Cir. 2007) .............................................................................. 11

*Ponder v. Pfizer, Inc.,*
    No. 07-466-JJB-CN, 2007 WL 4197319 (M.D.La. Nov. 7, 2007)...................... 11

*Porten v. Univ. of San Francisco,*
    64 Cal. App. 3d 825 (1976) ...................................................................... 5, 6, 10

*Randolph v. ING Life Ins. & Annuity Co.,*
    486 F. Supp. 2d 1 (D.D.C. 2007)......................................................................... 8

*Reid v. Google, Inc.,*
    155 Cal. App. 4th 1342 (2007) .......................................................................... 15

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

*Simon v. Eastern Kentucky Welfare Rights Org.,*
  426 U.S. 26 (1976) ................................................................................................... 10, 11

*Stollenwerk v. Tri-West Healthcare Alliance,*
  No. 03-0185 PHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005), aff'd in part, No. 05-16990, 2007
  WL 4116068 (9th Cir. Nov. 20, 2007) ....................................................................... 11

*Sun Sav. and Loan Ass'n v. Dierdorff,*
  825 F.2d 187  (9th Cir. 1987) .................................................................................... 3

*Toxic Injuries Corp. v. Safety-Kleen Corp.,*
  57 F. Supp. 2d 947 (C.D. Cal. 1999) ......................................................................... 8

*Walker v. USAA Cas. Ins. Co.,*
  474 F.Supp.2d 1168 (E.D. Cal. 2007) ...................................................................... 14

*Walters v. DHL Express,*
  2006 WL 1314132 (C.D. Ill. May 12, 2006) ............................................................ 11

*White v. Trans Union LLC,*
  462 F.Supp.2d 1079 (C.D. Cal. 2006) .................................................................. 13, 14

*Wilkinson v. The Times Mirror Corp.,*
  215 Cal.App.3d 1034 (1989) ...................................................................................... 5

*Yanez v. United States,*
  63 F.3d 870 (9th Cir. 1995) ........................................................................................ 3

## STATUTES

2001 Cal. Legis. Serv. Ch 720 .................................................................................... 23

5 U.S.C. § 552(b)(6) .................................................................................................... 22

Cal. Bus. & Prof. Code § 17200 .............................................................................. 4,13

Cal. Bus. & Prof. Code § 17203 ............................................................................... 14

Cal. Civ. Code § 1798.84 ............................................................................................. 5

Cal. Civ. Code §§ 1798.82 ......................................................................................... 19

Cal. Civ. Code §1798.81.5 ...................................................................................... 5, 18

Cal. Civil Code § 1798.81 ......................................................................................... 17

Cal. Const. Art. 1 ................................................................................................. 17, 18

v

California Civil Code §1798.85 ........................................................................... 5,16

## MISCELLANEOUS

*Consumer Credit Reporting Agencies and Confidentiality of Social Security Numbers: Hearing on S.B. 168 Before the Assemb. Comm. on Banking and Finance,*
2001 Leg. Sess. 1-5 (Cal. 2001) ..................................................................... 19

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

1    I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

2        Plaintiff Joel Ruiz is at a heightened risk for becoming one of millions of Americans victimized

3    by an identity theft crime.  Although Defendant Gap Inc. ("Defendant" or "Gap") specifically created

4    this harm and violated the privacy rights belonging to Plaintiff and the 800,000 persons whose

5    personal information it compromised, Gap callously disregards the actual harm it has caused by

6    framing this action as a mere case of fear.  Identify theft, however, is a serious problem and is

7    effectuated through the access and unauthorized use of the type of personal information compromised

8    here – names, addresses, birthdates and social security numbers.  In 2006 alone, fraud resulting from

9    identity theft affected approximately 15 million Americans and had an estimated cost of about $55.7

10   billion.  *See* Garcia, Flora J., *Data Protection, Breach Notification, and the Interplay Between State*

11   *and Federal Law: The Experiments Need More Time*, 17 Fordham Intell. Prop. Media & Ent. L.J. 693,

12   700 (Spring 2007) (citations omitted).

13       Despite Gap's attempts to paint this action as one involving no harm for which there is no

14   remedy, this is not the case.  First, courts have held that the increased risk of identity theft is an actual

15   injury, thereby giving Plaintiff standing to assert his common law claims for negligence, bailment and

16   for violations of California's Unfair Competition Law, Business & Professions Code §§ 17200 *et seq.*

17   ("UCL").  Second, California leads the nation in enacting statutes designed to protect consumers from

18   identity theft and to prohibit the exact type of misconduct alleged here.  These statutes, along with

19   rules promulgated by the Federal Trade Commission ("FTC"), serve as the basis for Plaintiff's

20   unlawful and unfair business practices under the UCL.

21       Third, Plaintiff properly alleges a claim for violation of the right to privacy.  Since this claim

22   depends on whether Gap failed to maintain reasonable procedures to protect personal information and

23   whether its conduct constitutes a "serious invasion" (material facts disputed by the parties), judgment

24   on the pleadings is inappropriate and Plaintiff's allegations must be accepted as true.  Finally, Plaintiff

25   properly states a claim for California Civil Code §1798.85.  Although Gap argues that no private right

26   of action is available for a violation Section 1798.85, the legislative history shows otherwise.

27   Accordingly, Gap's motion should be denied in its entirety.

28

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

## II.    STATEMENT OF FACTS AND PROCEDURAL POSTURE

Plaintiff applied for a position with Old Navy, one of Gap's brand stores, through Gap's online application website. *See* Class Action Complaint, filed Nov. 13, 2007 ("Comp.") ¶ 31. As part of the application process, Plaintiff was required to provide a large amount of personal information, including his social security number, email, home address, and telephone number. *Id.* Plaintiff was also required to respond to a number of personal questions on the website, such as questions about his habits and any criminal records, among other things. *Id.*

Although California Civil Code § 1798.85 ("Section 1798.85") specifically prohibits a business from "requiring an individual to use his or her social security number to access an Internet Web site, unless a password or unique personal identification number or other authentication device is also required to access the Internet Web site," Gap nevertheless required Plaintiff to use his social security number in order to access the application process and required no other identification to sign on. Comp. ¶ 75. Gap stated that Plaintiff's application would be "considered for only 90 days," yet maintained his personal information for over a year, well beyond its usefulness. *Id.* ¶ 40. In addition, during the online application process, Gap promised to use "reasonable precautions to protect your personal information from unauthorized use, access, disclosure, alteration, or destruction." *Id.* ¶ 25.

