WILLIAM L. STERN (CA SBN 96105)
CLAUDIA M. VETÉSI (BAR NO. 233485)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
E-mail: wstern@mofo.com

Attorneys for Defendant and Counterclaimant
GAP INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOEL RUIZ, On Behalf of Himself and All Others Similarly Situated,<br><br>            Plaintiff,<br><br>    v.<br><br>GAP, INC., and DOES 1-9 inclusive,<br><br>            Defendants. | Case No.   C 07-5739 SC<br><br>**DEFENDANT GAP INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:   January 11, 2008<br>Time:   10:00 a.m.<br>Room:   Courtroom 1, 17th Floor<br>Judge:  Honorable Samuel Conti<br><br>Complaint filed:   November 13, 2007 |

**I.    INTRODUCTION**

Plaintiff Joel Ruiz said it well. Insisting he has standing, Mr. Ruiz says this case is not about "mere subjective 'fear,' but [about] the heightened risk of identity theft to which Gap exposed plaintiff…."[1] By that logic, a landowner who spills water on the sidewalk also exposes the public to a "heightened risk" of injury. But does Mr. Ruiz suppose that if he sees that puddle and *doesn't* fall he could sue for "heightened risk of falling," let alone bring a class action on behalf of everyone who, like him, avoided injury? The Court could put away the case books; Mr. Ruiz's "heightened risk" theory is just "fear of identify theft" by another name.

---

[1] Plaintiff's Memorandum of Points and Authorities in Opposition to Gap's Motion for Judgment on the Pleadings, 4:3-4 ("Oppo. Mem.").

To date, not a single "fear of identify theft" case has survived past the pleading stage.[2] Mr. Ruiz asks the Court to ignore the significant body of established precedent in this area and instead follow two district court cases, one unpublished. Yet, neither case involved a data breach or Article III standing. Instead, both cases arose from a retailer's failure to truncate expiration dates from consumers' credit card receipts. This just shows how far afield Mr. Ruiz has strayed.

Mr. Ruiz brands GAP as "callous," but imagine a judicial system that accepted Mr. Ruiz's "heightened fear" theory. A bystander who didn't slip and fall could bind someone who did. An imaginary victim of identity theft that Mr. Ruiz hypothesizes could be bound by a spectator. But if a different court were to later find that such a person was not bound, GAP will have been subject to a lawsuit in which it cannot bind its adversary. That violates due process. Mr. Ruiz is inviting this Court to host a lawsuit that cannot be settled or adjudicated with finality.

Mr. Ruiz's lack of injury means either that he lacks Article III standing or he cannot state a claim. Either way, the Court should enter judgment on the pleadings.

## II.    ARGUMENTS IN REPLY

### A.    Mr. Ruiz Lacks "Article III" Standing.

#### 1.    *Arcilla* and *Blanco* Are Irrelevant.

As GAP explained in its opening memorandum, about half the federal courts faced with a "Fear of Identity Theft" case like this one have dismissed for lack of Article III standing. (*See* Opening Mem., pp. 3-5 (and cases cited).) Mr. Ruiz asks this Court to reject those authorities and instead follow two cases from the Central District, *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007) and *Blanco v. El Pollo Loco, Inc.*, 2007 WL 1113997 (C.D. Cal., April 3, 2007). (Oppo. Mem., 4:12-28; 7:23-8:9; 10:17-11:15.) Those cases have nothing to do with the issues on this motion.

---

[2] In its opening memorandum (at page 5 n.6), GAP pointed out *In Re Department of Veterans Affairs (VA) Data Theft Litigation*, MDL Docket No. 1796 (D. D.C. 2007), in which a court allowed a claim to proceed against the government based on the Privacy Act (5 U.S.C. § 552a). But that statute expressly creates a private right of action *against the government* for loss of personal information. No such statute or private right of action exists here, and Plaintiff does not rely on *Department of Veterans Affairs*.

