**EXHIBIT A**

Filed 1/7/08

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY R. HALL, | |
| Plaintiff and Appellant, | G038040 |
| v. | (Super. Ct. No. 05CC00131) |
| TIME INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

   Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge. Affirmed.

   Carroll, Kelly, Trotter, Franzen & McKenna, Michael J. Trotter; Hall & Bailey and Donald R. Hall for Plaintiff and Appellant.

   Jones Day, Richard S. Ruben, Craig E. Stewart and Matthew A. Berliner for Defendants and Respondents.

         *   *   *

INTRODUCTION

A plaintiff must have suffered an "injury in fact" and "lost money or property as a result of such unfair competition" to have standing to pursue either an individual or a representative claim under the California unfair competition law, Business and Professions Code section 17200 et seq. (UCL). We hold the phrase "as a result of" in the UCL imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property.

Because plaintiff Jeffrey R. Hall alleged neither injury in fact nor causation, he lacked standing to pursue a UCL claim against Time Inc., Time Warner Inc., and Time Inc. Home Entertainment (collectively Time). Thus, the trial court correctly granted Time Inc. and Time Warner Inc.'s motion for judgment on the pleadings and sustained Time Inc. Home Entertainment's demurrer to Hall's first amended complaint. We affirm the resulting judgment.

ALLEGATIONS

The first amended complaint (the complaint) alleged Time engaged in a scheme by which it induced consumers to purchase books by offering a "'free preview period'" during which the consumer had 21 days in which to review the book and return it to Time with no obligation to buy. The complaint alleged Time had no intention of fulfilling its promise of a "'no obligation-free trial period'"; rather, "after the consumer receives the book pursuant to an ostensible no obligation free trial basis, Time employs a scheme to obtain immediate payment from the consumer through . . . misleading and deceitful tactics."

The complaint alleged that after the consumer agrees to the free trial period, Time mails the book to the consumer with an invoice prominently displaying to the consumer "a non-contingent obligation which is immediately payable[,] contrary to Time's earlier promise of a no obligation free trial period." The complaint attached a

2

copy of the invoice and alleged it refers to an amount due on the consumer's "order" rather than to a free preview period. In that way, the complaint alleged, the invoice "deceiv[es] the consumer into believing that an amount of money is due when, in reality, there is no money due until the expiration of the free trial period according to Time's promise during the consumer solicitation."

The complaint alleged Time would send the consumer a bill if the consumer did not pay the invoice. The complaint alleged the bill, a copy of which was attached to the complaint, did not inform the consumer he or she has no obligation during the 21-day trial period, but instead advised the consumer he or she has an unconditional and immediate obligation to pay for the book.

The complaint alleged if the consumer does not pay the bill, then Time sends the consumer a second bill informing the consumer that "'[a]s *of this letter date, your free preview has ended.*'" According to the complaint, "it is *only after the free preview period has expired* that Time informs the consumer of the free preview period." Thereafter, the complaint alleged, Time coerces payment by threatening economic sanctions, third party collections, and damage to the consumer's credit.

In August 2000, Hall ordered from Time a copy of the book Life Millennium subject to the 21-day free trial period. He received the book along with an invoice dated September 6, 2000 (attached to the complaint), stating: "When you decide to keep your new book, please take a moment to review the account information above and make out a check for $10.79 – the amount n[o]w due, or if you prefer, the total balance of $29.51. Best of all, if you decide to keep [the book] you will receive advance announcements of future books in the LIFE Books Series as they are published on a periodic basis (no more than 3 times a year). You can say 'no' simply by returning the advance announcement card within 21 days. We guarantee it! If you ever have less than 21 days, simply return the book at our expense. There is never an obligation to buy and

3

you may cancel at any time." The invoice closed by stating, "[t]hank you in advance for your prompt payment and welcome to the LIFE Books family."

Hall kept the book and did not pay for it during the free trial period. He later received a "bill" with a payment due date of November 28, 2000, followed by another bill with a payment due date of December 26, 2000. Both bills were attached as exhibits to the complaint. The second bill stated, "[a]*s of this letter date, your free preview has ended.*" Hall did not pay the bill, and thereafter received a series of payment notices stating the matter would be turned over to a collection agency. Each of these notices was attached as an exhibit to the complaint. After receiving a demand for payment from a collection agency, Hall submitted a check dated June 25, 2001 in the amount of $29.51 as payment for the book.

