**EXHIBIT B**

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                         ---oOo---
 4
 5   JOEL RUIZ, on behalf of himself )
     and all others similarly        )
 6   situated,                       )
                                     )
 7             Plaintiff(s),         )
                                     )
 8        v.                         ) No. CV07-05739-SC
                                     )
 9   GAP, INC., and DOES 1-9,        )
     inclusive,                      )
10                                   )
               Defendant(s).         )
11                                   )
                                     )
12   _____)
13
14
15              WEDNESDAY, JUNE 18, 2008
16                      ---oOo---
17                   DEPOSITION OF
18                     JOEL RUIZ
19                      ---oOo---
20
21
22
23
24
25   Reported by:  LINDSEY R. PERRY, CSR License No. 12806
```

JOEL RUIZ

BARKLEY
Court Reporters

```
 1   makes sense to you.
 2            THE WITNESS:  Okay.  Identity theft.  When
 3   somebody -- an unknown person has your Social Security
 4   number or any information regarding -- they can take out
 5   your driver's license.  They can take out loans.  Any type
 6   of information that messes up your credit -- your credit
 7   line.  And not just the credit line.  They can get you --
 8   they can get arrested and use your Social Security number
 9   and they can -- the -- after that -- you'll be in trouble
10   with the law because of that and you'll have to deal with
11   that, that situation there, and that's about it.
12   Q        BY MR. STERN:  Okay.  Thank you.  By the way,
13   you're doing fine.  And I should have also said that if
14   you need to take a break, just let me know.  We can break
15   at any time, okay?
16   A        Okay.
17   Q        Have you ever been the victim of an identity
18   theft?
19   A        No.
20   Q        Have any friends or family members, to your
21   knowledge, been victims of identity thefts?
22   A        No.
23   Q        Do you currently have a credit card with a bank?
24   A        Yes.
25   Q        Which bank?
```

23

JOEL RUIZ

```
 1            Has Wells Fargo Bank ever notified you, as a
 2   credit card holder, that your credit card was being
 3   cancelled and reissued with a new credit card -- with a
 4   new account number?
 5   A     No.
 6   Q     Has that ever happened with respect to a savings
 7   or checking account you might have?
 8   A     No.
 9   Q     We're going to introduce as Exhibit 2 a letter to
10   Mr. Ruiz dated September 28, 2007.
11            (Whereupon Defendants' Exhibit 2 was
12            marked for identification.)
13   Q     BY MR. STERN:  Like we did with Exhibit 1,
14   Mr. Ruiz, take a look at Exhibit 2.  And when you're done,
15   tell me whether you recognize Exhibit 2.
16   A     Yes.
17   Q     What is Exhibit 2?
18   A     This is the letter that was sent to me by Gap,
19   which was my first notification that there was a data
20   breach.
21   Q     And the date on the letter is September 28, 2007.
22            Do you recall you received this letter sometime
23   within a few days of that?
24   A     Yes, in October.
25   Q     In October.  And was it soon after getting that
```

25

JOEL RUIZ

BARKLEY
Court Reporters

```
 1             Do you see that?
 2   A         Correct.
 3   Q         And there are four or five bulleted paragraphs
 4   starting with, "Look out for any unusual activity."
 5             Do you see that?
 6   A         Yes.
 7   Q         Did you have your Wells Fargo credit card account
 8   as of October 2007?
 9   A         Yes.
10   Q         And did you look on your monthly credit card
11   statements to see if there was any unusual activity?
12   A         Yes.
13   Q         Did you find any?
14   A         No.
15   Q         And by "unusual activity," what I mean is charges
16   that you thought you hadn't incurred, somebody else might
17   have incurred, on your account.
18             You didn't find anything like that?
19   A         Correct.
20   Q         The next bullet says, "Consider contacting your
21   credit card issuers and financial institutions to inform
22   them of what happened."
23             Did you do that?
24   A         No.
25   Q         Do you have a savings and checking account?
```

37

JOEL RUIZ

BARKLEY
Court Reporters

```
 1   A       No, but for seven years, I'm pretty sure they
 2   would charge for extended fraud alert.
 3   Q       Does it say that anywhere in Exhibit 6?
 4   A       No.
 5   Q       Okay.  To get an extended fraud alert, you would
 6   have to prove an actual identity theft, wouldn't you?
 7   A       Yes.
 8   Q       And you didn't have an identity theft, did you?
 9   A       No.
10   Q       And as you sit here today, you still haven't
11   experienced an identity theft; correct?
12   A       Correct.
13   Q       Paragraph two on that same page says, "You have
14   the right to free copies of the information in your file."
15           Do you see that?
16   A       Yes.
17   Q       Did you ask for free copies of the information in
18   your file?
19   A       No.
20   Q       Why not?
21   A       I didn't think it was necessary at the time.
22   Q       Paragraph three says, "You have the right to
23   obtain documents relating to fraudulent transactions made
24   or accounts opened using your personal information."
25           Do you see that?
```

73

JOEL RUIZ

BARKLEY Court Reporters

