1   WILLIAM L. STERN (CA SBN 96105)
    GEOFFREY R. PITTMAN (BAR NO. 253876)
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California  94105-2482
    Telephone: 415.268.7000
4   Facsimile:  415.268.7522
    E-mail:  wstern@mofo.com
5
    TERESA N. BURLISON (CA SBN 230854)
6   MORRISON & FOERSTER LLP
    755 Page Mill Road
7   Palo Alto, California  94304-1018
    Telephone: 650.813.5600
8   Facsimile:  650.494.0792
    E-mail: TBurlison@mofo.com
9
    Attorneys for Defendant
10  GAP INC.

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  JOEL RUIZ, On Behalf of Himself and All Others       Case No.      C 07-5739 SC
    Similarly Situated,
16                                                        **DEFENDANT GAP INC.'S NOTICE**
                           Plaintiff,                     **OF MOTION AND MOTION FOR**
17                                                        **SUMMARY JUDGMENT OR, IN**
              v.                                          **THE ALTERNATIVE, SUMMARY**
18                                                        **ADJUDICATION**
    GAP INC., and VANGENT, INC.,
19                                                        Date:     March 20, 2009
                           Defendants.                    Time:     10:00 a.m.
20                                                        Room:     Courtroom 1, 17th Floor
                                                          Judge:    Hon. Samuel Conti
21

22                                                        Complaint filed:  November 13, 2007

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES....................................................................................................ii

NOTICE OF MOTION AND MOTION..............................................................................vi

MEMORANDUM OF POINTS AND AUTHORITIES.....................................................1

I.   INTRODUCTION ......................................................................................................1

II.  STATEMENT OF UNDISPUTED FACTS.............................................................2

    A.   The Laptop Incident. ........................................................................................2

    B.   Plaintiff Joel Ruiz. ............................................................................................3

    C.   Ruiz Has No Facts Supporting His Claim of Injury.................................3

III. THE LEGAL STANDARD. ......................................................................................4

IV.  ARGUMENT ...............................................................................................................5

    A.   The Court Should Enter Summary Adjudication on Plaintiff's First Claim for Relief for Negligence. ...............................................................5

    B.   Ruiz Lacks Article III Standing; He Has Not Suffered "Injury-in-Fact." ............11

    C.   The Court Should Enter Summary Adjudication on Plaintiff's Second Claim for Alleged Violations of California Civil Code Section 1798.85. ...........12

        1.   GAP Did Not Violate California Civil Code Section 1798.85.................13

        2.   There is No Private Right of Action Under Section 1798.85....................14

V.   CONCLUSION .........................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Aas v. Super. Ct.*,
   24 Cal. 4th 627 (2000)..................................................................................8

*Aliano v. Tex. Roadhouse Holdings LLC*,
   No. 07-CV-4108,
   2008 WL 5397510 (N.D. Ill. Dec. 23, 2008) ...........................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................................4

*Ann M. v. Pac. Plaza Shopping Ctr.*,
   6 Cal. 4th 666 (1993)....................................................................................5

*Bell v. Acxiom Corp.*,
   No. 06-CV-00485-WRW,
   2006 WL 2850042 (E.D. Ark. Oct. 3, 2006)............................................12

*Bellman v. San Francisco High School Dist.*,
   11 Cal. 2d 576 (1938)...................................................................................8

*Caudle v. Towers, Perrin, Forster & Crosby, Inc.*,
   580 F. Supp. 2d 273 (S.D.N.Y. 2008) ....................................................5, 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ......................................................................................4

*Conboy v. AT&T Corp.*,
   241 F.3d 242 (2d Cir. 2001) .........................................................................9

*Cooper v. Fed. Aviation Admin.*,
   No. 07-CV-1383 (N.D. Cal., Aug. 22, 2008) ...........................................10

*Crusader Ins. Co. v. Scottsdale Ins. Co.*,
   54 Cal. App. 4th 121 (1997).......................................................................14

*Forbes v. Wells Fargo Bank, N.A.*,
   420 F. Supp. 2d 1018 (D. Minn. 2006) ...................................................7, 8

*Gerlinger v. Amazon.com, Inc.*,
   526 F.3d 1253 (9th Cir. 2008) ...................................................................12

*Giordano v. Wachovia Sec., LLC.*,
   No. 06-476 JBS,
   2006 WL 2177036 (D. N.J. July 31, 2006) ..............................................12

*Guin v. Brazos Higher Educ. Serv. Corp.,*
   No. 05-CV-668 RHK/JSM,
   2006 WL 288483 (D. Minn. Feb. 7, 2006) ...................................................................... 8

*Hartman v. Summers,*
   120 F.3d 157 (9th Cir. 1997) .................................................................................. 11-12

*Hendricks v. DSW Shoe Warehouse Inc.,*
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ..................................................................... 8

*Hoang v. Reunion.com, Inc.,*
   No. 08-CV-03518 MMC (N.D. Cal. Dec. 23, 2008) ................................................. 12

*In re JetBlue Airways Corp. Privacy Litig.,*
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................................................................... 9

*Kahle v. Litton Loan Servicing LP,*
   486 F. Supp. 2d 705 (S.D. Ohio 2007) .................................................................... 7, 8

*Key v. DSW Inc.,*
   454 F. Supp. 2d 684 (S.D. Ohio 2006) ..................................................................... 12

*Lee v. Am. Express Travel Related Servs.,*
   No. 07-CV-04765 (N.D. Cal. Dec. 6, 2007) ............................................................ 12

*Levine v. DSW Inc.,*
   No. 586371 (Ohio Ct. Com. Pl. Aug. 19, 2008) ................................................ 8, 10, 12

*Longview Fibre Co. v. Rasmussen,*
   980 F.2d 1307 (9th Cir. 1992) .................................................................................. 15

