1   WILLIAM L. STERN (CA SBN 96105)
    TERESA N. BURLISON (CA SBN 230854)
2   GEOFFREY R. PITTMAN (CA SBN 253876)
    MORRISON & FOERSTER LLP
3   425 Market Street
    San Francisco, California  94105-2482
4   Telephone: 415.268.7000
    Facsimile:  415.268.7522
5   E-mail:  wstern@mofo.com

6   Attorneys for Defendant GAP INC.

7   ANDREW N. GOLDFARB (CA SBN 235615)
    DOUGLAS R. MILLER
8   ZUCKERMAN SPAEDER LLP
    1800 M Street, NW
9   Suite 1000
    Washington, DC 20036-5802
10  Telephone: (202) 778-1822
    E-mail:  agoldfarb@zuckerman.com
11
    Attorneys for Defendant VANGENT, INC.
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16

17  JOEL RUIZ, On Behalf of Himself and All Others        Case No.      C 07-5739 SC
    Similarly Situated,
18                                                         **GAP INC. AND VANGENT, INC.'S**
                        Plaintiff,                         **JOINT OPPOSITION TO**
19                                                         **PLAINTIFF'S MOTION FOR**
             v.                                            **CLASS CERTIFICATION**
20
    GAP, INC. and VANGENT, INC.                            Date:     March 20, 2009
21                                                         Time:     10:00 a.m.
                        Defendants.                        Room:     Courtroom 1, 17th Floor
22                                                         Judge:    Honorable Samuel Conti

23                                                         Complaint filed:   November 13, 2007

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

        A.      The Laptop Incident and Ruiz's Admitted Lack of "Injury." ................................. 2

        B.      Despite Extensive Discovery, Ruiz Has Adduced No Instances of
                Identity Theft As a Result of the Stolen Laptop Incident. ...................................... 2

III.    THE LEGAL STANDARD ....................................................................................... 5

IV.     ARGUMENT ............................................................................................................ 6

        A.      The Court Should First Decide Defendants' Motions for Summary
                Judgment. ............................................................................................................... 6

        B.      No Class Can Be Certified Because No One Has Suffered Legal
                Harm............................................................................................................................ 7

        C.      The Class As Defined Does Not Satisfy the Elements of Rule 23(a)
                or 23(b)..................................................................................................................... 9

                1.      If There Are Actual ID Theft Victims, Ruiz Cannot
                        Represent Them. ........................................................................................ 9

                2.      Even as to "Latent" Injury Plaintiffs, Ruiz is Subject to
                        Unique Defenses and Cannot Represent Any Person Who
                        Signed Up for Credit Monitoring................................................................. 12

                3.      Plaintiff Cannot Satisfy Rule 23(b)(3) Because Individual
                        Issues of Causation and Damage Predominate. ...................................... 12

V.      CONCLUSION .......................................................................................................... 19

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Adams v. United States,*
   No. CIVS040979DFLKJMPS,

5

   2006 WL 618293 (E.D. Cal. Mar. 10, 2006) .......................................................... 14

6

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ..................................................................................... *passim*

7

*Ball v. Union Carbide Corp.,*

8

   212 F.R.D. 380 (E.D. Tenn. 2002) ....................................................................... 17

9

*Basurco v. 21st Century Ins. Co.,*
   108 Cal. App. 4th 110 (2003) .............................................................................. 16

10

*Bell Atl. Corp. v. AT&T Corp.,*

11

   339 F.3d 294 (5th Cir. 2003) ................................................................................ 17

12

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) ................................................................................ 18

13

*Blades v. Monsanto Co.,*

14

   400 F.3d 562 (8th Cir. 2005) ................................................................................ 15

15

*Caro v. Procter & Gamble Co.,*
   18 Cal. App. 4th 644 (1993) ................................................................................. 16

16

*Carvalho v. Equifax Info. Servs., Inc.,*

17

   588 F. Supp. 2d 1089 (N.D. Cal. 2008) ................................................................ 6

18

*Castano v. Am. Tobacco Co.,*
   84 F.3d 734 (5th Cir. 1996) ......................................................................... 14, 17

19

*Dacanay v. Gov't of Guam,*
   No. 05-00017,

20

   2006 WL 2244579 (D. Guam Aug. 4, 2006) ........................................................ 6

21

*Drimmer v. WD-40 Co.,*
   No. 06-CV-900 W(AJB),

22

   2007 WL 2456003 (S.D. Cal. Aug. 24, 2007) ...................................................... 14

23

*Dukes v. Wal-Mart, Inc.,*

24

   509 F.3d 1168 (9th Cir. 2007) .............................................................................. 13

25

*Dukes v. Wal-Mart, Inc.,*
   Nos. 04-16688, 04-16720,

26

   2009 WL 365818 (9th Cir. Feb. 13, 2009) ........................................................... 13

27

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,*
   254 F.R.D. 68 (E.D.N.C. 2008) ............................................................................ 15

28

*Fields v. Napa Milling Co.*,
    164 Cal. App. 2d 442 (1958) ............................................................................... 3, 5

*Forbes v. Wells Fargo Bank, N.A.*,
    420 F. Supp. 2d 1018 (D. Minn. 2006) ....................................................................... 8

*Gartin v. S&M NuTec LLC*,
    245 F.R.D. 429 (C.D. Cal. 2007) ....................................................................... 14, 15

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................... 10, 13

*Green v. Occidental Petroleum Corp.*,
    541 F.2d 1335 (9th Cir. 1976) ................................................................................ 5

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 10, 12, 13

*Hipolito v. Alliance Receivables Mgmt., Inc.*,
    No. C-05-0842 JCS,
    2005 WL 1662137 (N.D. Cal. July 15, 2005) ............................................................ 6

*Hum v. Dericks*,
    162 F.R.D. 628 (D. Haw. 1995) ............................................................................. 10

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ........................................................................... 13, 17

*In re Methionine Antitrust Litig.*,
    204 F.R.D. 161 (N.D. Ca1. 2001) ......................................................................... 18

*In re Paxil Litig.*,
    212 F.R.D. 539 (C.D. Cal. 2003) ......................................................................... 15

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
    Nos. 05 C 4742, 05 C 2623,
    2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) .............................................................. 7

*In re Telectronics Pacing Sys., Inc.*,
    172 F.R.D. 271 (S.D. Ohio 1997) ......................................................................... 11

*In re Tri-State Crematory Litig.*,
    215 F.R.D. 660 (N.D. Ga. 2003) ......................................................................... 11

*La Duke v. Nelson*,
    762 F.2d 1318 (9th Cir. 1985) ............................................................................. 10

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ............................................................................. 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................... 2, 5

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ............................................................................. 15