On September 19, 2007, Gap learned that two laptop computers were stolen from the offices of one of its third-party vendors it employed to manage its job applicant data. *Id.* ¶ 32. The laptops contained the personal information of approximately 800,000 persons who applied for employment with Old Navy, Gap, Banana Republic, and/or its outlet stores by the telephone or internet from July 2006 to June 2007, although Gap considers online applications for only 90 days and has no need for the personal information after that. *Id.* ¶¶ 32, 39. The 800,000 applicants whose personal information was compromised consisted of job applicants from the United States, Puerto Rico, and Canada. *Id.* ¶¶ 41, 42. The personal information of all 800,000 applicants is now in the hands of a thief (or thieves), as a result of Gap's conduct.

Neither Gap nor any of its vendors encrypted the job applicants' personal information on the stolen laptops. *Id.* ¶ 33. Thus, any person in possession of one of the stolen computers could readily view the sensitive information without a password. *Id.* ¶ 33. Plaintiff received a letter dated

September 28, 2007 from Gap stating that his personal information was among those compromised in the laptop thefts. *See* Comp. ¶ 34.

Plaintiff filed a class action suit against Gap on November 13, 2007 and served Gap with the complaint on November 27, 2007. Plaintiff, on behalf of himself and a class of similarly situated persons, asserts claims for unlawful and unfair business practices under the UCL, violation of the California Civil Code § 1798.85, violation of the right to privacy, and common law claims for negligence and bailment. *Id.* ¶¶ 51-76.

Defendant has engaged in a flurry of early activity. It answered the complaint and filed a counterclaim on November 20, 2007 (which Plaintiff moved to dismiss on December 7, 2007). Gap also filed redundant motions on December 7, 2007; one a motion for judgment on the pleadings with a request for judicial notice of material and disputable facts and the other a motion to strike. While Defendant claims that the twelve months of credit monitoring it offered is enough to protect Plaintiff and the Class against identity thieves, this claim is based on the erroneous assumption that a thief will not use the compromised information after one year. Since Plaintiff filed his complaint, and presumably in response thereto, Gap has increased the amount of identity theft insurance to $50,000 (from $25,000), as prayed for in Plaintiff's complaint.

## III.    ARGUMENT

### A.    Legal Standard

A party moving for judgment on the pleadings must "clearly establish[] on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995). In considering a motion for judgment on the pleadings, "the court must accept all material allegations of the complaint as true and view them in the light most favorable to the plaintiff." *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999). A court should only dismiss a case if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *See Sun Sav. and Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987). Gap has not met its burden here.

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

1

### B.     <u>Plaintiff Has Article III Standing</u>

2

Gap callously characterizes this case as one being about "fear." Def. Memo at 3. The injuries

3

for which Plaintiff seeks redress, however, are not based on mere subjective "fear," but on the

4

heightened risk of identity theft to which Gap exposed Plaintiff; the violation of Plaintiff's right to

5

privacy (discussed in Part III.C.3 below); and Gap's failure to use reasonable procedures to protect and

6

secure Plaintiff's personal information, as required by law and Gap's own privacy policy (also discussed

7

in Part III.C.3 below). As Plaintiff explains herein, these wrongs are cognizable legal injuries for

8

purposes of Article III standing.

9

### 1.     The Increased Risk of Identity Theft is a Cognizable Injury

10

As a threshold matter, Article III requires a litigant to have "standing"- *i.e.,* to show that he has

11

suffered "injury in fact," that the injury is "fairly traceable" to actions of the opposing party, and that a

12

favorable decision will likely redress the harm. *See Bennett v. Spear,* 520 U.S. 154, 162 (1997). Courts

13

have expressly recognized that the increased risk of identity theft is a legally cognizable injury sufficient

14

to establish standing. *See e.g., Arcilla v. Adidas Promotional Retail Operations, Inc.,* 488 F. Supp. 2d

15

965, 972 (C.D. Cal 2007) (finding that plaintiffs suffered "actual harm" where they had been "subjected

16

to an increased risk of identity theft"). In *Arcilla,* the plaintiffs alleged that a retailer failed to truncate

17

customers' credit card numbers and obscure the expiration dates as required by the Fair Credit

18

Transactions Act ("FCRA"). *See id.* at 967. In denying the defendant's motion to dismiss, the court

19

held that although plaintiffs' loss was "hard to quantify," plaintiffs properly alleged "actual harm" in the

20

form of heightened risk of identity theft sufficient to survive a motion to dismiss. *Id.*

21

Similarly, in *Blanco v. El Pollo Loco, Inc.,* No. SACV 07-54 JVSRNBX, 2007 WL 1113997,

22

(C.D. Cal Apr. 4, 2007), another FCRA case, the defendant argued that Plaintiff had not suffered any

23

harm. The court denied defendant's motion to dismiss and held that proof of "actual harm" was not

24

required to state a claim. *Id.* The court further stated that, "in any event [the class representative] has

25

alleged that she was exposed to at least an increased risk of identity theft by reason of [defendant's]

26

conduct." *Id.* at *2, n.5. Thus, an increased risk of identity theft constitutes actual injury.

27

28

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

1    Gap's claim that Plaintiff's injury is nothing but a mere "fear" is belied by the California

2    consumer protection statutes regarding personal information. For instance, under the California Civil

3    Code, businesses are specifically prohibited from "requiring an individual to use his or her social

4    security number to access an Internet Web site, unless a password or unique personal identification

5    number or other authentication device is also required to access the Internet Web site." *See* Cal. Civ.

6    Code § 1798.85. In addition, California residents may institute civil actions against businesses that have

7    released personal information as a result of failing to maintain adequate security procedures to protect

8    that information. *See* Cal. Civ. Code §1798.81.5 ("A business that owns or licenses personal

9    information about a California resident shall implement and maintain reasonable security procedures and

10   practices appropriate to the nature of the information:); Cal. Civ. Code § 1798.84 ("Any customer

11   *injured* by a violation of [Section 1798.81.5] may institute a civil action to recover damages") (emphasis

12   added). Section 1798.81.5 does not require a showing of identity theft, only that Defendant failed to

13   "maintain adequate security procedures to protection [plaintiff's personal information]." Cal. Civ. Code

14   §1798.81.5. As highlighted by *Arcilla* and *Blanco*, by virtue of Gap's conduct, Plaintiff has suffered the

15   exact type of injury against which these statutes seek to protect. [1]

16   Additionally, the California Constitutional Right to Privacy allows for a private right of action

17   for a number of acts with regard to personal information, such as the "overbroad collection and retention

18   of unnecessary personal information by government and business interests." *Porten v. Univ. of San*

19   *Francisco*, 64 Cal. App. 3d 825, 830 (1976) (citing *White v. Davis*, 13 Cal. 3d 757, 775 (1975)).