DEFENDANT GAP INC.'S REPLY BRIEF RE MOTION FOR JUDGMENT ON THE PLEADINGS
C 07-5739 SC
sf-2443198

2

*Arcilla* and *Blanco* were class action lawsuits against retailers over their failure to truncate expiration dates from consumers' credit card receipts in violation of the federal Fair and Accurate Credit Transactions Act of 2003, 15 U.S.C. § 1681c(g) ("FACTA").[3]  The defendants moved to dismiss, arguing that actual damage is required to recover punitive damages.  But under the FACTA, "actual harm" *is not an element of the claim. Blanco*, 2007 WL 1113997, *3.  Thus, the injury element of the FACTA was satisfied because plaintiffs had "been subjected to an increased risk of identity theft and thereby suffered an actual loss'." *Id.*; 488 F. Supp. 2d at 972.

Neither *Arcilla* and *Blanco* involved a data breach.[4]  Neither case discussed Article III standing.  Neither court analyzed whether a "no-injury" case would satisfy the elements of the five state-law claims for relief alleged in this case.  To the contrary, the discussion of "heightened risk of injury" came in the context of discussing the statutory elements of the FACTA, an entirely different statutory claim.  Mr. Ruiz does not allege a FACTA claim in this case.

### 2.    Plaintiffs' State-Law Claims Cannot Confer "Article III" Standing.

Mr. Ruiz next argues that his statutory claims confer Article III standing. (Oppo. Mem., 5:16-24.)  Again, he is wrong.

First, the California Legislature cannot enlarge federal court jurisdiction.  "The jurisdiction of federal courts … is the product of federal statute, and the states lack the power either to expand or limit the scope of that jurisdiction." *People v. Beltz Travel Service, Inc.*, 379 F. Supp. 948, 950 (N.D. Cal. 1974).

Second, the statute on which Mr. Ruiz relies, Cal. Civ. Code § 1798.81.5, is not pled, and he admits that he "does not assert a Section 1798.81.5 claim." (Oppo. Mem., 5 n.1.)

---

[3] Section 1681c(g) provides: "[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

[4] Mr. Ruiz complains that some of GAP's "Article III" cases (e.g., *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) and *O'Shea v. Littleton*, 414 U.S. 488 (1974)) did not involve large-scale data breaches. (Oppo. Mem., 9:18-28.)  But when GAP does cite Article III data breach cases, such as the dozen cases cited in its Opening Memorandum, he complains that those courts did not cite *Arcilla* or *Blanco*. (*See* Oppo. Mem., 7:23-8:3.)  As noted above, *Arcilla* or *Blanco* are *not* data breach cases.

DEFENDANT GAP INC.'S REPLY BRIEF RE MOTION FOR JUDGMENT ON THE PLEADINGS
C 07-5739 SC
sf-2443198

3

Third, even if pled, that statute would not be availing. It requires businesses to "implement and maintain reasonable security procedures and practices, appropriate to the nature of the information, to protect the personal information from unauthorized" access or disclosure. *Id*. But there is an important limitation: "Any customer *injured* by a violation of this title may institute a civil action *to recover damages*." Cal. Civ. Code § 1798.84(b) (italics added). "Injured" means someone "who has sustained personal injuries or property damage at the hands of a tortfeasor." *See Helfend v. Southern Cal. Rapid Transit Dist*., 2 Cal. 3d 1, 8 n. 7 (1970). Mr. Ruiz was not "injured." He has not incurred "damages." He is a bystander and is not even asserting this claim.

### 3. GAP's "Fear of ID Theft" Cases Are Indistinguishable.

Mr. Ruiz seeks to distinguish the "Fear of ID Theft" cases cited in GAP's opening memorandum. He says that none of those cases considered *Arcilla* and *Blanco*. (Oppo. Mem., 7:23-8:3.) But the better question is, why would a court hearing a data breach case cite a FACTA decision? More directly to the point, the Seventh Circuit canvassed data breach cases nationwide and concluded: "Plaintiffs have not come forward with a single case or statute, from any jurisdiction, authorizing the kind of action they now ask this federal court ... to recognize ...." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007).[5]

### 4. Plaintiff Misunderstands the Relevance of the Data Breach Study.

Plaintiff criticizes GAP's citation to a study showing that fewer than 1% of data breaches result in identity theft. (*See* Opening Memo., 1:19-21; 10:10-14.) But he misunderstands its significance. Whatever the real number, the odds are strongly against Mr. Ruiz or any of the 800,000 putative class members experiencing an identity theft.[6] If anything, Mr. Ruiz's criticism (*see* RJN Oppo., 4:15-5:10) suggests that the number of California data breaches may be *under*-

---

[5] *Pisciotta* was decided after *Arcilla* and *Blanco*. *Cf*., Oppo. Mem., 8:4-9 ("Defendants' other cited cases were also handed down before *Arcilla* and *Blanco* were handed down ….")