The complaint alleged a single cause of action for class action relief under the UCL. Hall alleged Time engaged in an "ongoing, unfair and/or fraudulent and/or unlawful business practice" by sending invoices before the expiration of the free trial period to obtain immediate payment for the book requested.

PROCEDURAL HISTORY

Hall filed the complaint after the trial court sustained Time's demurrer to the original complaint. Time Inc. and Time Warner Inc. moved for judgment on the pleadings and Time Inc. Home Entertainment demurred to the complaint on the ground Hall did not have standing to pursue a UCL claim. The trial court sustained the demurrer and granted the motion for judgment on the pleadings, both without leave to amend, stating: "The plaintiff got the book that he asked for, at the price he asked for it, and the payment schedule he wanted." Judgment was entered in November 2006.

DISCUSSION

### I. *Proposition 64 Amendments to the UCL*

The UCL permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200; see also *id.*, § 17203 [injunction and restitution remedies]; *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 126-127.) The UCL's purpose is to protect both consumers and competitors from unlawful, unfair or fraudulent business practices "by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

California law previously authorized "any person acting for the interests of . . . the general public" to sue for relief for unfair competition notwithstanding lack of injury or damages. (Bus. & Prof. Code, former § 17204; see also *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227, 228 (*Mervyn's*).) Proposition 64, approved by the voters at the November 2, 2004, General Election, changed the standing requirements for a UCL claim to create a two-prong test: A private person now has standing to assert a UCL claim only if he or she (1) "has suffered injury in fact," and (2) "has lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204; *Mervyn's, supra,* 39 Cal.4th at p. 227.) Proposition 64 accomplished that change by amending Business and Professions Code section 17204, which prescribes who may sue to enforce the UCL, by deleting the language authorizing suits by any person acting on behalf of the general public and by replacing it with the phrase, "who has suffered injury in fact and has lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204; *Mervyn's, supra,* 39 Cal.4th at p. 228.)

Proposition 64 also amended Business and Professions Code section 17203, which authorizes courts to enjoin unfair competition, by adding this sentence: "Any person may pursue representative claims or relief on behalf of others only if the claimant

5

meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state." (Bus. & Prof. Code, § 17203; *Mervyn's, supra,* 39 Cal.4th at pp. 228-229.)

## II. *Whether Hall Has Standing to Pursue a UCL Claim*

Hall contends he has standing to pursue a UCL claim because (1) he alleged an injury in fact as required by the Proposition 64 amendments to Business and Professions Code section 17204; and (2) the phrase "as a result of such unfair competition" in the Proposition 64 amendments to section 17204 does not impose a causation requirement. To address those contentions, we must construe UCL standing requirements imposed by Proposition 64. In interpreting a voter initiative, "'we apply the same principles that govern statutory construction. [Citation.] Thus, . . . "we turn first to the language of the statute, giving the words their ordinary meaning." [Citation.] . . . The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] . . . When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] [¶] In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' [Citation.]" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)

The ordinary meaning of the new language of Business and Professions Code section 17204, combined with its purpose as stated in Proposition 64, guides us to the conclusion Hall lacks standing to pursue his UCL claim.

A. *Injury in Fact*

An injury is "an act that damages, harms, or hurts: . . . a violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong." (Webster's 3d New Internat. Dict. (1993) p. 1164.)[1] An injury in fact is "[a]n actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical." (Black's Law Dict. (8th ed. 2004) p. 801.) To lose is "to suffer deprivation of." (Webster's 3d New Internat. Dict., *supra*, at p. 1338.) A loss is "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way." (Black's Law Dict., *supra*, at p. 963.)

The voters' intent in passing Proposition 64 and enacting the changes to the standing rules in Business and Professions Code section 17204 was unequivocally to narrow the category of persons who could sue businesses under the UCL. "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses . . . .' (Prop. 64, § 1, subd. (c) ['Findings and Declarations of Purpose'].) The former law, the voters determined, had been 'misused by some private attorneys who' '[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' '[f]ile lawsuits where no client has been injured in fact,' '[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and '[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.' (Prop. 64, § 1, subd. (b)(1)-(4).) '[T]he intent

---

[1] Definitions from a dictionary, although not binding, are "useful" to our analysis. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 649.)