```
 1   A       Yes.
 2   Q       You've never had any fraudulent transactions made
 3   or accounts opened using your personal information, have
 4   you?
 5   A       No.
 6   Q       And page -- the last page of Exhibit 6 numbered
 7   five says, "If you believe information in your file
 8   results from identity theft, you have the right to ask
 9   that a consumer reporting agency block that information
10   from your file."
11           Do you see that?
12   A       Yes.
13   Q       Did you ever ask a consumer reporting agency to
14   block your personal information from your file?
15   A       No.
16           MS. REZVANI:  Objection to the extent it
17   mischaracterizes what the statement in the document
18   states.
19   Q       BY MR. STERN:  You never asked a consumer
20   reporting agency to block information from your file;
21   correct?
22   A       Correct.
23   Q       And that's because you never had an identity
24   theft; correct?
25   A       Correct.
```

74

JOEL RUIZ

BARKLEY
Court Reporters

1   THE WITNESS: I'm sorry. I lost my train of
2   thought. Can you repeat?
3   Q   BY MR. STERN: Okay. You testified about the
4   time you spent. And now my question is: Other than time
5   spent, in what other ways have you been harmed by the
6   release of your private information on the laptop?
7   MS. REZVANI: Same objection.
8   THE WITNESS: The increased security threat of my
9   information by Gap's third-party vendor has me -- has me
10  on the ball all the time now about my credit, about my
11  information, about my money, about my Social Security
12  number. It could be used by anybody at any time. If it's
13  sold -- if it's sold from now or 10 years from now, 20
14  years from now, it's going to be there in the back hiding,
15  waiting, and I can't do nothing about it. That's the harm
16  that's been -- that I've been -- that I have.
17  Q   BY MR. STERN: So the increased security threat,
18  the time you spent.
19      Is there anything else, any other ways in which
20  you've been harmed?
21  MS. REZVANI: Same objection.
22  THE WITNESS: No.
23  Q   BY MR. STERN: If you were to leave your wallet
24  on this table and leave the deposition room for a few
25  minutes, and when you return, nothing has been taken out

113

JOEL RUIZ

```
 1   A         Because I know the situation at hand.  I know it
 2   was my truck.  I know my truck is still there.  I know
 3   everything is still there.  I know nothing's been tampered
 4   with.
 5   Q         But she exposed you to a risk of having your car
 6   stolen.
 7             How is that different than what happened here?
 8             MS. REZVANI:  Same objections.
 9             THE WITNESS:  Because I know everything at hand.
10   I have everything -- I have it in my possession.
11   Q         BY MR. STERN:  You haven't lost any money as a
12   result of this incident; correct?
13             MS. REZVANI:  Objection; calls for a legal
14   conclusion.
15             THE WITNESS:  Depends on what -- because coming
16   over here, I did have to spend some money, and prior to
17   the case, money on phone minutes, paper -- printing paper,
18   scanning, stuff like that.
19   Q         BY MR. STERN:  Those were expenses incurred
20   either in protecting your identity or in testifying here
21   today as a witness; correct?
22   A         Correct.
23   Q         You haven't lost any money as a result of any
24   unauthorized transactions done under your name, though,
25   have you?
```

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | And you've not lost any income as a result; |
| 3 | | correct? |
| 4 | A | Correct. |
| 5 | Q | And you're not under medical care as a result of |
| 6 | | the anxiety or stress caused by this incident; is that |
| 7 | | correct? |
| 8 | A | Correct. |
| 9 | Q | Have you consulted a physician over this event? |
| 10 | A | No. |
| 11 | Q | And you've had no physical pain or suffering; |
| 12 | | correct? |
| 13 | A | I did have some physical pain and suffering, but |
| 14 | | I don't know if it's related to this. |
| 15 | Q | Okay. You testified that you were harmed by the |
| 16 | | disclosure of your private information because you've been |
| 17 | | put at an increased security threat. |
| 18 | | Do you remember that testimony a few minutes ago? |
| 19 | A | Yes. |
| 20 | Q | Would you agree with me that coming to the |
| 21 | | deposition here today as opposed to staying home in Texas |
| 22 | | means that you've been put in an increased chance of |
| 23 | | getting in a car accident on the way to and from the |
| 24 | | airport? |
| 25 | A | Yes, but that was entirely my decision. |

117

JOEL RUIZ

BARKLEY
Court Reporters

| | | |
|---|---|---|
| 1 | Q | Would you say that your odds of getting into a |
| 2 | | car accident coming to or from the deposition here today |
| 3 | | are greater or less than your odds of having an identity |
| 4 | | theft as a result of the laptop incident? |
| 5 | | MS. REZVANI: Objection; calls for legal |
| 6 | | conclusion. |
| 7 | | THE WITNESS: I would go with equal. |
| 8 | Q | BY MR. STERN: You live in Texas, right? |
| 9 | A | Correct. |
| 10 | Q | How did it happen that you came to be a plaintiff |
| 11 | | in this California lawsuit? |
| 12 | A | Because Gap is established here in California. |
| 13 | Q | And how did you hear about potential litigation |
| 14 | | against the Gap? Was this through your research where you |
| 15 | | contacted, I think you'd said, two or three lawyers who |
| 16 | | you found through the Web? |
| 17 | A | I'm sorry, you said -- you asked -- |
| 18 | Q | How did you hear about the possibility of |
| 19 | | litigation against the Gap over this event? |
| 20 | A | That was determined because of the -- of what I |
| 21 | | had started, the lawsuit. |
| 22 | Q | And how is it you came into contact with your |
| 23 | | counsel? |
| 24 | A | By e-mail. |
| 25 | Q | And you made the first contact with them or they |