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .................................................................................................. 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) .................................................................................................. 10

*Melancon v. La. Office of Student Fin. Assistance,*
   567 F. Supp. 2d 873 (E.D. La. 2009) ......................................................................... 7

*Moradi-Shalal v. Fireman's Fund Ins. Cos.,*
   46 Cal. 3d 287 (1988) ............................................................................................... 14

*Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co.,*
   677 F.2d 1258 (9th Cir.1982) ................................................................................... 10

*Pinero v. Jackson Hewitt Tax Serv. Inc.,*
   No. 08-CV-3535,
   2009 WL 43098 (E.D. La. Jan. 7, 2009) .................................................................. 10

*Pisciotta v. Old Nat'l Bancorp*,
  499 F.3d 629 (7th Cir. 2007) ............................................................... 5, 7, 8, 12

*Ponder v. Pfizer, Inc.*,
  522 F. Supp. 2d 793 (M.D. La. 2007) ......................................................... 8

*Randolph v. ING Life Ins. & Annuity Co.*,
  486 F. Supp. 2d 1 (D.D.C. 2007) ............................................................. 12

*Remington Invs., Inc. v. Hamedani*,
  55 Cal. App. 4th 1033 (1997) .................................................................. 15

*Satey v. JPMorgan Chase & Co.*,
  521 F. 3d 1087 (9th Cir. 2008) ............................................................... 15

*Scognamillo v. Herrick*,
  106 Cal. App. 4th 1139 (2003) .................................................................. 8

*Shafran v. Harley-Davidson, Inc.*,
  No. 07-CV-01365 GBD,
  2008 WL 763177 (S.D.N.Y. March 20, 2008) ............................................. 8

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................ 11

*Smith v. Chase Manhattan Bank*, N.A.
  741 N.Y.S.2d 100 (App. Div. 2d Dep't 2002) ............................................ 10

*Stollenwerk v. Tri-West Healthcare Alliance*,
  No. 03-CV-0185 PHXSRB,
  2005 WL 2465906 (D. Ariz. Sept. 6, 2005) *aff'd in part*,
  No. 05-CV-16990, 2007 WL 416068 (9th Cir. Nov. 20, 2007) ...................... 8

*T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ................................................................... 4

*United States v. BestFoods*,
  524 U.S. 51 (1998) ................................................................................ 15

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
  70 Cal. App. 4th 55 (1999) ..................................................................... 14

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................................................. 11

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .............................................................................. 11

*Wilson v. City of Laguna Beach,*
    6 Cal. App. 4th 543 (1992) ................................................................................................ 15


**STATUTES, REGULATIONS & RULES**

5 U.S.C.
    § 552a ........................................................................................................................... 10

Federal Rules of Civil Procedure
    Rule 56 ............................................................................................................................ 4

Cal. Bus. & Prof. Code
    § 17200 ............................................................................................................................ 9

Cal. Civ. Code
    § 1798.85 .................................................................................... 1, 2, 12, 13, 14, 15
    § 1798.85(a) ................................................................................................................. 13
    § 1798.85(a)(3) ............................................................................................................ 14
    § 1798.85(a)(4) ............................................................................................................ 13
    § 1798.93 ..................................................................................................................... 15


**OTHER AUTHORITIES**

Merriam-Webster Online Dictionary (2008), *at*
    http://www.merriam-webster.com/dictionary/ access ........................................... 13

Wikipedia (2008), *at*
    http://en.wikipedia.org/wiki/Https ........................................................................... 14

1

**NOTICE OF MOTION AND MOTION**

2

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on March 20, 2009, at 10:00 a.m., or as soon thereafter as

4 the matter may be heard, before the Honorable Samuel Conti, United States District Court,

5 Northern District of California, San Francisco Division, 450 Golden Gate Avenue, Courtroom 1,

6 17th Floor, San Francisco, California, Defendant GAP Inc. ("GAP") will, and hereby does, move,

7 pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment or, in the

8 alternative, summary adjudication, as follows:

9      1.     Plaintiff lacks standing under Article III because the harm he has alleged is

10 speculative and hypothetical, and that GAP is entitled to judgment as a matter of law.

11      2.     On Count I, Plaintiff's negligence claim, this motion for summary adjudication is

12 made on the ground that there is no genuine issue as to any material fact that Plaintiff has suffered

13 no cognizable injury or damages and that GAP is entitled to judgment as a matter of law.

14      3.     On Count II, Plaintiff's claim under California Civil Code Section 1798.85, this

15 motion for summary adjudication is made on the ground that there is no genuine issue as to any

16 material fact that:

17      a.     A social security number is *not* needed to access GAP's on-line employment

18      application website; or

19      b.     Section 1798.85 does not provide a private right of action.

20      This Motion is based on this Notice of Motion and Motion, the Memorandum of Points

21 and Authorities in support thereof, the accompanying Declaration of William L. Stern, the reply

22 papers to be filed by GAP, the pleadings and other papers on file herein, including the First

23 Amended Class Action Complaint, and such other written and oral argument as may be presented

24 to the Court.

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In its simplest terms, this is a no-injury, "Fear of Identity Theft" class action that arises from a situation in which two laptops were stolen in September 2007 from defendant Vangent Inc., a third-party vendor of defendant GAP Inc. ("GAP").   One of the laptops contained the names, addresses, and social security numbers of some 744,000 persons who had applied for jobs with GAP.   Within days, GAP sent out a notification letter to all 744,000 job applicants and offered one year of credit monitoring and $50,000 in identity theft/fraud insurance free of charge.