*Midpeninsula Citizens for Fair Hous. v. ACCO Mgmt. Co.,*
   168 F.R.D. 647 (N.D. Ca1. 1996) ........................................................................... 18

*Newell v. State Farm Gen. Ins. Co.,*
   118 Cal. App. 4th 1094 (2004) ............................................................................... 16

*Ortiz v. Fibreboard Corp.,*
   527 U.S. 815 (1999) ............................................................................................... 11

*Oshana v. Coca-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006) ................................................................................... 7

*Pastor v. State Farm Mut. Auto. Ins. Co.,*
   No. 05 C 1459,
   2005 WL 2453900 (N.D. Ill. Sept. 5, 2005) ......................................................... 14

*Pisciotta v. Old Nat'l Bancorp,*
   499 F.3d 629 (7th Cir. 2007) ............................................................................. 6, 8

*Potter v. Hughes,*
   546 F.3d 1051 (9th Cir. 2008) ................................................................................. 6

*Richards v. Jefferson County,*
   517 U.S. 793 (1996) ............................................................................................... 11

*Robertson v. N. Am. Van Lines, Inc.,*
   No. C-03-2397 SC,
   2004 WL 5026265, (N.D. Cal. April 13, 2004) ..................................................... 10

*Rogers v. NationsCredit Fin. Servs. Corp.,*
   Case. No. C-98-2680 SC,
   2000 WL 1499354, (N.D. Cal. Aug. 7, 2000) ....................................................... 13

*Romano v. Merrill Lynch, Pierce, Fenner & Smith,*
   834 F.2d 523 (5th Cir. 1987) ................................................................................... 9

*Sanneman v. Chrysler Corp.,*
   191 F.R.D. 441 (E.D. Pa. 2000) ............................................................................ 15

*Siegel v. Shell Oil Co.,*
   No. 06 C 0035,
   2009 WL 449073 (N.D. Ill. Feb. 23, 2009) .......................................................... 18

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ................................................................................................... 6

*Stephenson v. Dow Chem. Co.,*
   273 F.3d 249 (2d Cir. 2001) ................................................................................... 11

*Sterling v. Velsicol Chem. Corp.,*
   855 F.2d 1188 (6th Cir. 1988) ............................................................................... 11

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
   546 F.3d 196 (2d Cir. 2008) ................................................................................... 13

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) ........................................................................................ 7

*W. Union Tel. Co. v. Pennsylvania,*
  368 U.S. 71 (1961) ...................................................................................................... 11

*Wehner v. Syntex Corp.,*
  117 F.R.D. 641 (N.D. Cal. 1987) ............................................................................. 8, 11

*Wright v. Schock,*
  742 F.2d 541 (9th Cir. 1984) ........................................................................................ 6

*Zinser v. Accufix Research Inst., Inc.,*
  253 F.3d 1180 (9th Cir. 2001) ...................................................................................... 5

## STATUTES & OTHER AUTHORITIES

15 U.S.C.
  § 1681g ........................................................................................................................... 8

16 C.F.R
  § 610 *et seq.* ................................................................................................................... 8

Fed. R. Civ. P.
  Rule 23 .................................................................................................................. 1, 9, 13
  Rule 23(a) ......................................................................................................... 1, 5, 9, 12
  Rule 23(a)(3) ................................................................................................................... 9
  Rule 23(a)(4) ................................................................................................................... 9
  Rule 23(b) ....................................................................................................................... 9
  Rule 23(b)(3) ................................................................................... 1, 2, 10, 13, 14, 18
  Rule 23(c)(4)(b) ............................................................................................................ 11
  Rule 56) ........................................................................................................................... 6

1    **I.     INTRODUCTION**

2            This "Fear of Identity Theft" class action arises from the theft of a laptop computer in

3    September 2007 from defendant Vangent, Inc. ("Vangent"), a third-party vendor of defendant

4    GAP, Inc. ("GAP").  It contained personal information (names, addresses, and social security

5    numbers) of some 750,000 persons who had applied for jobs with GAP.  A year and a half later,

6    the parties are unaware of a single instance of identity theft resulting from the stolen laptop

7    incident.

8            Plaintiff Joel Ruiz ("Ruiz") is someone who *didn't* have his identity stolen.  He now asks

9    the Court to certify a class of all persons whose personal information was on the laptop.  The

10   Court should deny class certification because Ruiz cannot meet the requirements of Rule 23 of the

11   Federal Rules of Civil Procedure.

12           First, defendants have filed a motion for summary judgment, which the Court should

13   decide first.  A key issue in that motion is whether Ruiz even has Article III standing and whether

14   he (and any other uninjured class members) even has a claim.  (*See* Docket #100.)  That ruling

15   could moot or at least narrow this motion for class certification.[1]

16           Second, no class can be certified where, as here, 100% of the putative class members

17   suffered no legal, cognizable injury.  Here, Ruiz has not presented any evidence that he, or

18   anyone in the putative class, has suffered any legal, cognizable injury.

19           Third, if the Court were to reach this motion, it should deny class certification because

20   Ruiz cannot satisfy Rule 23(a)'s typicality and adequacy requirements and Rule 23(b)(3)'s

21   "predominance" requirement.  Ruiz may represent only those persons who are similarly situated

22   to him—in this case, persons whose claimed injury is fear of *future* harm.  He cannot represent a

23

24

25

26   _____

27           [1] Defendants have also moved for summary adjudication on each of the three claims for
     relief.  Because the notice to class members must describe the claims, class certification should
28   be deferred at least until the parties know which claims survive.

1  subclass of hypothetical persons who have suffered an actual identity theft.[2]  Yet, his class

2  definition encompasses both.

3       Even within the group of "latent injury" claimants, Ruiz is neither typical nor an adequate

4  class representative.  Unlike thousands of other putative class members, Ruiz did nothing to

5  protect himself following the incident, including failing to take advantage of GAP's free one-year

6  credit monitoring service and $50,000 in ID theft insurance.  As such, he is subject to unique

7  defenses and cannot represent those who accepted GAP's offer.

8       Finally, whatever the class definition, Ruiz's motion should be denied because issues

9  relating to causation and damages require individualized assessment for each claimant.  As a

10  result, the Court should find that Ruiz's proposed class cannot satisfy Rule 23(b)(3).

11  **II.     STATEMENT OF FACTS**

12       **A.     The Laptop Incident and Ruiz's Admitted Lack of "Injury."**

13       GAP's summary judgment motion includes a Statement of Facts section that describes the

14  laptop incident and Ruiz's lack of injury.  (*See* Docket #100, 2-4.)  For brevity's sake, Defendants

15  point out that Ruiz admits suffering no injury as a result of the laptop incident and likens his

16  chances of ever having an identity theft as about "equal" to his chances "of getting into a car

17  accident coming to or from [his] deposition."  (*Id.*, 8:17-19; Ruiz Depo., 118:1-7 [Stern Decl.,

18  Ex A].)

19       **B.     Despite Extensive Discovery, Ruiz Has Adduced No Instances of Identity
            Theft As a Result of the Stolen Laptop Incident.**

20

21       Ruiz has taken extensive discovery.  (*See* Docket #100, 4:9-14.)  Despite that, he is unable

22  to identify a single putative class member who has suffered identity theft or cognizable monetary

23  loss.  That is because it is highly likely that there are none.