20   Further, the right to privacy was meant to protect "[t]he average citizen who does not have control over

21   what information is collected about him…[f]undamental to our privacy is the ability to control

22   circulation of personal information." *Wilkinson v. The Times Mirror Corp.,* 215 Cal.App.3d 1034,

23   1040-41 (1989)(citing legislative history of Article I, Section I).

---

[1]    Plaintiff Joel Ruiz is not a California citizen and does not assert a Section 1798.81.5 claim.
Nevertheless, the statute is relevant to show the California legislature's intent to recognize that those
placed at risk of identity theft have suffered an injury sufficient to pursue a civil action.

Here, although Gap stated that Plaintiff's application (with the personal information) would only be considered for 90 days, it maintained Plaintiff's personal information in an unencrypted form well beyond the time necessary for its job application process. *Cf.* Comp. ¶ 31 (plaintiff applied online in late 2006) with *id.* ¶ 32 (data breach on September 19, 2007). This is exactly the type of "overbroad collection and retention of unnecessary personal information" contemplated by the California right to privacy. *See Porten,* 64 Cal. App. 3d at 830. Mr. Ruiz had no ability to control the circulation of his personal information as Gap failed to maintain adequate security. As discussed more fully in Part III.C.3 below, Plaintiff has clearly suffered an injury under the California right to privacy.

Thus, this case is not about mere "fear," but an actual injury caused by Gap's alleged misconduct.

**2.    Gap's Arguments Against Standing are in Disregard of its Conduct and in Conflict with Controlling California Authority**

Despite the fact that Plaintiff has suffered a cognizable injury, Gap callously disregards the danger it has created for Plaintiff and the Class.  Gap self-servingly argues that the risk of identity theft is not reasonable because only a small percentage[2] of the compromised identities result in theft. *See* Def. Memo. at 4. Moreover, with an entirely nonsensical analogy, Gap brazenly mischaracterizes Plaintiff's harm as "seeing a puddle and worrying about a slip-and-fall." Def. Memo at 4. The millions of identity theft occurrences as well as the gravity of identity theft crimes, however, show Gap's "puddle" analogy to be completely misguided.

From February 2005 to February 2, 2007, more than 100 million records containing the personal information of U.S. residents were compromised, with nearly 19 million U.S. households affected with some theft of personal information. *See* Garcia, *supra,* at 700. From mid-2005 until mid-2006, about 15 million Americans were victims of fraud stemming from identity theft – an increase of more than 50 percent from the estimated 9.9 million victims reported in 2003. *See* 54-Sep Fed. Law. 24, Erin Fonte,

---

[2]    This argument is premised on disputed facts for which Gap requests judicial notice.  Plaintiff opposes the request for judicial notice in a companion brief filed herewith and incorporated herein. *See* Plaintiff's Opposition to Defendant's Request for Judicial Notice.

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

*Who Should Pay the Price for Identity Theft?*, Federal Lawyer (September 2007). The total one-year fraud amount for 2006 was estimated at $55.7 billion, and the average number of hours each victim devotes to resolving fraudulent transactions and negative credit reporting issues is thought to be 40 hours per victim. *Id.* Victims of such crimes generally face "substantial costs" to not only fix their credit but to repair their "good name." *See* Complaint ¶¶ 21, 23. Simply put, this suit is not about some "worry" about a mere puddle. This suit is about the very real danger Gap created that Plaintiff and the Class may become victims of an identity theft crime. Moreover, in this jurisdiction, this is an injury clearly recognized by the courts.

In addition, as discussed in Plaintiff's Opposition to Defendant's Request For Judicial Notice, Defendant's statement that "fewer than 1% of stolen laptop instances ever result in identity theft" comes from a study that the United States Government Accountability Office ("GAO") has pointed out as flawed. Since the ID Analytics study relied upon by Defendants reviewed only four data breaches, the GAO found it was not representative of other breaches. In addition, two of the breaches did not involve personally identifiable information and thus would not be expected to create a risk of fraud involving new account creation. (2007, June 4) *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*. Retrieved December 10, 2007, from United States Government Accountability Office Web site: http://www.gao.gov/new.items/d07737.pdf, p. 29 ("GAO Report"). Moreover, as the GAO report states, law enforcement officials believe the once stolen data has been sold or posted on the web, "fraudulent use of that information may continue for **years**." GAO Report, at 29. Thus, a one-year monitoring program is insufficient.

Although Gap points to a few courts that have denied standing to plaintiffs alleging an increased risk of identity theft, the courts in these cases did not consider *Arcilla* or *Blanco*, nor were they adjudicated in jurisdictions where California's right to privacy and California's personal information protection statutes were controlling authority. For instance, in a case decided one year before *Arcilla* and *Blanco*, the Eastern District of Arkansas in *Bell v. Acxiom Corp.*, No. 4:06CV00485-WRW, 2006 WL 2850042 (E.D. Ark Oct. 3, 2006), based its holding in part on the fact that "no court has considered

7

the risk itself to be damage." *Id.* at *2. Not only did the court not consider *Arcilla* and *Blanco's* finding of actual harm, the court had no need to consider the identity theft and privacy protections in California's constitution and statutes.

Similarly, the courts in Defendant's other cited cases were also decided before *Arcilla* and *Blanco* were handed down and did not involve California's personal information protections. *See Key v. DSW, Inc.*, 454 F. Supp. 2d 684 (S.D. Ohio 2006); *Giordano v. Wachovia Sec., LLC, Giordano,* No. 06-476 (JBS), 2006 WL 2177036, at *5 (D.N.J. Jul. 31, 2006); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 10 (D.D.C. 2007).

Moreover, while Gap argues that Plaintiff's injury is too "conjectural" and "hypothetical" because they are based on "developing injuries in the future," the cases Gap cites for this position did not deal with the identity theft context, and the facts of these cases are distinguishable. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (plaintiff who had been illegally choked during traffic stop unable to show real and immediate threat that this would occur again); *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1862 (2006) (standing denied to taxpayers who sought to challenge state tax and spending decisions); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (environmental groups denied standing to challenge Endangered Species regulation because intention to observe endangered animals in future not "actual or "imminent"); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (person acting as representative for animals had no standing to sue under Endangered Species Act and Administrative Procedure Act); *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir. 1990) (former residents of alcohol treatment center denied standing to seek injunctive relief absent a showing of any systematic policy that would suggest return to center was inevitable); *Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 952 (C.D. Cal. 1999) (public benefit corporation's request to remand to state court granted since it claimed no personal harm and was only suing on behalf of the public under California Proposition 65). In short, these citations do nothing to detract from the holdings and application of *Arcilla* and *Blanco*.