[6] Mr. Ruiz complains that this study was criticized by the GAO, but that same GAO report concludes that "most breaches have not resulted in detected incidents of identity theft, particularly the unauthorized creation of new accounts." GAO Report, page 1. Also, following a review of the 24 largest breaches reported in the media from January 2000 through June 2005, the GAO found that *only three* of 24 incidents resulted in fraud. *Id*.

inclusive, which would make the denominator larger and the odds of ID theft all the more remote.[7]

The Court is not being asked to decide the odds of identity theft. But this debate just underscores that it is for the legislature and Congress to assess the trade-offs between risk-prevention and appropriate compensation to "injured" parties. Otherwise, you risk converting every breach *notification* done pursuant to California statute into a strict liability "sue me" law.

### B.  The Court Should Dismiss For Failure To State A Claim.

Other federal courts have thrown out "Fear of Identity Theft" cases because, without injury, no claim is stated under state law. This Court should reach the same result.

#### 1.  Plaintiff Fails to State a Claim for Negligence or Bailment.

Plaintiff does not contend that California negligence and bailment law allows a claim based on a mere "heightened risk" theory. (*Cf.*, Oppo. Mem., 10:17-11:15.) Nor could he: "[A]ppreciable, nonspeculative, present injury is an essential element of a tort cause of action." *Aas v. Super. Ct.*, 24 Cal. 4th 627, 646 (2000); *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 208-211 (1997) (no cognizable damage in the cost of replacing defective pipes that had not yet leaked.) So, even if Mr. Ruiz had standing, his lack of injury means he has no tort claim.

Mr. Ruiz complains that these courts did not discuss *Arcilla* or *Blanco* or did not involve data breaches. Yet, these cases express general tort principles. As for the seven cases GAP cites that did involve data breach and rejected negligence or bailment claims (*see* Opening Mem., pp. 5-6), Mr. Ruiz quibbles that they construe other states' laws. (Oppo. Mem., 10:27-11:15.) But he has not shown that California tort law is different or that it permits "heightened risk" to substitute for actual injury. The Court should enter judgment as to Counts I and II.

---

[7] Mr. Ruiz ignores two facts that tend to diminish the odds of an ID theft in this case. First, none of the personal information involved bank account information, credit card data, PIN numbers, or the like. It involved SSNs. Second, many of the other reported incidents involve hackers whose infiltration was done for the very purpose of stealing personal data and exploiting it. Here, a thief stole a laptop, and was likely oblivious to the data.

### 2. Plaintiff Fails to State a Claim Under California's UCL.

Plaintiff's lack of injury also means he cannot state a UCL claim. (Opening Mem., pp. 7-8.) Mr. Ruiz disagrees, citing *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079 (C.D. Cal. 2006). (Oppo. Mem., 13:12-28.) But there, the plaintiffs sought only injunctive relief, not money. If plaintiffs had sought money—as Mr. Ruiz does—"Plaintiffs would be required to show that Trans Union took money directly from them in order to obtain money damages under the UCL…." *White v. Trans Union*, *supra*, 462 F. Supp. 2d at 1083.

Mr. Ruiz's "heightened risk" theory does not qualify as "injury in fact" for purposes of injunctive relief either. "[A] party who has suffered no injury as a result of a UCL violation cannot create standing by arguing that a broad-based injunction designed to remedy the UCL violation will provide him or her some incidental benefit." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1100 (2007). Thus, Judge Alsup has held that a *former* cable television subscriber could not sue for *prospective* injunctive relief under the UCL. *Deitz v. Comcast Corp.*, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006), at *3. And Judge Breyer ruled recently that an American Express cardholder who *didn't* have enforced against him certain objectionable contract terms could not sue under the UCL. *Lee v. American Express Travel Related Services*, 2007 WL 4287557 (N.D. Cal. Dec. 6, 2007), at *4.[8] The same lack of injury hobbles Plaintiffs' UCL claim.