7

of California voters in enacting' Proposition 64 was to limit such abuses by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' (*id.*, § 1, subd. (e)) and by providing 'that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' (*id.*, § 1, subd. (f))." (*Mervyn's, supra,* 39 Cal.4th at p. 228.) Our holding in this case is consistent with the ordinary meaning of the language of section 17204 and the voters' stated intent.

Few cases since Proposition 64's passage have directly addressed what constitutes injury in fact or loss of money as a result of unfair competition for purposes of determining standing. Cases decided since Proposition 64 changed the language of Business and Professions Code section 17204 have concluded a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has:

> (1) expended money due to the defendant's acts of unfair competition
> (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802-803
> [plaintiff alleged he was required to purchase excess fuel when returning
> rental truck]; *Monarch Plumbing Co. v. Ranger Ins. Co.* (E.D.Cal.,
> Sept. 25, 2006, No. Civ. S-06-1357) 2006 U.S.Dist. Lexis 68850, *20
> [plaintiff alleged he paid higher insurance premiums because of defendant
> insurer's settlement policies]; *Witriol v. LexisNexis Group* (N.D.Cal.,
> Feb. 10, 2006, No. C05-02392) 2006 U.S.Dist. Lexis 26670, *18-19
> [plaintiff incurred costs to monitor and repair damage to his credit caused
> by defendants' unauthorized release of private information]; *Southern Cal.*
> *Housing v. Los Feliz Towers Homeow.* (C.D.Cal. 2005) 426 F.Supp.2d
> 1061, 1069 [housing rights center lost financial resources and diverted staff
> time investigating case against defendants]; *Laster v. T-Mobile USA, Inc.*
> (S.D.Cal. 2005) 407 F.Supp.2d 1181, 1194 [defendants advertised cellular
> phones as free or substantially discounted when purchased with cellular

telephone service, but plaintiffs were required to pay sales tax on the full retail value of the phones]);

(2) lost money or property (*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1240, 1262 [plaintiff's home and car were vandalized by animal rights protestors]); or

(3) been denied money to which he or she has a cognizable claim (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 269-270, 285, fn. 5 [insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company]; *Starr-Gordon v. Mass. Mut. Life Ins. Co.* (E.D.Cal., Nov. 7, 2006, No. Civ. S-03-68) 2006 U.S.Dist. Lexis 83110, *1, *18-19 [plaintiff challenged the process by which defendant terminated her disability benefits]).

In this case, Hall did not allege he suffered an injury in fact under any of these definitions. He expended money by paying Time $29.51—but he received a book in exchange. He did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it.

B. *Causation*

Even if Hall's payment for the book could be construed as an injury in fact, he nonetheless would fail to satisfy the second prong of the standing test—that he "lost money or property as a result" of the alleged unfair competition. We conclude this second prong imposes a causation requirement.[2] The phrase "as a result of" in its plain

---

[2] We use the word "causation" to refer both to the causation element of a negligence cause of action (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917), and to the

and ordinary sense means "caused by" and requires a showing of a causal connection or reliance on the alleged misrepresentation.

1. Recent Case Law Requiring Causation in UCL Claims

Several recent cases correctly analyze the issue whether standing to pursue a UCL claim requires a showing of causation.[3] In *Brown v. Bank of America, N.A.* (D.Mass. 2006) 457 F.Supp.2d 82, 84, the plaintiffs sued Bank of America, alleging the notice of an additional fee charged to customers of other banks using Bank of America's ATM's was insufficient, under the Electronic Fund Transfer Act (15 U.S.C. § 1693 et seq.), the consumer protection laws of Massachusetts (Mass. Gen. Laws, ch. 93A, §§ 2, 9 (2006)), and the UCL. The federal district court found Bank of America was entitled to summary judgment on the UCL claim because the plaintiffs could not show a loss of money or property caused by Bank of America's unfair practices. (*Brown v. Bank of*

---

justifiable reliance element of a fraud cause of action (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974). In a fraud case, justifiable reliance is the same as causation, thus, "[a]ctual reliance occurs when a misrepresentation is '"an immediate cause of [a plaintiff's] conduct, which alters his legal relations,"' and when, absent such representation," the plaintiff ""'"would not, in all reasonable probability, have entered into the contract or other transaction."''" (*Engalla v. Permanente Medical Group, Inc., supra,* 15 Cal. 4th at p. 976; see *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1092 ["specific pleading is necessary to 'establish a complete causal relationship' between the alleged misrepresentations and the harm claimed to have resulted therefrom"].) Cases construing the Proposition 64 amendments to the UCL often use the terms "causation" and "reliance" together or interchangeably. (E.g., *Laster v. T-Mobile USA, Inc., supra,* 407 F.Supp.2d at p. 1194.)