Plaintiff Joel Ruiz ("Ruiz") received such a letter.   But he did not enroll for the free credit monitoring and insurance.   More to the point, Ruiz has never had his identity stolen and he knows of no one who has.   The Court noted at the outset that "[t]he only harm Ruiz alleges is that, as a result of the laptop thefts, he is now at 'an increased risk of identity theft.'"   (Order, Docket #46, 4:27-5:2.)   Nonetheless, it found that, "[a]t this stage of the proceedings, the Court cannot conclude that Ruiz lacks standing" (*id*., 6:15-16) and allowed two of Ruiz's five claims to proceed.   However, the Court also warned that "[s]hould it become apparent that Ruiz's alleged injury is in fact too speculative or hypothetical, the Court will conclude, as it must, that Ruiz lacks standing."   (*Id*., 6:19-21.)   The Court further noted:   "[I]t is far from clear what damages, if any, Ruiz will be able to recover if he eventually prevails on his negligence claim."   (*Id*., 7:5-7.)

Since then, Ruiz has taken GAP on a discovery odyssey.   But he is no closer now to proving actual injury or Article III standing than he was the day he filed his Complaint.

As discussed in detail herein, eighteen other no-injury "Fear of ID Theft" cases have now been decided.   Not one has survived summary judgment.   Thirteen failed for lack of current, compensable injury.   Another five failed for lack of Article III standing.   Ruiz's claim is indistinguishable from those eighteen cases.   Either way, whether for lack of injury or lack of Article III standing, Ruiz has no cognizable claim.

If the Court were to find against Ruiz on standing, it would not have to reach the second claim for violations of Cal. Civ. Code § 1798.85.   But no factual dispute exists there either. Section 1798.85 prohibits someone from requiring a social security number ("SSN") to "access" a

1   website or to transmit an SSN unencrypted.   Here, it is undisputed that neither happened.

2   Moreover, there is no private right of action for violations of Section 1798.85.

3        For all the foregoing reasons, the Court should summarily adjudicate the first and second

4   claims for relief and enter judgment in the case.[1]

5   **II.    STATEMENT OF UNDISPUTED FACTS**

6        **A.    The Laptop Incident.**

7        Ruiz applied for a job with Old Navy in late 2006.  (First Amended Class Action

8   Complaint, ¶ 38 [Docket #89] ("FAC").)  He did so through an on-line website hosted by

9   Defendant Vangent, Inc., a third-party vendor employed by GAP.  (*Id*., ¶¶ 32-33.)  As part of the

10  on-line job application process, Ruiz was required to enter his name, address, and social security

11  number.  (*Id*., ¶ 35; *see also* Deposition of Joel Ruiz, 60:23-62:17 [attached as Ex. A to

12  Declaration of William L. Stern in Support of GAP's Motion for Summary Judgment ("Stern

13  Decl.")].)[2]  That data was stored on a database maintained by Vangent.  (FAC, ¶ 33.)

14       On September 17, 2007, Vangent suffered a theft of two laptop computers.  (*Id*., ¶ 39.)

15  One laptop contained unencrypted personal information of approximately 750,000 people who,

16  like Ruiz, had applied for jobs from July 2006 through June 2007.  (*Id*., ¶ 39.)  Nine days later,

17  GAP sent a notice to every job applicant in the United States whose personal information was

18  potentially contained on the stolen laptop, including Mr. Ruiz.  (*Id*., ¶¶ 34, 39.)  GAP established

19  a toll-free 24-hour hotline and call center to address any questions, concerns, or problems.  It

20  launched a website to ensure that recipients had access to additional information.  Finally, GAP

21  advised each recipient that it would provide one year's worth of free credit monitoring, which

22

23  _____

24       [1] Defendant Vangent is concurrently filing its own motion for summary adjudication as to Count III, to be heard at the same time.

25       [2] GAP, like every major employer, requires job applicants to provide their SSN as part

26  of the job application process.  GAP needs this for several reasons:  (i) To make sure the applicant can work legally in the United States; (ii) for tax reasons; and (iii) to conduct a background check.  (Deposition of Keith White ("White Depo."), 95:16-96:5 [Stern Decl.,

27  Ex. B]).)

28

1   included $50,000 in fraud insurance if an actual ID theft were to occur, for anyone who requested

2   it.  (*Id.*, ¶ 62; Stern Decl., Ex. C.)[3]

3   **B.    Plaintiff Joel Ruiz.**

4   Ruiz alleges that GAP has "put Plaintiff and other class members at an increased risk of

5   becoming victims of identity theft crimes."  (FAC, ¶¶ 10, 80. 83.)  Yet Ruiz did little to protect

6   himself after the breach.  He received GAP's notification letter in early October 2007 (FAC, ¶ 59;

7   Ruiz Depo., 25:21-24 [Stern Decl., Ex. A]), but never signed up for GAP's free offer of credit

8   monitoring and ID theft insurance.  (*Id.,* 81:13-20.)  He tried to phone GAP once, but hung up

9   when he was put on hold.  (*Id.,* 32:3-21.)  GAP's notification letter also advised job applicants,

10  like Ruiz, that they may enroll on-line for the free service, not just by telephone.  (*Cf.*, Stern

11  Decl., Ex. C.)  But Ruiz never enrolled on-line either.  (Ruiz Depo., 22:11-13 [Stern Decl.,

12  Ex. A].)

13  Ruiz's indifference went beyond just failing to take advantage of GAP's free offer of

14  credit monitoring.  GAP also advised job applicants to notify their banks and sign up for a free

15  credit report from one of the three major credit reporting agencies.  (Stern Decl., Ex. C.)