24       It is not GAP's burden to "prove a negative" by demonstrating that no such persons exist.

25  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears burden of

26  

27       [2] We call this "hypothetical" because this subgroup has a population of zero.  (*See*
    Section II.B., below.)

28

1   establishing all elements of standing, including injury-in-fact); *Fields v. Napa Milling Co.*, 164

2   Cal. App. 2d 442, 447-48 (1958) (noting proof of damages is an "essential part" of the plaintiff's

3   case for negligence).  Nevertheless, there are two compelling reasons to believe that no putative

4   class member suffered an identity theft as a result of the stolen laptop incident.

5          First, all of the evidence (including the surveillance video tapes at the scene) is consistent

6   with a property crime (i.e., theft of laptop) and not a cyber crime (i.e., theft to obtain the personal

7   data on the hard drive).  (Deposition of Keith White ("White Depo."), 87:1-89:23 [Stern Decl.,

8   Ex. A].)  Both the Chicago Police Department and the FBI so concluded.  (*Id.*, 10:21-11:8; 125:3-

9   126:5.)  Finally, a forensic computer expert hired by GAP, Professor Aviel D. Rubin of Johns

10  Hopkins University, concluded that "based on the circumstances, all indications are that this was

11  an equipment theft and unrelated to [personally identifiable information]."  (Report, dated July 8,

12  2008 at 2, attached to Rosemary Rivas Decl., Ex. G [Docket #94-8].)

13         Second, it is unlikely there have been any instances of identity theft arising from this

14  incident for the additional reason that, if there had been, GAP would likely have learned of it.

15  Within nine days of the laptop theft, GAP established a response system that encouraged job

16  applicants to report identity theft.[3]  This was a "best in class" response in which GAP extended an

17  offer of one-year free credit monitoring as well as $50,000 in fraud insurance.  (Deposition of Bill

18  Chandler ("Chandler Depo."), 58:6-20; 60:7-9; 75:25-76:10; 138:1-4 [Stern Decl., Ex. B].)  GAP

19  also established an "elaborate" tracking system to "tease out" claims of actual identity theft.

20  (White Depo., 34:23-36:17; 104:15-111:7 [Stern Decl., Ex. A]; Chandler Depo., 24:25-25:10;

21  86:19-88:18 173:9-174:9 [Stern Decl., Ex. B].)  The results are telling.

22         All 744,000 job applicants on the Vangent database received a notification letter similar to

23  the one Ruiz received.  (Chandler Depo., 50:11-17 [Stern Decl., Ex. B].)  Thereafter, the call

24  centers received over 44,000 inquiries.  (*Id.,* 43:14-15.)  Working from a script, specially trained

25  customer service representatives ("CSRs") identified any caller who hinted at ID theft or

26

27         [3] Plaintiff admits that GAP acted "quickly" to respond to the incident.  (Plaintiff's
    MPA iso Motion for Class Certification ["Motion"] 7:7-9.)

28

1    mentioned an unauthorized account opening or credit card charge.  (*Id*., 87:1-21; 88:15-18; 173:9-

2    174:9.)  CSRs were instructed to ask any such callers for written documentation.  (*Id*. 175:19-

3    176:16.)[4]

4            In all, approximately 2,000 callers got "escalated" to specially trained GAP employees for

5    various reasons.  (Chandler Depo., 171:12-17 [Stern Decl., Ex. B].)[5]  Any callers claiming

6    identity theft had their calls "escalated" to a GAP employee specially trained to provide

7    counseling to ID theft victims.  (*Id*., 87:1-88:14 .)  Only 130 of the approximately 2000

8    "escalated" callers suggested identity theft.  (White Depo., 109:19-110:23 [Stern Decl., Ex. A].)

9    GAP urged those callers to enroll in the free program of credit monitoring and fraud protection, to

10   monitor closely their bank statements and credit reports, and to notify their banks.  (Chandler

11   Depo., 215:5-21 [Stern Decl., Ex. B].)

12           GAP also instructed those callers to send any documentation they have that might suggest

13   identity theft.  Approximately sixteen such cases required special investigation.  (White Depo.,

14   36:8-13 [Stern Decl., Ex. A].)  These calls were routed to fraud specialists working under Keith

15   White, a senior GAP official in charge of GAP's worldwide loss prevention.  (*Id*., 39:19-41:4;

16   110:24-111:7.)  But these all turned out to be "false positives," e.g., people whose credit cards

17   were used by a relative.  (*Id*., 108:2-109:18.)

18           In August 2008, for example, the mother of a job applicant phoned saying that someone

19   had fraudulently used her son's SSN.  The police told her that it may have happened as a result of

20   the GAP laptop incident.  The call was "escalated" to a senior manager who discovered that, in

21   fact, her son's SSN had been misused on June 23, 2007—three months *before* the laptop at issue

---

24           [4] Plaintiff's statement that "GAP never sought or collected documentation from . . .
     Class members regarding their claims of identity theft" is therefore not true.  (Motion, 8:4-5).
25   Also incorrect is Plaintiff's claim that GAP "had no clear or written, discernable protocol for
     conducting its investigation . . . ."  (*Id*., 8:6-8.)

27           [5] Plaintiff incorrectly states that "between 1,200 and 2,000 Class members" claimed
     identity theft.  (Motion, 8:1-2).  That is the number of calls that were escalated, not how many
28   people complained of actual identity theft.

1   in this case was stolen.  (Stern Decl., ¶ 4; Ex. C.)[6]  This is an example of what Mr. White calls a

2   "false positive."

3       Ruiz cynically contends that GAP "cleared itself of culpability for claims of identity

4   theft," and says this does not prove class members are not at risk.  (Motion, 8:8-10.)  That misses

5   the point.  GAP did not create this escalation process to "clear itself of culpability."  In fact, GAP

6   did all this months *before* Ruiz even filed his lawsuit.  GAP established this escalation procedure

7   to assist applicants who might have been victimized by identity theft arising from the laptop

8   incident.  Contrary to Ruiz's contention, GAP has consistently *encouraged* the reporting of

9   identity theft so that cases could be investigated and victims of identity theft, if any, could be

10  made whole.  (White Depo., 104:15-105:24 [Stern Decl., Ex. A].)