In addition, Plaintiff is entitled to injunctive relief under the UCL. To state a cause of action under the UCL for injunctive relief, Plaintiff must show a likelihood of a "threatened future harm" or a

"continuing violation." *People v. Toomey*, 157 Cal.App.3d 1, 20 (1984). Here, Gap's failure to maintain adequate security procedures resulted in a massive data breach with the loss of personal information of 800,000 applicants. Nevertheless, Gap has failed to undertake any remedial steps in its policies regarding the Company's job application process and storage of personal information. In addition, Gap has failed to undertake any steps to ensure that the personal information of job applicants has been encrypted. Thus, all job applicants to Gap or any of its brand stores face the likelihood that their personal information may be compromised. This is exactly the type of "future harm" appropriate for an injunction under the UCL.

Plaintiff seeks various forms of injunctive relief to protect against this threat of future harm to job applicants, including that Gap establish a reasonable method of securing the personal information of all job applicants as well as that it encrypt all personal information in its possession. *See* Comp. ¶ 68(a)-(c). In addition, Plaintiff requests that Gap receive an audit for a third-party professional on a regular basis to ensure that Gap's security program and its vendors engage in the best industry practices with regard to applicant data in the future. *Id.* at 68(e). Thus, Plaintiff's requested forms injunctive relief provide a means of redress for the threatened future harm of all job applicants, showing a proper claim for an injunction under the UCL.

Defendant's citations are easily distinguishable as none of these cases involved the harm associated with a large-scale data breach. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004) (insured chiropractor had no standing to seek injunctive relief against benefits provider because lack of existing contractual relationship meant was no longer "personally threatened" by conduct); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (plaintiffs denied standing for injunctive relief where future injury was premised on plaintiffs again being arrested under valid criminal statutes); *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (signature collectors denied standing to bring civil rights action against secretary of state because "feelings of frustration" insufficient to constitute "injury-in-fact"). Further, these denials of injunctive relief under the UCL were based on the premise that there is no standing. With *Arcilla* and *Blanco* finding standing here, the holdings in these cases are inapposite and thus injunctive relief appropriate.

9

1    In addition, Defendant's argument that "Plaintiff cannot cure his own lack of standing by suing

2 on behalf of a class who seeks injunctive relief" is a red herring. *See* Def. Memo at 4. Plaintiff is not

3 trying to cure standing by seeking injunctive relief on behalf of a class. Mr. Ruiz has suffered the same

4 injury in fact as the approximate 800,000 other members of the class, namely, the violation of his right

5 to privacy, the loss of protected and secure personal information, and the heightened risk of identity

6 theft. Both of the cases to which Gap cites, *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir.

7 1999), and *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976), are inapplicable

8 because the named plaintiffs there suffered harm different than the class they sought to represent. *See*

9 *Hodgers-Durgin*, 199 F.3d at 1045 (denying injunctive relief to the class representative because she did

10 not suffer the same harm as members of the class that "suffered more frequent, and more recent,

11 injuries); *Simon*, 426 U.S. at 40 (organizations that promoted access of the poor to health services could

12 not assert standing on behalf of indigent citizens who suffered actual harm). Thus, these cases should be

13 disregarded.

14
     ### C.    Plaintiff's Complaint Properly States Claims

15
     #### 1.    Negligence/Bailment

16

17    With the exception of the injury element, Gap does not dispute that Plaintiff has met the other

18 elements of negligence and bailment as pled in the Complaint. *See* Def. Memo at 6. Rather, Gap argues

19 that Plaintiff has failed to state a claim for negligence or bailment because "federal courts" dealing with

20 this issue have stated that "without injury, no claim is stated under substantive state law." *Id.* Gap's

21 argument thus is a derivative of its standing argument and ignores the authority articulated in *Arcilla* and

22 *Blanco* that an increased risk of identity theft is sufficient to show actual harm. *See Arcilla*, 488 F.

23 Supp. 2d at 972; *Blanco*, 2007 WL 1113997, at *3. Although Gap asserts that "plaintiffs have not

24 suffered a harm that the law is prepare to remedy," the numerous statutes in the California Civil Code

25 protecting personal information and against identity theft and the California right to privacy show

26 exactly the opposite (see above discussion in Part II.B.2). *See* Def. Memo at 5.

27    While Gap draws attention to several courts that have denied claims for negligence and bailment,

28 again, these courts did not consider *Arcilla* or *Blanco* in their analysis, nor did they consider the claims

under California law, including in light of the protections of California's right to privacy and California's personal information protection statutes. *See Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 637 (7th Cir. 2007) (finding no injury under Indiana Code § 24-4.9 *et seq.* because the statute *only* requires a database owner to disclose a security breach to customers); *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 780 (W.D. Mich. 2006) (finding that "Michigan law does not recognize the measure of damages proposed by plaintiff in breach of contract actions); *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) (no injury under Minnesota identity theft criminal statutes and relevant sentencing guidelines); *Guin v. Brazos Higher Educ. Serv. Corp., Inc.*, No. 05-668 RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7, 2006) (same); *Ponder v. Pfizer, Inc.*, No. 07-466-JJB-CN, 2007 WL 4197319 (M.D.La. Nov. 7, 2007) (finding no injury under Louisiana common law); *Walters v. DHL Express*, 2006 WL 1314132, at *4 (C.D. Ill. May 12, 2006) (finding no injury under the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*); *Kahle v. Litton Loan Servicing, LP*, 486 F. Supp. 2d 705, 713 (S.D. Ohio 2007) (discussing cases in non-California jurisdictions).[3] Plaintiff here, however, does not face the same limitation when pleading under California law.

Gap cites two California cases, neither of which involve plaintiff's risk of identity theft, for the proposition that "injury" must be "appreciable" and "nonspeculative." In *Zamora*, the court denied a negligence claim to homeowners that sought to recover for damage in defective plumbing pipes which had no leaks. 55 Cal. App. 4th 204, 208 (1997). In dealing with the area of products liability, *Zamora* involved an entirely different species of tort law than the type of harm Mr. Ruiz has suffered. Nevertheless, the *Zamora* court gave great weight to the California Court of Appeal's opinion in *Khan v.*

---

[3] In addition, Plaintiff's case is distinguishable from *Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-0185 PHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005), *aff'd in part*, No. 05-16990, 2007 WL 4116068 (9th Cir. Nov. 20, 2007). In *Stollenwerk*, the court denied plaintiffs' claim because they were unable to show that the sensitive personal information at issue was exposed to thieves. *Stollenwerk*, 2005 WL 2465906, at *5. Here, however, there is no dispute that thieves stole the laptops in question, and would be able to view Plaintiff's unencrypted personal information. Indeed, as Defendant judicially admits, "a crook stole two of the laptops from the vendor's office… "contain[ing] unencrypted personal information of GAP job applicants." Def. Memo at 1.