Like the plaintiff in *Lee v. American Express*, Mr. Ruiz cites *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007). (*See* Oppo. Mem., 14:22-15:4.) But *Lozano* is inapplicable. As Judge Breyer noted, *Lozano* "does not help plaintiffs and, indeed, demonstrates that plaintiffs lack standing." *Lee*, *supra*, at *4; accord, *Reid v. Google, Inc.*, 155 Cal. App. 4th 1342, 1350 (2007) (no UCL claim where plaintiff had not actually suffered the hypothetical loss of job promotion for which he never applied).[9]

---

[8] As Judge Breyer also noted, plaintiffs in *Lee* were suing over the fear that an allegedly unconscionable arbitration provision might be enforced against them, when it hadn't been. But "the inclusion of unconscionable terms in plaintiffs' contract, standing alone, [does not] cause injury in fact. *Lee v. American Express*, *supra*, *4.

[9] Mr. Ruiz insists that unlike the plaintiff in *Reid*, he did apply for a job with GAP. However, he is not complaining that he should have been hired, but that GAP failed to safeguard his information. It is *that* conduct for which he has sustained no UCL-cognizable injury.

1   Mr. Ruiz's UCL claim also fails for lack of "unlawful" or "unfair" conduct.[10]  First,
2   Mr. Ruiz is unable to allege the violation of any "borrowed" law.  He cannot state a constitutional
3   right of privacy claim because the absence of actual injury dooms the "serious invasion of
4   privacy" element of that tort.  *Cf.*, *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994)
5   37 (invasions of privacy without resulting harm afford no cause of action).[11]  Plaintiff says this
6   determination must await summary judgment, but the California Supreme Court has admonished
7   courts to weed out privacy claims in which there is no "serious invasion."  *Id.*, at 41.  Otherwise,
8   courts risk creating a "legally amorphous" privacy right without definition, "an all-encompassing
9   and always litigable assertion of individual right."  *Hill*, *supra*, 7 Cal. 4th at p. 25.  Fear of
10  identity theft without corresponding injury, as alleged here, is a claim that is ripe for weeding.

    Nor can Plaintiff state a claim under the California statutes he cites.  As noted at page 3,
12  *post*, only someone who was "injured" *and* incurred "damages" may sue.  Cal. Civ. Code
13  § 1798.84(b).[12]  Plaintiff's inability to prove "injury" makes this claim ineligible for "borrowing."

14  As for "unfair," Mr. Ruiz insists he has tethered his claim to a legislatively-declared
15  policy.  (Oppo. Mem., 17:15-24.)  But, as noted, he cannot state a constitutional "privacy" claim
16  for lack of "serious invasion"; he has not brought a statutory claim under Section 1798.81.5 and,
17  even if he had, it requires proof of "injury"; and as for Section 1798.85, the Legislature consid-
18  ered allowing a private right of action but never enacted it.  (*See* pages 8-9, *ante*.)

19  Finally, GAP argued in its opening memorandum that the Court should dismiss the UCL
20  claim on the basis of equitable abstention.  Mr. Ruiz disagrees, saying that there is no complex

---

[10] Plaintiff apparently concedes he is not alleging "fraudulent" conduct under the UCL.

[11] Thus the courts have dismissed suits where the only resulting injury was class members' receipt of unsolicited mail.  *Harris v. Time, Inc.*, 191 Cal. App. 3d 449 (1987); accord: *Smith v. Chase Manhattan Bank*, 293 A.D. 2d 598, 599-600 (N.Y. App. 2002) (receipt of telephone solicitations following bank's sale of customer data to third-party is not cognizable harm).

[12] If, as here, a "borrowed" law contains special elements, then those additional elements get "borrowed" and must be proven as part of the UCL claim.  *People v. Duz–Mor Diagnostic Laboratory, Inc.*, 68 Cal. App. 4th 654 (1998).  Thus, Mr. Ruiz must prove that he was injured and incurred damages.  § 1798.84(b).

state regulatory scheme that would be put at risk, but he is wrong. California's data breach laws requires *notification* only, not five years of credit monitoring to anyone notified, or anything else he asks for. These laws are the end result of a political process by which Congress and the California Legislature have struck a balance between consumer privacy and commercial interests. Imposing Mr Ruiz's remedies through the UCL is a result the Legislature never intended.