[3] In *In re Firearm Cases* (2005) 126 Cal.App.4th 959, 978, the court interpreted the pre-Proposition 64 UCL and concluded its definition of "unfair" required a "causative link" between the alleged unfair practice and the injury. "In light of the Supreme Court's caution that businesses must be able to 'know, to a reasonable certainty, what conduct California law prohibits and what it permits,' we do not believe a UCL violation may be established without a link between a defendant's business practice and the alleged harm. [Citation.] . . . The UCL provisions are not so elastic as to stretch the imposition of liability to conduct that is not connected to the harm by causative evidence." (*In re Firearm Cases, supra,* 126 Cal.App.4th at p. 981.)

10

*America, N.A., supra,* 457 F.Supp.2d at p. 89.) Even if the plaintiffs could have established the fee notice posted on Bank of America's ATM's was insufficient, they could not establish causation of loss because the ATM customer was required to accept the imposition of an additional fee by means of an on-screen prompt during the ATM transaction. (*Ibid.*) Thus, the loss of money in the form of the additional fee was not a result of the inadequate fee notice posted on the ATM's.

In *Laster v. T-Mobile USA, Inc., supra,* 407 F.Supp.2d at page 1183, the plaintiffs sued the defendants for, among other things, violation of the UCL. The plaintiffs had entered into bundled transactions with the defendants—cellular telephone service providers—to purchase cellular telephones and acquire cellular telephone service. (*Id.* at pp. 1184-1185.) The defendants moved to dismiss the UCL claim for lack of standing. (*Id.* at p. 1193.) Applying the two-prong test of Business and Professions Code section 17204, the federal district court concluded the plaintiffs had alleged injury in fact. "Plaintiffs claim they entered into a bundled transaction with Defendants whereby they purchased both a phone and cellular service, and in doing so, were provided with a phone that was falsely advertised as 'free' or substantially discounted, when in fact, they were required to pay the sales tax on the full retail value. . . . Such allegations sufficiently allege an injury in fact." (*Laster v. T-Mobile USA, Inc., supra,* 407 F.Supp.2d at p. 1194.) The plaintiffs' claim, however, failed with respect to the second prong of the test—causation. "Plaintiffs, however, do not include *any* allegations in their [first amended class action complaint] that they relied on Defendants' advertisements in entering into the transactions. While Plaintiffs meticulously describe the allegedly misleading advertisements (as later described in Plaintiffs' pleadings, a 'bait-and-switch' leading to a 'fleece'), none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction *as a result* of those advertisements. [¶] The language of the UCL, as amended by Proposition 64, makes clear that a showing of causation is *required* as to each

11

representative plaintiff. . . . Because Plaintiffs fail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64. Thus, . . . Plaintiffs lack standing to bring their UCL and [false advertising law] claims." (*Ibid.*)

In *Cattie v. Wal-Mart Stores, Inc.* (S.D.Cal. 2007) 504 F.Supp.2d 939, 948, the district court concluded that omitting a reliance requirement for standing to bring a UCL claim would "undermine Proposition 64's reform purposes." The plaintiff's UCL claim alleged the thread count of the bed linens she purchased from the defendants' Web site was lower than advertised. (*Id.* at p. 941.) The plaintiff purchased one set of bedsheets 11 days before filing the lawsuit and did not allege she relied on any misrepresentation in making her purchase. (*Id.* at pp. 946-947.) In deciding whether the Proposition 64 amendments created a reliance/causation requirement, the court looked to Proposition 64's purpose of foreclosing the ability of an """"unaffected plaintiff," which was often the sham creation of attorneys,'" to bring frivolous lawsuits with no public benefit or accountability to the public. (*Id.* at p. 948.) The court stated: "An attorney who became aware of false advertising but who had no client who was harmed by it could easily 'create' a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase. Thus, omitting a 'reliance' requirement would blunt Proposition 64's intended reforms." (*Ibid.*) The court dismissed the UCL claim because the plaintiff could not allege reliance or causation. (*Id.* at p. 949.)