16  Incredibly, Ruiz ignored that advice, too.  (Ruiz Depo., 37:20-38:6; 38:21-39:23 [Stern Decl.,

17  Ex. A].)

18  The one thing Ruiz did pursue was litigation.  In the weeks following the incident, Ruiz

19  surfed Internet chat rooms until he located counsel.  (Ruiz Depo., 11:13-24; 118:20-119-2) [Stern

20  Decl., Ex. A].)  Six weeks after getting GAP's notice letter, Ruiz filed this suit.  (*Id.,* 88:19-21.)

21  **C.    Ruiz Has No Facts Supporting His Claim of Injury.**

22  Ruiz has never been the victim of an "identity theft."  (*Id.,* 23:17-19 & 73:8-12.)  No one

23  has made unauthorized use of his personal information.  (Ruiz Depo., 37:3-39:24; 125:22-126:8

24  [Stern Decl., Ex A].)  Ruiz has no evidence that his personal data was "targeted or accessed" by

25  the laptop thief.  (Ruiz Depo., 125:22-126:8 [Stern Decl., Ex. A].)  And he knows of no one who

26  _____

27  [3] The notice letter that was sent to the 750,000 job applicants is attached as Ex. C to the
    Declaration of William L. Stern.

28

1    has suffered an actual identity theft as a result of the laptop theft.  (Pl.'s Objections and

2    Responses to Def. GAP Inc.'s First Set of Interrogs., 12:28 [Stern Decl., Ex. D] ("Interrogatory

3    Answers").)  When asked to describe the harm suffered by the putative class, he characterized it

4    solely as an "increased risk of identity theft."  (*Id.,* 10:20-11:18.)

5           All of the physical evidence (including the surveillance video tapes at the scene) is

6    consistent with a property crime (theft of laptop) and not a cyber crime (i.e., misuse of the

7    personal data on the hard drive).  (Deposition of Keith White, 87:1-89:23 [Stern Decl., Ex. B].)

8    Both the Chicago Police Department and the FBI so concluded.  (*Id.*, 89:21-23; 125:3-126:5.)

9           Ruiz has taken extensive discovery in this case.  He propounded interrogatories and

10    requests for admission.  (Stern Decl., ¶ 8.)  GAP produced 15,331 pages of discovery.  (*Id.*)  Ruiz

11    took three day-long depositions of GAP officials and has taken substantial discovery from

12    Vangent.  Before amending to add Vangent, Ruiz served a subpoena *duces tecum* on Vangent.

13    Vangent produced about 15,000 pages of documents.  (*Id.*)  In September 2008, Ruiz took two

14    day-long depositions of Vangent.  (*Id.*)

15           Despite ample opportunity, Ruiz has failed to produce any evidentiary support for his

16    claim that he has suffered a legally recognizable harm entitling him to relief.

17    **III.**      **THE LEGAL STANDARD.**

18           Summary judgment is appropriate when there are no genuine issues of material fact and

19    the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex*

20    *Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

21    246 (1986).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to

22    make a showing sufficient to establish the existence of an element essential to that party's case,

23    and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

24           A party opposing summary judgment "may not rest upon the mere allegations" in its

25    Complaint, but rather "must set forth specific facts showing that there is a genuine issue for trial."

26    Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *see also T.W. Elec. Serv., Inc. v. Pac. Elec.*

27    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (the nonmoving party may not rely on the

28    pleadings but must present significant probative evidence supporting the claim).

IV.     **ARGUMENT**

A.     **The Court Should Enter Summary Adjudication on Plaintiff's First Claim for Relief for Negligence.**

This is a no-injury case.  At the outset, this Court expressed doubt that Ruiz could ever prove actual injury:  "[I]t is far from clear what damages, if any, Ruiz will be able to recover if he eventually prevails on his negligence claim."  (Order, Docket #46, 7:5-7.)  Now that discovery is closed, there is no genuine issue of material fact.  Ruiz has not suffered legal injury.

Under California law, proof of injury is an essential element of a negligence claim.  *Ann M. v. Pac. Plaza Shopping Ctr.*, 6 Cal. 4th 666, 673 (1993).  Ruiz cannot establish a genuine of issue of material fact that he suffered actual, cognizable harm from the alleged negligent conduct of defendants.  Thus, his negligence claim must fail.

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) is instructive.  There, a bank operated a marketing website on which potential customers could complete on-line applications, some of which required the transmission of personal information.  The information was stored on a hosting facility, which experienced a "sophisticated, intentional, and malicious" security breach.  As here, plaintiffs alleged no "direct financial loss to their accounts as a result of the breach[,] [n]or did they claim that they or any other member of the putative class already had been the victim of identity theft."  *Id*. at 632.  The Seventh Circuit rejected plaintiffs' negligence claim:  "Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy."  *Id*. at 639-40 (applying Indiana law but noting that not "a single case or statute, from any jurisdiction, authorize[es] the kind of action [plaintiffs] now ask this federal court, sitting in diversity, to recognize as a valid theory of recovery"); accord, *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273 (S.D.N.Y. 2008) (citing *Pisciotta*, granting summary judgment on negligence claim for no-injury class action arising from stolen laptop/"Fear of Identity Theft" case).

Like the *Pisciotta* claimants, Ruiz contends that he and the class suffered harm because they were placed at "an increased risk of identity theft."  (Compl., ¶¶ 52, 54, 56.)  But also like them, he offers no evidence that his personal data was "targeted or accessed" by the individual

1   who stole the laptop.  (Ruiz Depo., 125:22-126:8 [Stern Decl., Ex. A].)  To the contrary, all of the

2   evidence suggests that this was a property crime.

3        Ruiz has never been a victim of identity theft.  In deposition, he admitted this:

4           Q:     Have you ever been the victim of an identity theft?

5           A:     No.

6                                    \* \* \* \* \*

7           Q:     And as you sit here today, you still haven't experienced an

8                       identity theft; correct?

        A:     Correct.

9

10   (*Id.,* 23:17-19, 73:10-12; *see also* 73:5-9, 113: 3-22.).  This testimony matches Ruiz's response

11  to an interrogatory asking Ruiz to describe all facts showing that he had suffered an identity theft.