11      Despite this process, designed to "tease out" and respond to instances of actual identity

12  theft, no such instances surfaced among the 750,000 letter recipients.  (*Id.*, 36:13-16; Chandler

13  Depo., 198:12-15 [Stern Decl., Ex. B].)  No incidents of suspicious credit report activity or

14  unauthorized account openings occurred among this group either.  (Chandler Depo., 222:17-21;

15  225:2-6 [Stern Decl., Ex. B].)  Nor has GAP been told by Experian—the company that offered ID

16  theft insurance—that any job applicants have filed a claim for fraud insurance.  (*Id.*, 121:14-17.)

17      Ruiz bears the burden of proving legal injury.  *See, e.g., Lujan*, 504 U.S. at 561; *Fields*,

18  164 Cal. App. 2d at 447-48.  He has not met his burden.

19  **III.   THE LEGAL STANDARD**

20      The burden is on Ruiz to prove the elements of Federal Rule of Civil Procedure 23(a):

21  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  He also

22  bears the burden of proving at least one of the requirements of Rule 23(b).  *See Zinser v. Accufix*

23  *Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Failure to prove any one of these

24  elements precludes class certification.  *Id.*; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613

25  (1997); *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1339 (9th Cir. 1976).

26

27  _____

28      [6] GAP has produced to Ruiz all of the "escalation" records.  (Stern Decl., ¶ 4.)

1  **IV.    ARGUMENT**

2       **A.    The Court Should First Decide Defendants' Motions for Summary Judgment.**

3            The Court should decide Defendants' motions for summary judgment before class

4  certification.  First, a key issue on summary judgment is whether Ruiz has Article III standing.

5  (Docket #100.)  Jurisdiction always presents a threshold issue and should be decided first.  *Steel*

6  *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998); *Potter v. Hughes*, 546 F.3d 1051,

7  1055 (9th Cir. 2008).

8            Second, a "district court has discretion to rule on a motion for summary judgment before

9  it decides the [class] certification issue" where "it is more practicable to do so and where the

10  parties will not suffer significant prejudice."  *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir.

11  1984); *see also Hipolito v. Alliance Receivables Mgmt., Inc.*, No. C-05-0842 JCS, 2005 WL

12  1662137, at *2-3 (N.D. Cal. July 15, 2005).  In *Wright*, the court held that it is "reasonable to

13  consider a Rule 56 motion first when early resolution of a motion for summary judgment seems

14  likely to protect both the parties and the court from needless and costly further litigation."  *Id.*

15  at 544.  That same rationale applies here.

16            This is what the Seventh Circuit did in *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 632

17  (7th Cir. 2007), another Fear-of-Identity-Theft case discussed in GAP's motion for summary

18  judgment.  (Docket #100, 5.)  There, the court granted judgment on the pleadings and dismissed

19  the motion for class certification as moot due to plaintiff's failure to show a legally cognizable

20  injury.  The same is true here.

21            Ruiz cannot show prejudice.  Since April 25, 2008, the Court's case management order

22  has contemplated that these motions would be heard together.  (Docket #52.)  Moreover, if the

23  Court were to grant Defendants' motions for summary judgment or summary adjudication, class

24  certification would become moot or at least narrowed.  *See id.*; *see also Carvalho v. Equifax Info.*

25  *Servs., Inc.*, 588 F. Supp. 2d 1089, 1091 (N.D. Cal. 2008); *Dacanay v. Gov't of Guam*, No. 05-

26  00017, 2006 WL 2244579, at *1 (D. Guam Aug. 4, 2006) (Ware, J.).  Addressing summary

27  judgment at the outset also enables the parties to potentially avoid the substantial costs of class

28

1   notification and the hiring of a class action administrator, as well as the months' long delay of

2   awaiting expiration of the opt-out period once class notices have been distributed.

3          The Court should decide summary judgment first, then class certification.

4          **B.     No Class Can Be Certified Because No One Has Suffered Legal Harm.**

5          If, after ruling on summary judgment, the Court were still inclined to hear this motion, it

6   should deny it.  Ruiz has not adduced any evidence that even a single putative class member—let

7   alone Ruiz himself—has suffered a legally cognizable harm.  This is fatal.  A class may not be

8   certified if, as here, the class includes persons who have not suffered legally cognizable harm.

9          In *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) the Ninth Circuit

10  reversed class certification where only a *small* percentage of the class suffered actual injury from

11  a drug.  Here, Ruiz has not presented genuine, material evidence that *any* potential class member

12  has had his or her identity stolen.  As this Court noted at the outset:  "[t]he only harm Ruiz alleges

13  is that, as a result of the laptop thefts, he is now at 'an increased risk of identity theft.'" (Order,

14  Docket #46, 4:27-5:2).

15         Nothing has changed since then.  Indeed, in the just-filed First Amended Complaint

16  ("FAC"), prepared with the benefit of extensive document and deposition discovery, the only

17  injury Ruiz continues to alleges on behalf of himself and potential class members is that GAP's

18  "compromising of their [personal identifying information] has placed them *at an increased risk* of

19  identity theft."  (FAC, ¶¶ 80, 83 [italics added].)

20         Cases from other circuits are consistent with *Valentino*.  *See Oshana v. Coca-Cola Co*.,

21  472 F.3d 506, 514 (7th Cir. 2006) (affirming denial of certification where proposed class was not

22  sufficiently definite because "[it] could include millions who were not deceived and thus have no

23  grievance"); *see also In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig*., Nos. 05 C

24  4742, 05 C 2623, 2007 WL 4287511, at *5 (N.D. Ill. Dec. 4, 2007) (denying certification; "the

25  proposed class definition would include many class members who were not deceived and suffered

26  no damage . . . . This deficiency dooms class certification.")

27         Despite months of discovery, Ruiz fails to provide genuine and material evidence that

28  anyone—let alone everyone—in the putative class has suffered an actual injury.  This precludes

1    class certification.  *See Amchem Prods., Inc.*, 521 U.S. at 628-29 (affirming denial of class

2    certification where some members of the class had developed asbestos-related injuries while

3    others were only at risk of developing such injuries); *Wehner v. Syntex Corp.*, 117 F.R.D. 641,

4    645 (N.D. Cal. 1987) (ruling plaintiffs who did not suffer injury must be severed from the class).

5           Ruiz disagrees and contends that his *fear* of identity theft and his expenditure of time

6    and/or money to protect himself constitutes legal injury.  (Motion, 8:11-9:18.)  For example, Ruiz

7    contends that his personal decision to sign up for a commercial credit monitoring product on

8    February 6, 2009—a week before filing his motion and more than sixteen months after the laptop

9    incident—constitutes injury.  (*Id.*, 8:15-18; *see also* Decl. of Joel Ruiz iso Mot. for Class Cert.