*Shiley Inc.*, 217 Cal. App. 3d 848, 854 (1990), which held that a plaintiff alleging injury by a defective artificial valve implanted in her heart could not bring a claim unless the valve malfunctioned. *See Zamora*, 55 Cal. App. 4th at 208.

However, here, the "valve" in this case is Gap's *defective* privacy policy, which specifically informed plaintiff that Gap used "reasonable precautions" to protect his personal information when, in fact, Gap's procedures did not provide for reasonable security. *See id.* Plaintiff has experienced harm because Gap's procedures for maintaining security have already "malfunctioned." *Id.* Therefore, even if the Court were to find *Zamora* applicable here, Plaintiff has already experienced the type of "appreciable" harm to show injury.

Similarly, Gap's negligent loss of personal information does not neatly fit the context in *Aas*. There, the court denied damages to plaintiff homeowners that had not suffered property damage. The court analyzed California cases regarding manufacturers and merchants in the context of tort and contract law. *See Aas*, 24 Cal. 4th at 635 (discussing the "nebulous and troublesome margin between tort and contract law"). In its discussion, the court focused on the requisite showing of harm necessary where a manufacturer puts a product into the stream of commerce.

Gap did not put a product out into the stream of commerce, and Mr. Ruiz does not allege that his harm resulted from a product. Mr. Ruiz was merely a job applicant to Gap and entrusted Defendant with his personal information. Thus, *Aas* is inapposite here. Moreover, the *Aas* court discussed California's distinct body of law surrounding "construction defects." *Aas*, 24 Cal. 4th at 646 (citing *Davies v. Krasna*, 14 Cal. 3d 502, 513 (1975)) (emphasis added). *Id.* Here, California law surrounding construction defects provides little guidance in a case involving the negligent loss of personal information.

### 2.      The Complaint Properly Pleads Claims for Violation of the Unfair Competition Law for the Court's Adjudication

The UCL is a very broad remedial statute that allows a person to challenge wrongful conduct "in whatever context such activity might occur." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The UCL prohibits "unfair competition" which is broadly defined to include "any

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. Thus, the statute is violated when a defendant's practices are (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500. *See Cel-Tech*, 20 Cal. 4th at 180.

### a.     The Complaint Sufficiently Alleges Facts Constituting Injury in Fact and Lost Money or Property

Plaintiff properly alleges that he suffered injury in fact and that he has lost property entitling him to both injunctive and restitution under the UCL.  Notwithstanding California authority to the contrary, Gap argues that Plaintiff lacks standing under the UCL.  Gap claims that (1) Plaintiff's alleged injuries do not qualify as injury in fact, and (2) there is no money or property for Gap to return that it had taken from Plaintiff in the first place. *See* Def. Mem. at 7-8. Gap is wrong on both points.

First, in *White v. Trans Union LLC,* 462 F.Supp.2d 1079, 1084 (C.D. Cal. 2006), the court held that the only thing the UCL requires are allegations that the plaintiffs suffered injury in fact and lost money or property. *Id.* In that case, the court found that the plaintiffs' allegations that the defendant prepared credit reports containing inaccurate information were sufficient to grant standing under the UCL. *See id.*  The court further held that the UCL does not require that the lost money or property be the product of the defendant's wrongful acquisition of such money or property. *See id.*

Plaintiff meets the standing requirement under *White* here.  First, Plaintiff alleges that he suffered injury in fact and lost property (his protected and secured, personal information). *See* Complaint ¶ 63. Plaintiff's other allegations, which Gap ignores, include Gap's promise to use reasonable precautions to protect and secure his personal information from unauthorized use and access in exchange for online employment applications. *See* Complaint ¶ 8. Gap, however, did not use reasonable precautions as promised. *Id.*  Instead, Gap maintained Plaintiff's personal information longer that it was necessary instead of destroying it and in any event, failed to ensure that such information was encrypted on laptops, in violation of California law and contrary to the FTC's guidelines. *See* Complaint ¶¶ 33, 39 and 40.   Plaintiff alleges that as a result of Gap's conduct, his right to privacy was violated; the protection and security of his personal information was lost; and he is at a heightened risk for identity theft.  Based on these allegations, Plaintiff has standing under the UCL.

13

1       Second, contrary to Gap's argument, a plaintiff does not have to show that he is entitled to

2   restitution to have standing under the UCL. *See G&C Auto Body Inc. v. Geico General Ins. Co.,* Case

3   No. C06-04898MJJ, 2007 WL 4350907 *4 (N.D. Cal. Dec. 12, 2007) (upholding the plaintiff's claim for

4   injunctive relief under the UCL although the plaintiff could not recover restitution).  Under the UCL,

5   both injunctive and restorative relief are available.  *See* Cal. Bus. & Prof. Code § 17203.  While a

6   showing of an entitlement to restitution is necessary for an order of restitution, a showing of entitlement

7   to restitution is not a prerequisite to standing under the UCL because injunctive relief is nonetheless

8   available.

9       For instance, in *G&C Auto Body,* Judge Jenkins refused to adopt the reasoning and holding of the

10  case Gap principally relies on, *Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168 (E.D. Cal. 2007)

11  (stating that standing under the UCL requires that the plaintiff show entitlement to restitution for

12  injunctive relief).  Instead, Judge Jenkins held that there was "no basis to presume that the People of

13  California, when adopting Proposition 64, meant for the new Section 17204 standing requirements to

14  track the requirements for obtaining restitution under Section 17203 set by *Korea Supply, Cortez* and

15  their progeny."  *G&C Auto Body,* 2007 WL 4350907, at *4.  Thus, Plaintiff at minimum has standing to

16  seek injunctive relief, even if the Court finds that he does not have standing to pursue restitution.

17      Plaintiff, however, has shown that he is entitled to restitution under the UCL.  The California

18  Supreme Court has emphasized that "the concept of restoration and restitution is not limited only to the

19  return of money or property that was once in possession of that person.  Instead, restitution is broad

20  enough to allow Plaintiff to recover money or property in which she has a vested interest." *Korea*

21  *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003).

22      For instance, in *Lozano v. AT&T Wireless Services, Inc.,* 504 F.3d 718 (9th Cir. 2007), the Ninth

23  Circuit held that the plaintiff had a vested interest in the 400 free anytime minutes that the defendant had

24  promised under the cellular contract and that the plaintiff properly alleged an injury based on allegations

25  that he did not receive the full value of his contract.  According to the Ninth Circuit, this injury was

26  redressable under the UCL.  Here, Plaintiff properly alleges injury in fact and lost property based on

27  allegations that Gap promised to provide reasonable precautions to protect and secure Plaintiff's

28  personal information.  This injury is properly redressable by the restoration of reasonable procedures –

such as credit monitoring services for a reasonable duration – to protect and secure the personal information belonging to Plaintiff and the Class.[4]  While this case does not involve quintessential contractual rights as in *Lozano*, this case, like *Lozano*, involves a vested interest in property – only here, the vested interest is in the secure and protected personal information belonging to Plaintiff.