Mr. Ruiz says he is not asking the Court to invent remedies, but merely to apply "long-established principles of law." (Oppo. Mem., 18:21-25.) Yet, he is unable to cite a case, statute, or regulation in which this supposedly "long-established" remedy was imposed on anyone.

For all these reasons, the Court should enter judgment on Plaintiff's UCL claim.

### 3. Plaintiff's Constitutional Privacy Count Fails to State a Claim.

For reasons already discussed, Mr. Ruiz's lack of injury means that he cannot satisfy the "serious invasion" element of the privacy tort. The Court should enter judgment on Count IV.

### 4. Plaintiff's "Section 1798.85" Count Fails to State a Claim.

Mr. Ruiz admits that Section 1798.85 does not confer a private right of action. Instead, he asks this Court to imply one. (Oppo. Mem., 22:14-19.) The Court should decline.

Whether a regulatory statute creates a private right of action depends on legislative intent. *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 292 (1988). Subsequent opinions have held that a statute creates a private right of action only if the statutory language or legislative history *affirmatively* indicates that intent. *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 62 (1999); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 131 (1997). "[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader*, *supra*, at p. 135.

Here, Section 1798.85 does not affirmatively indicate any such intent. To the contrary, as Plaintiff's recitation of the legislative history reveals, the Legislature appears to have considered creating a private cause of action but did not enact one. (*See* Oppo. Mem., 23:8-18.)

The Legislature's failure to enact a private right of action under these circumstances is powerful evidence that the law should not be interpreted to include that which the Legislature

omitted. *See Wilson v. City of Laguna Beach,* 6 Cal. App. 4th 543, 555 (1992); *Remington Investments, Inc. v. Hamedani*, 55 Cal. App. 4th 1033, 1041 (1997); *see also United States v. Bestfoods*, 524 U.S. 51, 64 (1998) (the failure of a statute to speak to a subject so fundamental is suggestive that no such meaning was intended).

There is no private right of action under section 1798.85. Accordingly, the Court should enter judgment on Count V.

### C. To Entertain This Litigation Would Mean Hosting a Lawsuit That Cannot Be Settled or Adjudicated With Finality.

A lawsuit brought by someone without standing is more than just inconvenient. In this case, it would mean hosting a lawsuit that can never be finally settled or adjudicated. Plaintiff never addresses this conundrum. This Court will have to.

As someone who never experienced identity theft, Mr. Ruiz is only a "latent injury" claimant. As he freely admits, his only injury is "heightened risk." To leverage his own standing, he seeks to inject into this litigation the claims of ID theft victims, but he cannot represent those claimants (assuming there are any). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

At the heart of *Amchem* was concern over settlement allocation decisions; asbestos manufacturers had a designated amount of money that was not fairly distributed between present and future claimants. There, a proposed class potentially encompassed millions of individuals that were, or some day may be, adversely affected by past exposure to asbestos products manufactured by one or more of twenty companies named as defendants. *Id.* at 597. The United States Supreme Court held that the named plaintiffs were inadequate representatives because a conflict existed between those with current injuries that sought immediate payments, and those "exposure-only" plaintiffs that sought to ensure an ample, inflation-protected fund for the future. *Id*. at 626. The same debilitating conflict arises in this case.

Mr. Ruiz can never deliver finality as to any "injured" class members, hence, this Court is incapable of issuing a judgment binding on those individuals. That violates due process: A "holder of … property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a

DEFENDANT GAP INC.'S REPLY BRIEF RE MOTION FOR JUDGMENT ON THE PLEADINGS
C 07-5739 SC
sf-2443198

9

claimant who is not bound by the first judgment." *Western Union Telegraph Co. v. Pennsylvania*, 368 U.S. 71, 75 (1961).

### III. CONCLUSION

For all the foregoing reasons, the Court should enter judgment on the pleadings.

Dated: December 28, 2007

WILLIAM L. STERN
CLAUDIA M. VETÉSI
MORRISON & FOERSTER LLP

By /s/ William L. Stern
   William L. Stern

Attorneys for Defendant and Counterclaimant
GAP INC.