2. Hall Did Not Allege Causation

Hall did not allege he lost money or property as a result of Time's acts of alleged unfair competition. He alleged Time engaged in unfair competition by sending a customer an invoice before the end of the free trial period in order to induce the customer immediately to send payment for the book. What was fraudulent or unfair about Time's conduct, according to the complaint, was it caused the customer to believe he or she did not have a free trial period and was obligated to keep and pay for the book upon receipt.

But the invoice did not cause Hall to remit payment immediately on receiving the book: Rather, he remitted payment 10 months after receiving the book, long after the free trial period had expired.  Hall did not allege he did not want the book or Time's alleged acts of unfair competition induced him to keep a book he otherwise would have returned during the free trial period.  Thus, Hall did not allege Time's acts of alleged unfair competition caused him to lose money or property.

Hall relies on *Anunziato v. eMachines, Inc.* (C.D.Cal. 2005) 402 F.Supp.2d 1133 (*Anunziato*), as supporting his argument that standing to pursue a UCL claim after Proposition 64 does not require an allegation of causation.  In *Anunziato*, the plaintiff alleged a line of the defendant's laptop computers had a defect causing some of them to overheat.  (*Anunziato*, at p. 1135.)  The plaintiff alleged the defendant made misrepresentations about the quality, reliability, and performance of its laptop computers in a press release and in each computer's user manual.  (*Id.* at pp. 1139-1140.)  The defendant argued the plaintiff lacked standing to pursue a UCL claim because he could not show he relied on any of the alleged misrepresentations in purchasing the computer. The court, rejecting that argument, held a plaintiff does not have to show actual reliance on the alleged misrepresentation to have standing to pursue a fraud-based claim under the UCL.  (*Id.* at pp. 1137-1138.)  The court reasoned: "[T]he Court can envision numerous situations in which the addition of a reliance requirement would foreclose the opportunity of many consumers to sue under the UCL and the FAL [false advertising law].  One common form of UCL or FAL claim is a 'short weight' or 'short count' claim.  For example, a box of cookies may indicate that it weighs sixteen ounces and contains twenty-four cookies, but actually be short.  Even in this day of increased consumer awareness, not every consumer reads every label.  If actual reliance were required, a consumer who did not read the label and rely on the count and weight representations would be barred from proceeding under the UCL or the FAL because he or she could not

13

claim reliance on the representation in making his or her purchase. Yet the consumer would be harmed as a result of the falsity of the representation." (*Id.* at p. 1137.)

In *Cattie v. Wal-Mart Stores, Inc.*, the court criticized *Anunziato*, stating, "[w]hile removing disparities between consumers might be a laudable goal, it is not clear that the . . . UCL . . . [is] intended to address this potential disparity. While California courts recognize the 'broad, sweeping' scope of the UCL, they are also wary of exceeding legislative intent." (*Cattie v. Wal-Mart Stores, Inc., supra,* 504 F.Supp.2d at p. 948.) We tend to agree with the *Cattie* court's criticism of portions of the *Anunziato* decision, but find *Anunziato* is distinguishable. By purchasing a defective computer, the plaintiff in *Anunziato* did suffer actual damage caused by the defendant. In contrast, Hall did not allege the book he purchased was defective or unsatisfactory, or that he did not want it.

## C. *No Leave to Amend*

Hall does not argue the trial court should have granted him leave to amend the complaint. Instead, he relies on *McAdams v. Monier, Inc.* (2007) 151 Cal.App.4th 667, 683, review granted September 19, 2007, S154088, to argue he has satisfied or can satisfy a causation requirement by inference. The Supreme Court granted review of *McAdams* on September 19, 2007, S154088, after Hall filed his reply brief.

Business and Professions Code section 17203 plainly states a UCL plaintiff must meet the standing requirements of section 17204 to pursue representative claims on behalf others. Accordingly, the representative UCL plaintiff must plead he or she suffered an injury in fact caused by, or in justifiable reliance on, the alleged acts of unfair competition. Hall's allegations did not satisfy the injury in fact and causation requirements either expressly or by reasonable inference. Thus, the trial court correctly dismissed his complaint without leave to amend.

DISPOSITION

The judgment is affirmed.  Respondents to recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


SILLS, P. J.


ARONSON, J.