12  Importantly, Ruiz could not identify a single fact.  (Interrogatory Answers, p. 10 [Stern Decl.,

13  Ex. D].)  Ruiz has never amended or supplemented that response.

14       The only present "harm" that Ruiz claims to have suffered is (i) loss of time and money

15  protecting himself from *potential* future identity theft and (ii) costs associated with serving as a

16  class representative.  (Ruiz Depo., 10:20-11:18 [Stern Decl., Ex. A]; *see also* Interrogatory

17  Answers, p. 11 [Stern Decl., Ex. D].)  As Ruiz testified:

18          Q:     You haven't lost any money as a result of the incident,
                        correct?

19

20          A:     Depends on what — because coming over here I did have to
                        spend some money, and prior to the case, money on phone

21                      minutes, paper — printing paper, scanning, stuff like that.

22          Q:     Those expenses were incurred either in protecting your
                        identity or testifying today as a witness, correct?

23          A:     Correct.

24          Q:     You haven't lost any money as a result of any unauthorized
                        transactions done under your name though, have you?

25

26          A:     No.

27          Q:     And you've not lost any income as a result; correct?

28          A:     Correct.

1     (Ruiz Depo., 116:11-117:8 [Stern Decl., Ex. A]; *see also* 113:3-22.)

2         None of this constitutes legal injury.  Time and money spent contacting banks and taking

3 other precautions to protect one's identity is not the sort of injury the courts recognize to satisfy

4 the "damage" element of the tort of negligence.  *Pisciotta*, 499 F.3d at 639.

5         *Forbes* v. *Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) closely

6 mirrors this case.  There, the names, addresses, SSNs, and account numbers of Wells Fargo Bank

7 customers were stored on computers that were later stolen.  *Id.* at 1019.  The bank sent

8 notification letters and offered one year of free credit monitoring, just as GAP did.  *Id.*  As here,

9 there was no proof that plaintiffs' personal information had been "accessed or misused."  *Id.*

10 at 1019-20.  Plaintiffs nevertheless claimed, as Ruiz does, that the time and money spent

11 monitoring their credit reports was enough to show present injury.  The *Forbes* court rejected that

12 claim:  "[E]xpenditure of time and money [is] not the result of any present injury, but rather, the

13 anticipation of future injury that has not materialized."  *Id.* at 1021.  Accordingly, the *Forbes*

14 plaintiffs had not shown a "present injury or reasonably certain future injury to support damages

15 for any alleged increased risk of harm."  *Id.*; accord *Caudle*, 580 F. Supp.2d at 281-82 (time and

16 expense of credit monitoring to combat an increased risk of future identity theft is not

17 compensable injury); *Aliano v. Tex. Roadhouse Holdings LLC*, No. 07-CV-4108, 2008 WL

18 5397510, at *2 (N.D. Ill. Dec. 23, 2008) (out-of-pocket payments for credit monitoring services

19 purchased to ward off future identity theft do not constitute actionable harm).

20         Likewise, in *Kahle v. Litton Loan Servicing LP*, 486 F. Supp. 2d 705 (S.D. Ohio 2007)

21 four hard drives containing the personal information of mortgage customers were among the

22 equipment stolen from the defendant.  *Id*. at 712.  As here, there was no evidence that thieves

23 were after the data, as opposed to the computer hardware.  *Id.* at 712-13.  The court concluded

24 that "any injury of Plaintiff is purely speculative."  *Id.* at 713.  The same is true here.

25         In case after case, courts in no-injury cases just like this have entered summary judgment

26 for lack of actual damage.  *See Melancon v. La. Office of Student Fin. Assistance,* 567 F. Supp. 2d

27 873, 877 (E.D. La. 2009) (summary judgment granted on grounds that increased risk of ID  theft

28 is "purely speculative" and does not constitute actual injury sufficient to maintain negligence

1     claim); *Stollenwerk v. Tri-West Healthcare Alliance*, No. 03-CV-0185 PHXSRB, 2005 WL

2     2465906, at *5 (D. Ariz. Sept. 6, 2005) *aff'd in part*, No. 05-CV-16990, 2007 WL 416068 (9th

3     Cir. Nov. 20, 2007); *Levine v. DSW Inc.*, No. 586371, at 9-10 (Ohio Ct. Com. Pl. Aug. 19, 2008)

4     (Journal Entry & Opinion); *Guin v. Brazos Higher Educ. Serv. Corp., Inc.*, No. 05-CV-668

5     RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7, 2006) (stolen laptop case: summary judgment

6     granted due to lack of injury).[4]

7        The case law is emphatic. Thirteen courts have considered claims of the sort Ruiz asserts.

8     Not one has permitted such a claim to proceed past summary judgment.

9        Nor is Ruiz's fear of *future* injury sufficient for purposes of establishing present damages.

10     *Pisciotta*, 499 F.3d at 639. Under California law, risk of future harm is not the sort of

11     "appreciable, nonspeculative, present injury" that is essential to a tort cause of action. *Aas v.*

12     *Super. Ct.*, 24 Cal. 4th 627, 646 (2000); *see also Bellman v. San Francisco High School Dist.*,

13     11 Cal. 2d 576 (1938) (to recover in tort for a claim of future injury, the future event must be

14     reasonably certain, not merely likely); *see also Scognamillo v. Herrick*, 106 Cal. App. 4th 1139,

15     1151 (2003) (reversing judgment that included damages for a second back surgery that had yet to

16     be performed and would only occur if a first back surgery went well).

17        Ruiz himself puts his chances of having his identity stolen at about "equal" to his chances

18     "of getting into a car accident coming to or from [his] deposition." (Ruiz Depo., 118:1-7 [Stern

19     Decl., Ex. A].) In effect, Ruiz is suing over a car accident that hasn't happened. Like the plaintiff

20     in *Scognamillo* who might never need a second back surgery, Ruiz's claim that he might someday

21     be harmed by identity theft does not amount to actual "damage."