10   ("Ruiz Decl.), ¶¶ 4-5.)  But, as discussed in GAP's motion for summary judgment, time and

11   money spent on protecting one's self against uncertain future identity theft is not legal injury.

12   *See, e.g.*, *Pisciotta*, 499 F.3d at 639; *Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018,

13   1021 (D. Minn. 2006); *see also* additional cases cited in Docket #100, 7.

14          Moreover, such credit monitoring is precisely what GAP offered *for free* (Ruiz Decl., ¶ 3,

15   Ex. A), and Ruiz declined.  This voluntary expenditure also is not an "injury," since federal law

16   already gives every consumer the right to a *free* annual credit report from each of the three credit

17   monitoring bureaus.  (15 U.S.C. § 1681g; 16 C.F.R. § 610 *et seq.*)  That Ruiz chose to buy

18   something he could get for free is not "injury."  Finally, this purchase was a decision made by

19   Ruiz individually.  He has not shown that this cost was incurred by every class member.

20          Ruiz further speculates that the laptop theft might have been a cyber crime.  (*Cf.*, Motion,

21   7:7-9.)  But he offers no evidence to support his conjecture.  Ruiz posits, first, that the thief might

22   have been after the data because he bypassed other equipment.  (Motion, 7:17-20.)  But law

23   enforcement officials and Professor Rubin both considered this scenario and nevertheless

24   concluded that it was a property crime, in part because these laptops were newer models.  Second,

25   Ruiz speculates that it might have been a cyber crime because GAP offered a reward and the

26   laptop was never returned.  (Motion, 7:20-22.)  This makes no sense.  A cyber thief would be just

27   as likely as a property thief to ignore a reward.  Third, Ruiz says that GAP itself was concerned

28   that revealing Vangent's identity somehow shows it was a cyber crime.  (Motion, 7:22-23.)  Just

1    the opposite.  GAP was concerned that revealing Vangent's identity might run the risk of alerting

2    the thief and thereby converting a property crime into a cyber crime.  (Chandler Depo., 63:16-

3    64:24 [Stern Decl., Ex. B].)

4          As discussed, it is Ruiz's burden to prove injury.  He has not met that burden.  Abject

5    speculation is not evidence and should be rejected.  *See Romano v. Merrill Lynch, Pierce, Fenner*

6    *& Smith*, 834 F.2d 523, 530-31 (5th Cir. 1987) (upholding district court's denial of class

7    certification where plaintiff "relied only on rank speculation and conclusory assertions to support

8    his claim to class relief.")

9          It is Ruiz's burden to prove he and every other putative class member has been injured.

10    He has not met that burden.  No class can be certified under such circumstances.

11        **C.**      **The Class As Defined Does Not Satisfy the Elements of Rule 23(a) or 23(b).**

12          Even if the Court were to get past the absence of legal injury, Ruiz's motion should be

13    denied under Rule 23.  Here, the FAC defines the proposed class as follows:

> All persons that applied for an in-store position with a Gap brand
> store, through Gap and Vangent, Inc.'s ("Vangent") application
> process from July 1, 2006 to July 31, 2007, and whose personal
> information was stored in the laptop stolen on September 17, 2007
> from Vangent's Chicago, Illinois facility.

17    (FAC, ¶ 68).[7]  This definition encompasses both those whose injury has already become manifest

18    and those who, like Ruiz, have only a latent injury.  Because Ruiz's only injury is a latent one, he

19    cannot represent both types of claimants—the class he has identified.

20        **1.**      **If There Are Actual ID Theft Victims, Ruiz Cannot Represent Them.**

21          Rule 23(a) requires that a named plaintiff be able to "fairly and adequately protect the

22    interests of the class," and assert claims or defenses that "are typical of the claims or defenses of

23    the class." Fed. R. Civ. P. 23(a)(3), (4).  "The adequacy inquiry under Rule 23(a)(4) serves to

24    uncover conflicts of interest between named parties and the class they seek to represent."

25    *Amchem Prods., Inc.*, 521 U.S. at 625.  Likewise, the "typicality" requirement tests "whether

---

27        [7] The FAC asserts the wrong dates.  The affected job applicants applied between July

28    2006 and June 2007—not *July* 2007.  (FAC, ¶ 39).

1  other members have the same or similar injury, whether the action is based on conduct which is

2  not unique to the named plaintiffs, and whether other class members have been injured by the

3  same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

4        The same defect hobbles Ruiz's showing under Rule 23(b)(3).  "[A] class representative

5  must be part of the class and 'possess the same interest and suffer the same injury' as the class

6  members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982).  This is a corollary to

7  the rule that common questions of law or fact must "predominate over any questions affecting

8  only individual members."  Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc.*, 521 U.S. at 615.  If

9  "material variations exist as to the law or facts involved with individual class member injuries,

10  then the commonality requirement [is] not . . . met."  *La Duke v. Nelson*, 762 F.2d 1318, 1332

11  (9th Cir. 1985); *Hum v. Dericks*, 162 F.R.D. 628 (D. Haw. 1995) (denying certification where the

12  fact of injury is an element of the claim and is not common); *Robertson v. N. Am. Van Lines, Inc.*,

13  No. C-03-2397 SC, 2004 WL 5026265, at *5 (N.D. Cal. April 13, 2004) (Conti, S.) (common

14  issues do not predominate in claims against interstate carrier for violations of federal regulations:

15  "each member of the class will have to show, inter alia, that they requested to pay 110 percent of

16  their estimate in a form acceptable to the carrier and were denied possession of their goods.")

17        Ruiz's class definition is broad enough to encompass persons, if any, who suffer actual ID

18  theft from the laptop theft.  Plaintiff has stated that he fully intends to represent any such

19  claimants.  (*See* Pls.' Mem. of Points & Authorities in Opp'n to Gap Inc.'s Mot. to Strike Class

20  Definition [Docket #59, 9].)  He cannot.  Ruiz, who has suffered no actual injury himself, can no

21  more represent these individuals than an "exposure-only" asbestos victim could represent a class

22  that includes persons with asbestosis symptoms that have already become manifest.  In *Amchem*,

23  the Supreme Court held that no such class could be certified.  *Amchem Prods., Inc.*, 521 U.S. at

24  626 (interests of class members who have been diagnosed with asbestosis are not aligned with

25  those who merely faced heightened risk of contracting the disease).  *Amchem* is controlling.[8]

26  _____

27      [8] Following *Amchem*, the Second Circuit has held that a class action settlement that had
been approved twelve years earlier was invalid where it purported to settle the claims of
Vietnam veterans exposed to Agent Orange but who had experienced no symptoms.

28                                         (Footnote continues on next page.)