Gap's reliance on *Reid v. Google, Inc.,* 155 Cal. App. 4th 1342 (2007), *Chavez v. Blue Sky Natural Beverage Co.*, 503 F.Supp.2d 1370 (N.D. Cal. 2007), and *In Re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) is misplaced.  In *Google*, the plaintiff alleged that the defendant's hiring and promotional practices violated the UCL. In striking the plaintiff's UCL claim, the court held that because plaintiff never applied for a job he did not suffer and injury and therefore lacked standing.  This case is quite different, however; Plaintiff *did* submit his personal information to Gap, which promised to take reasonable steps to protect and secure from authorized use and access.  Now that Plaintiff's personal information is in the hands of a thief as a result of Gap's conduct, Gap must restore the protection and security in which Plaintiff has a vested legal interest in.

The instant case is also quite different than that in *Chavez v. Blue Sky*.  There, the plaintiff alleged that the defendant violated the UCL based on representations that defendant advertised its drinks as originating in Santa Fe, New Mexico when they were not.  Plaintiff, however, did not allege that he paid a premium for the defendant's drinks because the drinks did not originate from Santa Fe, New Mexico.  Thus, this Court held that the plaintiff did not sustain damages and therefore had no standing to pursue the UCL claim.  In contrast here, Plaintiff has sustained injury and lost property in the form of his protected and secured personal information.  Gap can restore protection and security of that personal information through credit monitoring services for a reasonable duration.

Finally, *In Re First Alliance* is also distinguishable.  That case (which involved an appeal from a judgment after trial), is inapposite because the plaintiffs there sought the disgorgement of profits from the defendant.  The plaintiffs there, however, could not prove that any ill-gotten gains had gone from the plaintiffs to defendant.  Here, in contrast, Defendant can restore security and protection to Plaintiff's

---

[4]    While Gap has provided Plaintiff one-year of credit monitoring services, this is not enough.  According to the United States Government Accountability Office ("GAO"), stolen data may be held for more than a year and that if such data is sold or posted on the Web, fraudulent use of that information may continue for "years."  *See* GAO website at http://www.gao.gov/new.items/d07737.pdf.

1   personal information, which was lost and taken away as a result of Gap's failure to use reasonable

2   security measures, such as deleting unnecessary, personal information and otherwise using encrypting

3   techniques, among other things.  Accordingly, the Court should deny Gap's motion for judgment on the

4   pleadings as to Plaintiff's UCL claim.

5              **b.    The Complaint Properly Pleads Unlawful Business Practices**

6          An unlawful business practice under the UCL is a practice that violates any other law.  *See Cel-*

7   *Tech*, 20 Cal. 4th at 180.  Laws that can serve as a predicate for unlawful business practices include

8   consumer protection statutes (*see e.g., Massachusetts Mutual Life Ins. Co. v. Sup. Ct.*, 97 Cal.App. 4th

9   1282 (2002) (Consumers Legal Remedies Act)); court made law (*see Bondanza v. Peninsula Hospital &*

10  *Medical Center*, 23 Cal.3d 260, 266-68 (1979) (rule announced in earlier California decision); and FTC

11  rules and other FTC authority (*see e.g., People ex rel. Mosk v. Nat'l Research Co of Calif.*, 201 Cal.

12  App. 2d 765, 772-73 (1962)).

13         Gap, however, incorrectly argues that Plaintiff's unlawful business practices claim fails because

14  Plaintiff's predicate claims fail.  As shown in Parts III.C.3-4, Plaintiff adequately states claims for

15  violation of the right to privacy and for violation of Civil Code § 1798.85.  Moreover, Plaintiff's claim

16  for unlawful business practices is predicated on other statutes which Gap *does* not challenge as proper

17  predicate claims.  In sum, Plaintiff's predicate claims are:

18      • Cal. Const. Art. 1, § 1 (right to privacy);

19      • Cal. Civil Code § 1798.81 (requiring companies to take reasonable steps to destroy

20        personal information no longer needed);

21      • Cal. Civil Code § 1798.85 (requiring companies that obligate the use of social security

22        numbers on the Internet to also require unique personal identification numbers; and

23      • FTC's guidelines (stating that companies should take reasonable precautions such as

24        encrypting personal information and avoiding the unnecessary storage of social security

25        numbers, among other things) (attached as Exhibit A to the Complaint).

26         Since the Complaint alleges facts supporting violations of the above predicate laws, and for

27  many Gap does not even raise a challenge, Plaintiff properly states a claim for unlawful business

28  practices.

c.     **The Complaint Properly Pleads Unfair Business Practices**

In *Cel-Tech*, the California Supreme Court stated that conduct that is not "unlawful" may nevertheless be "unfair." *Id.* at 180.   The California Supreme Court in *Cel-Tech* reviewed the various tests used by courts to define "unfair," such as the test enunciated in *People v. Casa Blanca Convalescent Homes, Inc.,* 159 Cal. App. 3d 509, 530 (1984) (stating that "[a]n unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."). Finding that the test from *Casa Blanca* was too ambiguous when applied, the California Supreme Court in *Cel-Tech* held that any "finding of unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel*-Tech, 20 Cal. 4th at 187.  Although the California Supreme Court expressly held that this test applies in competitor cases only, there is a split of authority as to which test applies under the unfair prong of the UCL in consumer cases such as this one.  Some courts have continued to apply the old test enunciated in *Casa Blanca*, other courts have applied the *Cel-Tech* test.

Regardless of which test applies, Plaintiff meets both.  First, there is no question that Gap's conduct offended an established policy, namely, the use of reasonable procedures to secure and protect personal information such as birthdates and social security numbers as established by Cal. Civ. Code § 1798.81.5.  Further, Gap's failure to do so is substantially injurious to consumers because it invades their right to privacy under Cal. Const. Art. 1, § 1 and puts them at an increased risk for identity theft.

Finally, there is no question that Plaintiff's claims are tethered to the legislative declared policy of protecting consumers' personal information from unauthorized disclosure and identity theft, which underlies 1798.81 (requiring companies to take reasonable steps to destroy personal information no longer needed); Cal. Civ. Code §§ 1798.81.5 (requiring companies to use reasonable security procedures to protect personal information from unauthorized access); and 1798.85 (requiring companies that

17

obligate the use of social security numbers on the Internet to also require unique personal identification numbers).[5]  Accordingly, Plaintiff's claim for unfair business practices should be sustained.