22

23

24        [4] As one court recently commented: "Across the nation, courts have consistently held
that allegations of increased credit monitoring and increased risks of fraud or identity theft are
insufficient to show an actual injury or damages." *Levine*, No. 586471, at 9-10 (citing *Kahle*,

25     486 F. Supp. 2d 705; *Shafran v. Harley-Davidson, Inc.*, No. 07-CV-01365 GBD, 2008 WL
763177 (S.D.N.Y. March 20, 2008) (collecting cases); *Stollenwerk*, 2007 WL 416068 (9th Cir.

26     Nov. 20, 2007); *Ponder v. Pfizer, Inc.*, 522 F. Supp. 2d 793 (M.D. La. 2007); *Hendricks v.
DSW Shoe Warehouse Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006); *Forbes*, 420 F. Supp. 2d

27     1018.

28

1    Ruiz as much as admitted that his "increased risk" of harm is negligible.  As part of his

2    motion for leave to file a first amended complaint that would add Vangent as a party, he opposed

3    filing the motion under seal.  (Docket #76.)  As Ruiz put it, "it is not clear that . . . identifying the

4    vendor would place class members at a greater risk of identity theft."  (*Id.*, p. 3).  This Court

5    agreed, noting that the risk of injury from disclosing Vangent's identity was unlikely "especially

6    . . . given that the theft of the laptops occurred more than one year ago in Chicago, Illinois."

7    (Order, Docket #80).  The same unlikelihood of injury is true for Ruiz's claim generally.

8    Nor can Ruiz construct a claim of damage *per se* from the fact that his personal

9    information was divulged without his consent.  This Court has already ruled that Ruiz's "attempt

10   to allege that the theft of the laptops somehow constitutes a loss of property because his personal

11   information was contained on the laptop is unavailing."  (Order, Docket #46, at 9:13-19.)  Indeed,

12   this Court recently rejected *for a second time* plaintiff's attempt to state a claim under California's

13   Unfair Competition Law, Bus. & Prof. Code § 17200, for precisely this reason:

14              Nor has Ruiz alleged a loss of property sufficient to state a claim
                for relief. Ruiz alleges that "Plaintiffs have lost property in the form
15              of their PII." FAC ¶¶ 83-84. However, Ruiz has not cited any
                authority to support the contention that the unauthorized release of
16              personal information constitutes "loss of property" as that phrase is
                understood in section 17200.
17

18   (Order, Docket #88, 8:14-19.)  If the mere "unauthorized release of personal information" cannot

19   constitute "loss of property" for purposes of the UCL, as this Court has twice ruled, it should not

20   suffice to establish the injury element of the tort of negligence.

21   Permitting Plaintiff to establish injury on this record not only would be inconsistent with

22   this Court's two prior rulings, it would be contrary to every state and federal court to have faced

23   this issue.  In *Conboy v. AT&T Corp.*, 241 F.3d 242, 250 (2d Cir. 2001), the Second Circuit held

24   that the transfer of personal information collected by a long distance telephone company for the

25   purpose of assisting an affiliate's debt collection activities does not give rise to "damages."

26   Likewise, in *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 328-29 (E.D.N.Y.

27   2005) the defendant sold its customers' private information to a data mining company, yet the

28   court rejected the theory that this loss of privacy, without more, constitutes injury.  Accord,

GAP INC.'S MPA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION
NO. C 07-5739 SC
SF-2582708

9

1   *Smith v. Chase Manhattan Bank*, *N.A.*, 741 N.Y.S.2d 100 (App. Div. 2d Dep't 2002) (tort and

2   contract claims dismissed for lack of injury/claim was that bank sold customer information to

3   telemarketing firm without consent); *Pinero v. Jackson Hewitt Tax Serv. Inc.*, No. 08-CV-3535,

4   2009 WL 43098, at *3 (E.D. La. Jan. 7, 2009) (dismissing negligence claim for lack of injury

5   where plaintiff's identity was not stolen and she did not suffer any concrete financial harm—only

6   fear of future theft and potential credit monitoring costs).  In *Levine*, an Ohio court rejected

7   plaintiff's "novel" argument that "injury" occurred the moment the data was stolen, regardless of

8   whether it was misused.  *Levine*, *supra*, at 9-10.  And even more recently, Judge Walker of this

9   District rejected the Privacy Act[5] claim of a man who claimed to have suffered mental distress

10  from a federal agency's disclosure of his HIV status.  *Cooper v. Fed. Aviation Admin.*, No. 07-

11  CV-1383 (N.D. Cal., Aug. 22, 2008) (Order, Docket #132).

12          Because Ruiz cannot demonstrate any cognizable injury, he may try to resist summary

13  judgment by hypothesizing that others might have had their identities stolen, even if he did not.

14  But Ruiz's speculation that other, unknown persons might have suffered identity theft does not

15  create a genuine issue of material fact sufficient to defeat summary judgment.  See *Matsushita*

16  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the party opposing summary

17  judgment "must do more than simply show that there is some metaphysical doubt as to the

18  material facts"); *Nat'l Indus., Inc. v. Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1267 (9th Cir.

19  1982) (on a motion for summary judgment, "the trier of fact is not permitted to resort to

20  speculation and surmise").

21          Moreover, this speculation is not even about Ruiz, but about imagined others.  As to

22  Ruiz's circumstances and the absence of any injury *to him*, there is no factual dispute.

23          Ruiz's claim of injury is not just speculation.  It is vapor.

24

25

26          [5] The Privacy Act, 5 U.S.C. § 552a, prohibits federal governmental agencies from
    disclosing personal information on individuals except with their written consent.  GAP is not a
27  government agency, and no claim is made under the Privacy Act.