1    Ruiz could never adequately represent the hypothetical "manifest" group.  Indeed, "it is

2    obvious after *Amchem* that a class divided between holders of present and future claims (some of

3    the latter involving no physical injury…) *requires division into homogeneous subclasses* under

4    Rule 23(c)(4)(B), *with separate representation* to eliminate conflicting interests of counsel."

5    *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) [italics added].

6    Because Ruiz himself is uninjured, he could not bind any hypothetical class members who

7    are injured.  *See Richards v. Jefferson County*, 517 U.S. 793, 805 (1996).  Such a result would

8    violate due process:  A "holder of . . . property is deprived of due process of law if he is

9    compelled to relinquish it without assurance that he will not be held liable again in another

10   jurisdiction or in a suit brought by a claimant who is not bound by the first judgment."  *W. Union

11   Tel. Co. v. Pennsylvania*, 368 U.S. 71, 75 (1961).

12   Ruiz cites *Amchem* but makes no mention that it dooms his class certification motion.

13   (*See* Motion, 13).  His other cited cases also undermine his argument.  In *Wehner*, 117 F.R.D. at

14   645, for instance, Judge Williams held that claimants who had not suffered actual injury from

15   dioxin contamination must be severed from the class of those who had.  Similarly, in *In re

16   Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 287 (S.D. Ohio 1997), a medical monitoring case,

17   the court divided the class into subclasses depending on whether the claimant had suffered a

18   present physical injury.  And, unlike this case, *In re Tri-State Crematory Litig.* and *Sterling v.

19   Velsicol Chem. Corp.* were mass tort cases that did not involve the conflict between present and

20   future claimants.  *See In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696 (N.D. Ga. 2003)

21   (involving class comprised of those whose relatives' bodies had been mishandled by a

22   crematorium); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) (case where

23   proposed class consisted of persons who suffered injury as a result of ingesting contaminated

24   water).

25   ──────────────────────

(Footnote continued from previous page.)

26   *Stephenson v. Dow Chem. Co.*, 273 F.3d 249 (2d Cir. 2001).  There, plaintiffs who had only
     latent injuries at the time of the earlier settlement but developed cancer later were inadequately
27   represented in the prior litigation and, therefore, were not bound by the court-approved
     settlement.  *Id.* at 261.

28

2.   **Even as to "Latent" Injury Plaintiffs, Ruiz is Subject to Unique Defenses and Cannot Represent Any Person Who Signed Up for Credit Monitoring.**

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508. Here, even as to the "latent injury" group, Ruiz is neither an adequate representative nor is he typical within the meaning or Rule 23(a).

As discussed in GAP's summary judgment motion, Ruiz received GAP's notification letter in early October 2007, but never signed up for GAP's free offer of credit monitoring and ID theft insurance. He tried to phone GAP once, but hung up when he was put on hold. GAP's notification letter also advised Ruiz he could enroll on-line, but he never did that either. Ruiz's indifference went beyond just failing to take advantage of GAP's free offer. GAP also advised job applicants to notify their banks and sign up for a free credit report from one of the three major credit reporting agencies. Ruiz ignored that advice, too. (*See* Docket #100, 3:3-20.)

Ruiz's failure to take advantage of GAP's free credit monitoring services subjects him to unique defenses. He is not typical of the thousands of putative class members who took advantage of GAP's offer and signed up for the free protective measures made available to them. Furthermore, if Ruiz were to have a future identity theft, his failure to accept the free $50,000 in fraud insurance makes him differently situated from class members who accepted that benefit.

It is not enough that Ruiz and the other class members applied for a job with GAP, had their personally identifiable information exposed, and purportedly have to "spend time/and or money in the future to protect themselves from identity theft." (*Cf.*, Motion, 12:5-11, 19-22). Here, Ruiz insists that GAP's one-year credit monitoring and ID theft insurance was inadequate, yet he turned down that remedy even after retaining counsel. He cannot represent those who accepted this offer.

3.   **Plaintiff Cannot Satisfy Rule 23(b)(3) Because Individual Issues of Causation and Damage Predominate.**

Even if the Court were to depart from the eighteen other decisions that have rejected Fear-of-Identity-Theft cases on either standing or lack-of-injury grounds (see Docket #100, 5-10), still

1   no class could be certified.  Ruiz would still have failed to show that common issues of law and

2   fact "predominate" across the claims of the putative class members he seeks to represent.  *See,*

3   *e.g., Rogers v. NationsCredit Fin. Servs. Corp.,* Case. No. C-98-2680 SC, 2000 WL 1499354, at

4   *5 (N.D. Cal. Aug. 7, 2000) (*denying* certification; "individual issues that are central to liability

5   predominate over any common issue of fact or law").

6           **a.      Ruiz Fails To Meet His Burden To Show Each Element of Rule**
7           **23(b)(3).**

8           As the party seeking to certify a Rule 23(b)(3) class action, Ruiz bears the burden to

9   "demonstrate that common questions predominate over any questions affecting only individual

10  members and that class resolution is superior to other available methods for adjudication of the

11  controversy."  *Id.*  "That inquiry trains on the legal or factual questions that qualify each class

12  member's case as a genuine controversy."  *Amchem Prods., Inc.,* 521 U.S. at 623 .  In

13  determining whether predominance has been shown, the Court may look beyond the pleadings to

14  determine whether plaintiff has met his burden.  *Hanon,* 976 F.2d at 509; *see also Lozano v.*

15  *AT&T Wireless Servs., Inc.,* 504 F.3d 718, 728 (9th Cir. 2007) (holding district court may

16  consider future individual questions in its class certification analysis).  Evidence proving the

17  predominance of common questions and showing how those predominant questions will be tried

18  should be considered in resolving this motion.  *See Hanon,* 976 F.2d at 509.[9]  Here, Ruiz does not

19  offer that evidence or that explanation.

---

20

21          [9] Ruiz contends that the Rule 23 elements are "permissive" and easily satisfied, citing
    *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168 (9th Cir. 2007).  (Motion, 10:26-11:1; 11:24-12:1).
22  But that opinion was withdrawn when the Ninth Circuit ordered rehearing *en banc.  Dukes v.*
    *Wal-Mart, Inc.,* Nos. 04-16688, 04-16720, 2009 WL 365818 (9th Cir. Feb. 13, 2009).
23  Longstanding Supreme Court authority confirms that a class action can be certified only after
    "rigorous analysis" of the requirements of Rule 23.  *Falcon,* 457 U.S. at 161.  "[A]ctual, not
    presumed, conformance with Rule 23[] remains . . . indispensable."  *Id.* at 160.
24

25          Circuit courts around the country have elaborated that "the requirements set out in Rule
    23 are not mere pleading rules."  *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 316
26  (3d Cir. 2008); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
    546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that
27  the preponderance of the evidence standard applies to evidence proffered to establish Rule
    23's requirements.").  Any "doubt" as to any class-certification element should be resolved
    against class certification.  *In re Hydrogen Peroxide,* 552 F.3d at 321-22.