### d.    Defendant's Policy-Based Abstention Argument Is Irrelevant And Without Merit

Under the equitable abstention doctrine, a court abstains from deciding issues involving economic policy matters or the intersection of state and federal law because such matters are better left to the legislature or regulatory agencies.  The doctrine may be applied where a UCL action would drag a court of equity into an area of complex economic policy.  *See McKell v. Wash. Mut., Inc.*, 142 Cal.App. 4th 1457, 1473-74 (2006).  That is not the case here.

Defendant attempts to paint an apocalyptic future in arguing that Plaintiff's claims, if adjudicated, will result in the Court being dragged into "an area of complex economic policy."  Def. Memo. at 9.  Defendant's argument could not be farther from the truth.  Defendant's allegations in this regard are nothing more than an attempt to evade its patent liability to Plaintiff for its own negligent conduct, as Defendant goes so far as to suggest that resolution of Plaintiff's claims will somehow negatively effect California taxpayers.  Defendant makes many assertions, but it "has not shown a complex administrative scheme" that would support the application of equitable abstention.  *See Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d. 1035, 1038 (C.D. Cal. 2006).  In fact, not once does Defendant articulate how this case represents anything even relating to economic matters or judicial interpretation of same.

Resolution of Plaintiff's claims will not require the Court "to invent a common law remedy" as Gap claims.  *See* Def. Memo. at 10.  Rather, Plaintiff has brought claims under long-established principles of law, which will allow for the fullest recovery of his damages as caused by Defendant's negligence.  Defendant appears to try and convince the Court that because "[i]n California alone, there have been at least 93 reported incidents [of data breach] in the past two years," that its own lapse in

---

[5]    Gap argues that it has done all that it was required to do under the law.  But Gap only mentions Civil Code § 1798.82(a), which requires notice of a data breach.  Gap does not address whether it complied with the other consumer protection statutes discussed herein.

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

1    responsible data security measures should be excused.  *Id.*[6]  Such finger pointing merely highlights the

2    threat facing people as a result of the negligence perpetrated by companies such as Defendant.

3        Defendant, ignoring the duties and requirements of Cal. Civ. Code § 1798.85, argues that since it

4    has complied with California's breach-notification law (Civil Code § 1798.82(a)), nothing more is

5    required of it.  Whether Defendant has satisfied its duty to notify of the breach has no bearing on its

6    liability for the claims based on the breach.  In other words, liability for negligence and statutory

7    violations cannot be mooted simply because Gap notified its victims.

8        Contrary to Defendant's suggestion, the statute does *not* state that consumer claims regarding

9    data breaches are in any way barred.  The statute only requires that consumers receive notification of a

10   data security breach.  Upon that notification, consumers can then freely litigate any claims for injury that

11   they may have suffered in a court of law, as Plaintiff is doing here.  If anything, Cal. Civ. Code §§

12   1798.82 and 1798.84 illustrate the dangers of identity theft to consumers.  The topic is of such

13   importance that the legislature has mandated that consumers need to be notified when their personal and

14

15   private financial information has been unnecessarily placed at an increased risk.

16        Finally, in addressing Plaintiff's claims, the Court will have no cause to intervene in any

17   legislative matters.  *McKell v. Washington Mutual, Inc.* is instructive on this point.  "[T]he legislative

18   determination as to the propriety of [the defendant's] actions already has been made through the

19   enactment of the applicable laws.   Thus, by addressing plaintiffs' UCL claims, we are doing no more

20   than enforcing already-established economic policies."  *McKell v. Wash, Mut., Inc.*, 142 Cal. App. 4th

21   1457, 1474 (2006).  The Court would be doing the same here—enforcing the decision by the legislature

22   to allow Plaintiff to litigate his claims, and the claims of members of the proposed Class, in open court.

23   Defendant's public policy argument, and not Plaintiff's claims, should be barred as an argument best left

24   for lobbyists and legislators to debate on the floor of the California state legislature if they choose to

25

26

27   [6]    As argued in Plaintiff's opposition to Gap's Request for Judicial Notice in Support Motion for

28   Judgment on the Pleadings, the accuracy and reliability of the list of incidents, as well as its relevance, have been reasonably questioned.

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

1  amend the laws.  Until such a time as the laws upon which Plaintiff relies have been repealed, Plaintiff is

2  free to pursue his claims under those laws and the Court to apply them.

### 3.    The Complaint States a Claim for Invasion of Privacy

To state a claim for violation of the right of privacy under the California constitution, Plaintiff

must allege facts showing:  (1) a legally protected privacy interest; (2) a reasonable expectation of

privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.

*See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994).  Plaintiff meets each of these

elements.  First, he has alleged a legally protected privacy interest in his personal information;[7] he has

alleged a reasonable expectation of privacy by virtue of Gap's privacy policy; and he has alleged a

serious invasion of his privacy, namely, the disclosure of his personal information by virtue of Gap's

alleged misconduct.

Gap does not dispute that Plaintiff meets the first two elements.  Gap, however, argues that

Plaintiff has failed to allege a serious invasion of privacy because (1) its loss of 800,000 personnel

records was not "an egregious breach of the social norms underlying the privacy right," and, (2) Plaintiff

has not alleged an injury for himself and the Class as a result of the incident.  Gap is wrong.

Whether conduct constitutes a serious invasion of privacy is a mixed question of law and fact,

unless the undisputed material facts show an insubstantial impact on privacy interests, then the question

may be adjudicated as a matter of law.  *See Hill*, 7 Cal. 4th at 40.  The material facts, however, are in

dispute.  Gap baldly asserts in its brief that despite its "best precautions," this incident arose out of the

"intervening negligence of a third-party vendor and the intervening criminal act of a thief."  Def. Memo.

at 1.  These arguments, however, are more appropriate for a motion for summary judgment under Rule

56 and not a motion under Rule 12(c) because at this stage, Plaintiff's complaint alleges the opposite

(*see* Complaint ¶¶ 8, 27, 33) and must be accepted as true.  *See Fajardo*, 179 F.3d at 699.[8]

---

[7]     *Hill* recognizes informational privacy, which concerns the right to prevent dissemination of
sensitive or confidential information.  *See id.* at 35.