28

**B.      Ruiz Lacks Article III Standing; He Has Not Suffered "Injury-in-Fact."**

In the alternative, the absence of actual injury robs Ruiz of standing.  There is no genuine fact dispute.  Ruiz has not suffered an injury-in-fact under Article III.

As the Court said at the outset, "the elements of standing 'are not merely pleading requirements but rather an indispensable part of the plaintiff's case . . . .'" (Order, Docket #46, 6: 16-18.)  "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976), quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

The Court noted that "there is nothing else from which the Court can determine whether this risk is actual, imminent, credible, or any of the other adjectives courts have used in defining what types of risk of future harm may confer standing." (Order, Docket #46, 6:11-14.)  Although Ruiz's naked allegations got him past the pleading stage, the Court warned:  "[s]hould it become apparent that Ruiz's alleged injury is in fact too speculative and hypothetical, the Court will conclude, as it must, that Ruiz lacks standing."  (*Id.,* 6:19-21.)  That fact has now "become apparent."

Ruiz has absolutely no evidence to support the allegation that his risk of identity theft is "actual, imminent, or credible."  To the contrary, even Ruiz places his odds of an identity theft at about equal to getting hit by a car.

To have standing, "plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).  Claims of threatened or future harm may only satisfy the injury-in-fact requirement if the threat of future injury is "credible rather than remote or hypothetical," and if the plaintiff shows a "very significant possibility that the future harm will ensue."  *Hartman v. Summers*, 120 F.3d 157, 160

1   (9th Cir. 1997).[6]  "A threatened injury must be 'certainly impending' to constitute injury in fact."

2   *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

3       Using this yardstick, courts that have addressed standing to bring a "Fear of ID Theft"

4   case have held that mere "risk of harm" is not an "actual or imminent" injury.  *See, e.g.,*

5   *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 8 (D.D.C. 2007) (mere increased

6   risk of ID theft fails to demonstrate "actual or imminent" injury); *Key v. DSW Inc.*, 454 F. Supp.

7   2d 684, 690 (S.D. Ohio 2006) (same); *Bell v. Acxiom Corp.*, No. 06-CV-00485-WRW, 2006 WL

8   2850042, at *2 (E.D. Ark. Oct. 3, 2006) (same); *Giordano v. Wachovia Sec., LLC.*, No. 06-CV-

9   476 JBS, 2006 WL 2177036, at *4 (D. N.J. July 31, 2006) (same); *See also, Levine*, No. 586371

10  at 4 (summary judgment based on lack of standing where plaintiffs had not suffered any actual

11  harm due to a security breach involving personal information).[7]

12      Ruiz lacks Article III standing.  The Court should enter judgment on all claims.

13      **C.      The Court Should Enter Summary Adjudication on Plaintiff's Second
                Claim for Alleged Violations of California Civil Code Section 1798.85.**

14

15      If the Court were to find that Ruiz lacks  standing, that would dispose of the entire case.

16  But even if Ruiz had standing, there is no genuine factual dispute as to the facts relevant to his

17  second claim.  He alleges that GAP violated  § 1798.85 by requiring "Plaintiff and Class

18  members to use social security numbers to enter the application process without also requiring a

19  unique personal identification number or other authentication device."  (FAC, ¶ 82.)  Not so.

20

21      [6] *See also Lee v. Am. Express Travel Related Servs., Inc.*, No. 07-CV-04765 (N.D. Cal.
    Dec. 6, 2007) (Memorandum & Order, Docket #35) (plaintiff lacked standing to "challenge an
22  unconstitutional term in a contract which has not, and may never, come into play");
    *Gerlinger v. Amazon.com, Inc.*, 526 F.3d 1253 (9th Cir. 2008) (summary judgment granted for
23  lack of standing where plaintiff did not show that he ever purchased an item for a higher price
    than he would have paid had there been no marketing agreement). *Hoang v. Reunion.com, Inc.*,
24  No. 08-CV-03518 MMC (N.D. Cal. December 23, 2008) (Order, Docket #55) (dismissing first
    amended complaint for failure to state a claim and lack of standing where plaintiffs failed to
25  allege they incurred any actual injury as a result of receiving SPAM).

26      [7] As noted, courts that have found "Fear of ID Theft" plaintiffs to have Article III
    standing have gone on to reject such claims for lack of injury.  *See e.g., Pisciotta*, 499 F.3d at
27  639.  Either way, no-injury claims such as Ruiz's have never survived summary judgment.

28

1

### 1.     GAP Did Not Violate California Civil Code Section 1798.85.

Ruiz's second claim fails because it is not true.  No one is, or was, required to use an SSN to "access" GAP's job employment website.  Ruiz himself admits that he did not need to enter his SSN to "access" GAP's employment application website.  (Ruiz Depo., 68:14-69:3; *see also* 53:1-57:23. [Stern Decl., Ex. A].)[8]  That is fatal.

Section 1798.85(a) provides that someone may not "require an individual to use his or her social security number to *access* an Internet Web Site, unless a password or unique personal identification number or other authentication device is also required to access the Internet Web site."  Cal. Civ. Code § 1798.85(a)(4) (italics added).  This Court has already construed the word "access" to mean exactly what it suggests:  "[I]f further evidence reveals that Ruiz's social security number was necessary only to submit his application, and was not required to *access* any website, then this claim will also fail."  (Order, Docket #46, 11 n. 4 (italics added).)[9]

Vangent's Vice President of Technology, testifying as a Rule 30(b)(6) witness, also confirmed that no SSN was needed to access the GAP employment website.  (Deposition of Andre Allen, 240:3-5 [Stern Decl., Ex. E.)  The Court should enter summary adjudication.