28

---

1   Ruiz's Motion is not grounded in substantial evidence and is not directed at the issues

2   necessary to carry his burden.  "'In order to make the findings required to certify a class action

3   under Rule 23(b)(3) . . . one must initially identify the substantive law issues which will control

4   the outcome of the litigation.'"  *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 741 (5th Cir. 1996)

5   (citation omitted).  In other words, a plaintiff needs to discuss the elements of his causes of

6   action.  Courts have denied certification where a would-be class representative fails to address

7   how the elements of his claims can be shown by common proof.  *See, e.g., Adams v. United*

8   *States,* No. CIVS040979DFLKJMPS, 2006 WL 618293, at *2 (E.D. Cal. Mar. 10, 2006) ("[I]t

9   was incumbent upon [plaintiffs] to explain why the legal elements of [their] claim, in the

10  circumstances here, lend themselves to class action treatment.  Plaintiffs did not do this, and

11  without rigorous analysis of the facts and issues relevant to [their] claim, the court is not in a

12  position to certify a class action based on that claim.").

13  Here, while Ruiz's predominance analysis gives a passing nod to his causes of action, see

14  Motion at 14, he does not directly address all of the elements for his negligence and breach of

15  contract claims.  He focuses in on the duty element of negligence and the breach element of a

16  contract claim, but the other elements get no discussion, specifically causation and injury.  That

17  silence is telling.

18  Courts recognize that negligence claims are generally unsuited for class treatment.  *See,*

19  *e.g., Gartin v. S&M NuTec LLC,* 245 F.R.D. 429, 439 (C.D. Cal. 2007) ("The Court also finds

20  that Plaintiff's negligence claim requires individualized issues of fact."); *Drimmer v. WD-40 Co.,*

21  No. 06-CV-900 W(AJB), 2007 WL 2456003, at *2 (S.D. Cal. Aug. 24, 2007).  Similarly, courts

22  have denied class certification in contract cases where the moving party could not show how the

23  alleged breach commonly caused economic injuries.  *Pastor v. State Farm Mut. Auto. Ins. Co.,*

24  No. 05 C 1459, 2005 WL 2453900, at *6 (N.D. Ill. Sept. 5, 2005) (denying certification in

25  "straightforward breach of contract case" where the court would need to perform individualized

26  inquiries to determine whether a class member is entitled to a payment under breached contract).

27

28

1      Indeed, Ruiz's three causes of action share elements that consistently present individual,

2   not common, questions:  causation, the existence of damage, and the determination of damages.

3   Defendants take each in turn.

4                      b.      **The Need To Demonstrate Causation Defeats a Showing of Predominance.**

5

6      Courts agree that cases in which proximate cause must be shown make poor candidates

7   for class treatment.  In *In re Paxil Litig.,* 212 F.R.D. 539, 541-42 (C.D. Cal. 2003), for example,

8   plaintiffs sought to certify a class of past or current users of the drug Paxil based on its alleged

9   ability to cause severe withdrawal symptoms.  The Court denied certification, holding that

10  "individual questions of fact regarding causation [ ] subvert any benefits to be gained through a

11  class action proceeding.  Whether, and to what extent, Paxil causes discontinuation symptoms

12  varies from patient to patient."  *Id.* at 551; *see also Gartin*, 245 F.R.D. at 439 ("Because the

13  proximate causation analysis involves individualized factual issues, courts generally consider

14  negligence claims ill-suited for class action litigation.").[10]  In this case, Ruiz does not demonstrate

15  how the issue of proximate cause can be dealt with on a class-wide basis.

16     "If, to make a prima facie showing on a given question, the members of a proposed class

17  will need to present evidence that varies from member to member, then it is an individual

18  question."  *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005).  That is exactly the

19  situation in this case.  Here, the evidence each individual would have to marshal to prove

20  causation will vary from class member to class member:  Did a person's loss stem from the stolen

21      [10] *See also McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 227 (2d Cir. 2008) (". . .

22  because factors other than defendants' misrepresentation may have intervened and affected the
    demand and price of Lights . . . plaintiffs cannot establish loss-causation on a class-wide

23  basis"); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.,* 254 F.R.D. 68, 73 (E.D.N.C.
    2008) ("In this case, resolution of the common questions would be the beginning of the

24  beginning.  Certification would be an exercise of futility, as the Court would need to address
    the numerous individual causation questions one by one even if the named plaintiffs are able to

25  prove that silage bags are defective."); *Sanneman v. Chrysler Corp.,* 191 F.R.D. 441, 449
    (E.D. Pa. 2000) ("[T]he need to establish injury and causation with respect to each class

26  member will necessarily require a detailed factual inquiry including physical examination of
    each vehicle, an [sic] mind-boggling concept that is preclusively costly in both time and

27  money.  We will not certify a class that will result in an administrative process lasting untold
    years, where individual threshold questions will overshadow common issues regarding the
    Defendant's alleged conduct.").

28

1   laptop as opposed to, say, a lost wallet, a misplaced credit card, a dishonest friend or family

2   member, or some other completely unrelated incident of identity theft?  Each claimant's personal

3   identifying information could have been exposed at different times, in different ways, and for

4   different durations.  All of these avenues will have to be explored, and the exploration will have

5   to be done on an individual basis.

6              c.    **Because the Existence of Injury Cannot Be Commonly Shown,
                     Plaintiff Has Failed To Show that Common Questions
7                    Predominate.**

8              As with causation, the fact that Ruiz cannot show the existence of injury with common

9   evidence precludes a showing that common questions predominate.  Defendants have already

10  pointed to case law from around the country that precludes class treatment where no one in the

11  class has suffered legal harm, *see* IV.B *supra*.  This "no-injury" effect applies equally under the

12  predominance prong.  A recent California Court of Appeal decision affirming the denial of class

13  certification provides a salient example.  In resolving a certification question in a case claiming

14  insurer bad faith in denying earthquake coverage claims, the Court of Appeal concluded that no

15  class could be certified because each potential policyholder would need to prove individually that

16  the claim he or she asserted was covered.  *Basurco v. 21st Century Ins. Co.,* 108 Cal. App. 4th

17  110, 119 (2003).  As the Court stated:  "[T]he existence of damage, the cause of damage, and the

18  extent of damage would have to be determined on a case-by-case basis."  *Id.*[11]

19             The same is true here.  In the FAC, Ruiz seeks "compensatory damages."  Yet, his Motion

20  offers no evidence that every, let alone any, class member has suffered a compensable injury.