[8]     The Court should be mindful that there has been no discovery initiated in the short time this case
has been pending before it.  Although Gap is attempting to introduce material and disputable facts and

Plaintiff alleges that Gap, despite its promises to do so, failed to maintain reasonable and adequate security measures to protect against the theft of job applicants' personal information. Among other things, Plaintiff alleges that Gap maintained the personal information of its job applicants, including their name, birthdates, social security numbers and other personal identifying information, well beyond its usefulness, contrary to the rules issued by the FTC which state that social security numbers should not be stored unnecessarily. *See id.* at ¶ 33. Gap's policy is that an application will only be considered for 90 days, therefore there was no need to maintain this personal information for longer than 90 days. *See id.* at ¶ 40. Gap, however, did maintain this personal information for longer than 90 days. *See id.* at ¶ 39. Whether Gap's conduct constitutes an "egregious breach of the social norms underlying the privacy right" and hence, a "serious invasion," is obviously disputed by the parties. Therefore, a judgment on the pleadings is inappropriate.

The notion that privacy rights are violated when personal information, such as social security numbers and other personal identifying information is exposed is not new. In *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993), the Fourth Circuit invalidated Virginia's law requiring social security numbers on voter registration applications and making such registration lists public. The Fourth Circuit held that disclosing a social security number as a condition to voting "creates an intolerable burden on that right as protected by the First and Fourteenth Amendments." The Third Circuit similarly held that the release of social security numbers of employees of nonunion contractors hired for government project would constitute clearly unwarranted invasion of privacy, and thus, was barred by the privacy exemption to Freedom of Information Act, 5 U.S.C. § 552(b)(6)). *See International Brotherhood of Electrical Workers Local Union No. 5 v. United States Department of Housing and Urban Development,* 852 F.2d 87 (3d Cir.1988). In light of these cases and California laws designed to protect such personal information, there is no question that Gap's decision to maintain personal and identifying information,

---

testimony addressed to the merits of the case, such should be avoided in analyzing Rule 12(c) motions. As the standard cited by Gap holds, only the complaint and documents whose contents are alleged in the complaint or are incorporated therein may be considered. *See In re Century 21,* 882 F. Supp. at 921; Def. Memo. at 3. Once discovery is completed, Gap is free to re-raise many of its arguments under the proper vehicle, with the proper evidence and at the proper time.

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

such as the names and social security numbers of Plaintiff and the Class, beyond its usefulness, coupled with its failure to ensure the encryption of such information, constitutes a "serious invasion" of privacy when that information is subsequently in the hands of a thief.

Finally, Gap's argument that Plaintiff fails to state a claim for violation of the right to privacy because he has not alleged "injury" is also wrong. Plaintiff properly plead an injury to his right to the privacy of his personal, identifying and financial information; the lack of protection and security of his personal, identifying and financial information that Gap promised, and the increased risk of identity theft, as acknowledged in *Arcilla* and *Blanco* (*see* Part III.B.1). At the pleading stage, the Court must accept Plaintiff's allegations as true. *See NL Indus.*, 792 F.2d at 898. Accepting Plaintiff's allegations as true, the Complaint clearly alleges facts constituting a serious invasion of privacy. Therefore, Gap's motion for judgment on the pleadings as to the claim for violation of privacy should be denied.

### 4.    Plaintiff States a Claim for Violation of California Civil Code § 1798.85

Gap does not dispute that it engaged in actions specifically prohibited by Cal. Civ. Code § 1798.85 – *i.e.*, that Gap required Plaintiff to use his social security number to enter the job application process without also requiring a unique personal identification number or authentication device. Gap, without any authority, merely argues that Section 1798.85 provides no private right of action. However, in viewing the legislative intent of Section 1798.85, it is clear that the California legislature intended a private right of action.

Where the words of a statute do not explicitly state a private right of action, determining whether a regulatory statute creates a private right of action depends on legislative intent. *See Goehring v. Chapman Univ.*, 121 Cal. App. 4th 353, 375 (2004) (citations omitted) (finding that the "Legislature unquestionably intended to bestow" plaintiffs with a private right of action under Cal. Bus. Prof. Code § 6061). In 2001, the governor signed Senate Bill ("SB") 168, which added Section 1798.85 to the Civil Code. 2001 Cal. Legis. Serv. Ch 720 (S.B. 168)(West). SB 168 was an attempt by the legislature to "address the issue of the risk of financial loss being adequately shared by those who benefit from the collection and dissemination of personal information, financial and otherwise." *Consumer Credit Reporting Agencies Act, Obligations of Consumer Credit Reporting Agencies and Confidentiality of*

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC

*Social Security Numbers: Hearing on S.B. 168 Before the Assemb. Comm. on Banking and Finance*, 2001 Leg. Sess. 1-5 (Cal. 2001).  During the committee hearings for SB 168, the author of the bill stated the intent behind the bill:

> Identity theft is on the rise… Criminals who steal personal information such as SSNs use the information to open credit card accounts, write bad checks, buy cars and commit other financial crimes with other people's identities.  It can take years for victims to clear their credit records, during which time they often have trouble establishing new credit, renting apartments, and finding employment, since many applications require a credit check as part of the approval process.

During the June 18, 2001 hearing regarding SB 168, the chair of the committee stated that the bill's author should "consider specific causes of action and monetary sanctions for violations.  Included in such sanctions should be costs and attorney fees to the prevailing plaintiff."  Assembly Committee Hearing, SB 168, June 18, 2001, at 4.  The committee agreed that this was an area for which companies who suffered data breaches should take on the risk.  The chair of the committee stated:

> Our common law has recognized that whoever has control of the circumstance that gave rise to the mischief bears the risk for that mischief… And that is the state of the law generally as evidence in laches, estoppel, comparative fault, assumption of risk, construing the contract against the drafter and other situations where risk must be assigned.  This is an appropriate area for such assignment of risk.

*See* Assembly Committee Hearing, SB 168, June 18, 2001, at 4-5.

Plaintiff clearly has suffered the type of harm meant to be protected by this statute – i.e., being put at risk of identity theft.  Moreover, the statute's legislative history clearly manifests the legislature's intent that the entity with "control of the circumstance that gave rise to the mischief [bear] the risk for that mischief.  *Id.* at 4-5.  Here, since Gap's failure to require another authentication device other than his social security number violated the prohibitions of Section 1798.85, Plaintiff clearly has a private right of action against Plaintiff under the statute.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Gap's motion for judgment on the pleadings.

Dated: December 21, 2007

Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

MARK PUNZALAN

Rosemary M. Rivas
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: 415.398.8700
Facsimile:  415.398.8704

Mila F. Bartos
Tracy Rezvani
Karen J. Marcus
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202.337.8000
Facsimile: 202.337.8090

*Of Counsel*
Ben Barnow
Sharon Harris
**BARNOW AND ASSOCIATES, P.C.**
One N. LaSalle Street
Suite 4600
Chicago, Illinois 60602

PLAINTIFF'S MPA IN OPP. TO GAP'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. C 07-5739SC