Plaintiff's counsel has said, informally, that GAP may have also violated subsection (3) of that statute.  The FAC fails to allege this but, even if it did, there is no genuine factual dispute.  Subsection (3) prohibits someone from "[r]equiring an individual to transmit his or her social

---

[8] During his deposition, Ruiz reenacted on the record the same employment application process he performed at home.  (*Id.*, 52:23-59:5.)  Using a laptop connected to the Internet, he logged onto GAP's employment website and filled out several pages of information until he got to the page prompting him for a SSN.  (*Id.*)  At the end of that process, he admitted he did not have to enter his SSN to access the website.  (*Id.*, 68:14-69:3.)

[9] Dictionary definitions of "access" include "to get at" or "gain access to."  Merriam-Webster Online Dictionary (2008), *available at* http://www.merriam-webster.com/dictionary/access (last visited July 16, 2008).  The legislative history of Section 1798.85 also supports the interpretation of "access" to mean the entering or logging into GAP's website.  The Senate described Bill No. 168 as prohibiting any person or entity from "using an individual's social security number in certain ways, including posting it publicly or requiring it for *access* to products and services."  (Senate Bill Analysis SB 168 (emphasis added); *see also* Senate Third Reading.)  The definition of "access" as contemplated by the Senate fits with the Court's interpretation that a violation can only occur if the social security number was required to enter GAP's employment application website.  (Request for Judicial Notice, Exs. A, B.)

1   security number over the Internet, unless the connection is secure or the social security number is

2   encrypted." Cal. Civ. Code § 1798.85(a)(3). Ruiz, who describes his level of computer

3   sophistication as advanced, acknowledged that GAP's website was secure based on the fact that

4   the web address contained the prefix "https" as opposed to just "http".[10] (Ruiz Depo., 22:11-13,

5   59:13-62:17 [Stern Decl., Ex. A].) Moreover, Vangent, which hosts this website, testified that all

6   transmissions of applicant personal information were at all times encrypted. (Allen Depo.,

7   240:14-20 [Stern Decl., Ex. E].) So did GAP's vice president in charge of IT security.

8   (Deposition of Mark Witkower, 70:16-71:19 [Stern Decl., Ex. F].)

9        The Court should enter summary adjudication on Ruiz's second claim.

10              **2.       There is No Private Right of Action Under Section 1798.85.**

11       At the outset of this case, GAP moved for judgment on the pleadings on the ground that

12   Section 1798.85 does not contain a private right of action. The Court denied that request, finding

13   that GAP had not met its burden. (Order, Docket #46, p. 11.) GAP offers this further showing.

14       The burden is on Ruiz, not GAP, to show that the Legislature intended to create a private

15   right of action. He cannot meet his burden. Whether a statute creates a private right of action is

16   determined by legislative intent. *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 292

17   (1988). A statute creates a private right of action only if the statutory language or legislative

18   history *affirmatively* indicates that intent. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal.

19   App. 4th 55, 62 (1999); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 131

20   (1997). But "when neither the language nor the history of a statute indicates an intent to create a

21   new private right to sue, a party contending for judicial recognition of such a right bears a heavy,

22   perhaps insurmountable, burden of persuasion." *Crusader*, 54 Cal. App.4th at 133.

23       Here, the statute does not affirmatively show a legislative intent to create a private

24   remedy. Thus, the burden shifts to Ruiz to prove that it does. Ruiz cannot meet his "heavy,

25   perhaps insurmountable, burden of persuasion" that Section 1798.85 creates a private right of

26   ────────────

[10] The definition of "https" is Hypertext Transfer Protocol over Secure Socket Layer.
27   "Https" designates a URL scheme used to indicate a secure HTTP connection. Wikipedia
(2008), *available at* http://en.wikipedia.org/wiki/Https (last visited Aug. 12, 2008).

28

1  action.  First, the statute on its face does not indicate any intent to confer a private remedy.  To

2  the contrary, the Legislature considered creating a private cause of action but failed to enact one.

3  *See* Assembly Committee Hearing, SB 168, June 18, 2001 at 4-5.[11]  This is powerful evidence

4  that the law should not be interpreted to include that which the Legislature omitted.  *See Wilson v.*

5  *City of Laguna Beach,* 6 Cal. App. 4th 543, 555 (1992); *Remington Invs., Inc. v. Hamedani*,

6  55 Cal. App. 4th 1033, 1041 (1997); *see also United States v. BestFoods*, 524 U.S. 51, 64 (1998)

7  (failure of a statute to speak to a fundamental subject suggests no such meaning was intended).

8       Second, the Ninth Circuit has clarified the law since GAP's earlier motion.  Section

9  1798.85 was enacted as part of an omnibus anti-identity theft initiative.  In a companion provision

10  enacted at the same time, the Legislature created an *express* private right of action in Cal. Civ.

11  Code § 1798.93.  *Satey v. JPMorgan Chase & Co.*, 521 F. 3d 1087 (9th Cir. 2008).  No similar

12  provision is found in Section 1798.85.  The doctrine of *expressio unis est exclusio alterius*

13  instructs that where a law expressly describes a particular situation to which it shall apply, what

14  was omitted or excluded was intended to be omitted or excluded.  *Longview Fibre Co. v.*

15  *Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992).

16       Section 1798.85 does not create a private right of action.  The Court should grant GAP's

17  motion for summary adjudication on Ruiz's second claim for relief.

18  **V.     CONCLUSION**

19       GAP respectfully requests that this Court summarily adjudicate Plaintiff's first and second

20  claims for relief and then enter judgment in the case for Defendants.

21  DATED:  February 13, 2009.          WILLIAM L. STERN
                                        GEOFFREY R. PITTMAN
22                                      MORRISON & FOERSTER LLP

23

24                                      By        /s/ William L. Stern
                                        _____
25                                          William L. Stern
                                        Attorneys for Defendant GAP, INC.

26

_____

27     [11] This is attached to the accompanying Request for Judicial Notice, Ex. C.

28