21  With no proof of common compensable injury, commonality cannot be shown.  *See, e.g., Caro v.*

22  *Procter & Gamble Co.,* 18 Cal. App. 4th 644, 664 (1993) ("There can be no cognizable class

23  unless it is first determined that members who make up the class have sustained the same or

24  similar damage.").

25

26  _____

27       [11] A follow-on decision by the same court reached the same conclusion.  *See Newell v.*
    *State Farm Gen. Ins. Co.,* 118 Cal. App. 4th 1094, 1103 (2004).
28

1

### d.   The Difficulty In Proving the Extent of Damages Also Precludes a Showing that Common Issues Predominate.

2

3          Similarly, even assuming there were individuals who suffered injury (an assumption *In re*

4   *Hydrogen Peroxide* teaches should not be made), individual fact issues would predominate over

5   common ones as to the extent of each class members' damages.  Just as the possible injuries vary

6   in substantial ways, variations in the amount of damages putative class members might have

7   suffered varies as well, defeating Ruiz's predominance showing.  *Bell Atl. Corp. v. AT&T Corp.,*

8   339 F.3d 294, 306-07 (5th Cir. 2003) (finding predominance defeated where the calculation of

9   damages would require separate mini-trials).

10         Under Ruiz's damages theory – setting aside whether there is any support for it in the

11  law – expenditure of time and money in protecting identity is supposedly "damage."[12]  But that

12  theory adds, rather than diminishes, the individualized nature of the issues this case presents.  For

13  example, Ruiz describes a number of steps he took to protect his identity.  (*See* Motion, 8).  To

14  begin, he turned down GAP's free credit monitoring and instead chose to pay for a different

15  commercial product.  (*Id.*).  He also "reviewed his credit reports."  (*Id.*).  By his own admission,

16  his experience differs from other putative class members who allegedly experienced long hold

17  times when they contacted GAP's call centers and "needed to call [GAP] multiple times and/or

18  were transferred to speak with multiple persons."  (*Id.,* 8-9).  Ruiz did not experience that; he hung

19  up.  (*See* Docket #100, 3:8-9).  He phoned just once, not multiple times.  (*Id.*)  While he might

20  have incurred cellular telephone charges, others would have used GAP's toll free number or paid

21  nothing beyond their monthly phone bill.  Also, unlike Ruiz, many class members accepted

22  GAP's free one-year credit monitoring and thus did not suffer any out-of-pocket expenses.

23  Finally, the vast majority of class members may have done nothing after getting GAP's

24

25          [12] The speculative nature of Plaintiff's legal theory is itself grounds to defeat class
certification.  *See Castano,* 84 F.3d at 747 ("A mass tort cannot be properly certified without a
prior record of trials from which the district court can draw the information necessary to make
the predominance and superiority analysis required by Rule 23.  This is because certification
of an immature tort results in a higher than normal risk that class action may not be superior to
individual action."); *see also Ball v. Union Carbide Corp.,* 212 F.R.D. 380, 389 (E.D. Tenn.
2002) (same).

26

27

28

1   notification letter other than throw it away.  Even by Ruiz's definition, they suffered no damage,

2   not even worry.

3        The individualized inquiry that would be necessary to measure Ruiz's claim for damages

4   (and Defendants do not, of course, concede that Ruiz suffered any ) only amplifies that individual

5   questions would predominate over common questions of law or fact.

6        **e.        Conclusion:  Plaintiff Has Not Shown that Common Issues
                      Predominate.**

7

8        In short, the extent and measure of any "injury" suffered by absent class members is

9   anything but common, precluding class certification under Rule 23(b)(3).  *See Midpeninsula*

10  *Citizens for Fair Hous. v. ACCO Mgmt. Co.,* 168 F.R.D. 647, 648 (N.D. Ca1. 1996) (denying

11  class certification, citing "highly individualized" damage issues); *see also Siegel v. Shell Oil Co.,*

12  No. 06 C 0035, 2009 WL 449073, at *5 (N.D. Ill. Feb. 23, 2009) ( "[I]f the class certification only

13  serves to give rise to hundreds or thousands of individual proceedings requiring individually

14  tailored remedies, it is hard to see how common issues predominate or how a class action would

15  be the superior to adjudicate the claims"); *In re Methionine Antitrust Litig.,* 204 F.R.D. 161, 165

16  (N.D. Ca1. 2001) (holding "the question of injury in fact is an individual question that would

17  have to be resolved by mini-trials examining the particular circumstances of each class

18  member").[13]

19       Here, major variations in potential causation, the existence of injury, and the measure of

20  damages exist across the putative class.  It is the cumulative impact of these individualized

21  inquiries – causation, the existence of harm, and the determination of damages – which defeats

22  class certification under Rule 23(b)(3).

23

24

25

26       [13] Defendants are, of course, aware that in run-of-the-mill cases the question of the
extent of individual damages in and of itself will not defeat certification.  *See Blackie v.*
*Barrack,* 524 F.2d 891, 905 (9th Cir. 1975).  Here, however, Ruiz has presented no creditable

27  evidence of cognizable injury or damages, and his allegations as to these issues point to the
numerous damage issues the Court would have to confront.

28

1    **V.    CONCLUSION**

2           Almost a year and a half after the laptop theft, Ruiz cannot point to a single incident of

3    identify theft arising from it.  There can be no latent injury class because no putative class

4    members have suffered a legally cognizable injury.  Yet even if someone *had* experienced

5    identity theft, Ruiz, who has not, could not adequately represent that person's interest.  Moreover,

6    that person's claim would entirely depend on the individualized circumstances of his or her

7    identity theft.

8           For the foregoing reasons, GAP and Vangent respectfully request that the Court deny

9    Plaintiff's motion for class certification.

10

11   Dated: February 27, 2009              WILLIAM L. STERN
                                           TERESA N. BURLISON
12                                         GEOFFREY R. PITTMAN

13                                         MORRISON & FOERSTER LLP

14

15                                         By          /s/ William L. Stern
                                               William L. Stern
16
                                           Attorneys for Defendant GAP INC.
17

18   Dated: February 27, 2009              ANDREW N. GOLDFARB
                                           ZUCKERMAN SPAEDER LLP
19

20

21                                         By          /s/ Andrew N. Goldfarb
                                               Andrew N. Goldfarb
22
                                           Attorneys for Defendant VANGENT, INC.
23

24   I, William L. Stern, am the ECF User whose ID and password are being used to file this **GAP
     INC. AND VANGENT, INC.'S JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
25   CLASS CERTIFICATION**.  In compliance with General Order 45, X.B., I hereby attest that
     Andrew N. Goldfarb has concurred in this filing.
26

27   Dated:  February 27, 2009               /s/ William L. Stern
                                             William L. Stern
28